Marc D. Fink (MN License # 343407)
4515 Robinson Street
Duluth, Minnesota 55804
Tel: 218-525-3884
Fax: 218-525-3857
marc@marcdfink.com

Peter Van Tuyn (AK Bar # 8911086)
Bessenyey & Van Tuyn
310 K Street, Suite 200
Anchorage, AK 99501
Tel:  907-278-2000
Fax:  907-278-2004
pvantuyn@earthlink.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS, and GLEN ITH, | ) ) ) ) | Case No: 3:06-CV-00068-JWS  **SECOND DECLARATION OF ANDY STAHL** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following facts are true and correct:

1. My name is Andy Stahl. I am Executive Director of Forest Service Employees for Environmental Ethics ("FSEEE"). This declaration sets forth the facts regarding the Forest Service's argument that FSEEE waited too long to bring its motion for temporary restraining order and preliminary injunction.

2. First, it bears emphasizing that the Forest Service did not use any of its normal public notice procedures for these road reconstruction projects. The road projects are not listed in the Forest Service's Schedule of Proposed Actions, which is the agency's standard method for notifying the public of its actions. The road projects were not noticed in any local newspaper, as required by the Appeals Reform Act. The Traitors Cove road projects are not listed in any categorical exclusion decision memorandum, environmental assessment or environmental impact statement.

3. The fact is, but for the diligence of Forest Service wildlife biologist Glen Ith and the willingness of Mr. Ith to go public regarding this illegal road work, no one would have found out about these roads until all the work had been done, if even then. For example, none of the Alaska-based conservation organizations that I have spoken with had any idea the Forest Service was engaged in logging road work before the agency approved the timber sales the roads served.

4. On or about August 8, 2005, Glen Ith first contacted me by email with several aerial photographs of the on-going road work leading to the Overlook sale. I told him I would investigate the matter. After persuading the Forest Service to post the Overlook environmental assessment on its website, I reviewed the EA to determine the connection between the road work

photographed by Mr. Ith and the Overlook timber sale.

     5.    On August 15, 2005, I emailed Forest Service district ranger Patty Grantham for her "decision memo and associated categorical exclusion (or other relevant NEPA document) for the road and stringer bridge work currently underway accessing the Overlook sale area, i.e., Road #6232." On August 18, 2005, Ms. Grantham responded that "[t]his type of work does not require documentation in a decision memo or case file" because it is road maintenance. She also explained that "[t]he activities associated with this work include brushing, resurfacing, ditch cleanout and replacement of deteriorated log stringer bridges. On the 6231 road, the one log stringer bridge was removed (and not replaced) and the road placed into proper storage (old culverts removed) beyond that point. Approximately 40-45 trees were also cut (for new bridge stringers) along road 6235." Exhibit A, attached hereto.

     6.    Upon receipt of Ms. Grantham's 8/18 response, and although the Forest Service's contract documents call the work "reconstruction" and not "maintenance," I reviewed the Forest Service's Handbook regarding categorical exclusions for road maintenance. The Handbook requires scoping be conducted to determine whether extraordinary circumstances are present. By email message on August 18, I asked Ms. Grantham to "send me your scoping documents for the road work." Exhibit B, attached hereto. I received no response to this request.

     7.    With the Overlook road work already completed and the Overlook timber sale decision not yet made, I turned my attention to other unrelated tasks. At that time, I had no reason to believe that the Overlook situation was anything other than an isolated incident of bureaucratic "cart before the horse" bumbling. Nor did Glen Ith seek from FSEEE any help at that time.

Page 3, SECOND DECLARATION OF ANDY STAHL

8.      On January 18, 2006, Glen Ith asked for FSEEE's assistance. FSEEE helped Mr. Ith file an administrative appeal of the Overlook sale. On January 23, I renewed my request to Ms. Grantham for evidence of scoping conducted on the Overlook road reconstruction. Exhibit C, attached hereto. I received the Forest Service's response on February 21, which was limited to excerpts from the Overlook environmental assessment and included nothing regarding the road reconstruction that occurred before the Overlook sale decision was made.

9.      On or about January 27, 2006, FSEEE and Glen Ith administratively appealed the Overlook timber sale. On March 13, the Forest Service withdrew the Overlook timber sale decision and on March 15 dismissed Ith's appeal as moot.

10.     On or about February 1, 2006, Mr. Ith suggested to me that Overlook might not be an isolated incident. Thus I started a search of the Federal Business Opportunities website (http://vsearch1.fbo.gov/servlet/SearchServlet) for other public works contracts involving logging roads on the Tongass National Forest. This website is not well known to the general public. It is the centralized location where the federal government solicits bids from the private sector for government contracts.

11.     Using the search terms "Tongass" and "road" yields about 25 pages of entries, involving hundreds of government contract-related files. Making the search more difficult, however, is that none of these records identifies the timber sale to be served by each road contract. Few of the road contract documents include maps identifying the location of the roads. The task of connecting road contracts to timber sales would be virtually impossible except that the Forest Service tends to use the same names, e.g., the "Overlook road reconstruction" contract is, in fact, connected to the Overlook timber sale. In addition, most of the road contracts are for

timber sales that were approved before the road contract and, thus, are procedurally proper as least insofar as timing.

12.    There is no Traitors Cove road reconstruction contract on the Federal Business Opportunities website. Instead, the road reconstruction contracts are identified by the three former timber sales (Rockfish, SW Neets, Francis Cove) that were proposed by the Forest Service several years ago and later combined into the Traitors Cove project, for which a decision has yet to issue. Judicious web-sleuthing uncovered the old timber sale names, but confirmation that the similarly-named road contracts do, in fact, serve the Traitors Cove timber sale units was harder to come by.

13.    At this time, we determined that we had gathered enough evidence to file the complaint in this case, but still sought additional assurance of the facts prior to moving the court for a temporary restraining order or preliminary injunction. The Forest Service also told us at this time that additional road work was not scheduled to commence until after the spring snow melt.

14.    The Rockfish, SW Neets, and Francis Cove road contracts available at the Federal Business Opportunities include no maps showing the location of the road reconstruction work. On a hunch, on April 12, 2006, I ordered the engineering drawings for the two contracts that are identified in the Federal Business Opportunities bid solicitations as available for purchase from a private blueprint vendor. Exhibit D, attached hereto. Upon receipt, I found that these drawings include a map showing the location of the proposed roads. However, the blueprint maps do not show the relation between the road locations and the Traitors Cove timber sale units.

15.    On April 26, 2006, I was able to compare the road contract maps with maps from

the original scoping notices for the Rockfish, SW Neets and Francis Cove projects (before they were combined into the Traitors Cove project) that I obtained from the Southeast Alaska Conservation Council. There was a one-to-one match between the respective road and timber sale unit maps. This information confirmed for me that Traitors Cove was just like Overlook – a logging project for which the Forest Service was doing the road work before it had decided to sell the timber.

16.    In the meantime, I was expeditiously attempting to locate an expert or two to help us establish the likelihood of harm in the event we were forced to move for a temporary restraining order and/or preliminary injunction. Due to the remote region of the challenged activities, this was not a simple task. After considerable time and effort, I was fortunate to obtain the services of Dr. David Montgomery, a Professor at the University of Washington, whose qualifications are set forth in his declaration.

17.    On May 5, 2006, I learned that the Forest Service had advertised the Logjam contract for road rehabilitation and construction, and that there existed in the planning stages a Logjam timber sale, for which the draft environmental impact statement had yet to issue. The Logjam documents on the Federal Business Opportunities website include a map showing the location of the road work. Exhibit E, attached hereto. I also found through a Google search a Forest Service map of the proposed harvest units in the Logjam sale (this map appears to be impossible to find by drilling down from the Tongass National Forest home page, as if it was not yet intended for public review). Exhibit F, attached hereto. As with Overlook and the three Traitors Cove contracts, the Logjam road work leads to Logjam timber sale units that have yet to be approved. *See also* Exhibit G, attached hereto (Forest Service solicitation of bids for the

Logjam road project, including a description of the 3.79 miles of road "reconditioning," and 1.96 miles of new road construction).

18.     In sum, FSEEE has moved as expeditiously as possible under the circumstances. Those circumstances include the Forest Service's failure to notify the public regarding any of the road reconstruction and construction activities challenged in this case and the Forest Service's failure to assess in any public document the environmental consequences of these actions. Thus FSEEE has had to uncover documents from a government whistleblower, a third-party vendor, other government websites, and Alaska-based non-governmental organizations. The Forest Service should not be permitted to hide the ball and then criticize how long it took FSEEE to find it. It has been in FSEEE's interest to move as expeditiously as possible in order to file its motion for a temporary restraining order and preliminary injunction at the earliest possible time, which FSEEE has done and will continue to do.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of May, 2006, in Eugene, Oregon.

_____
ANDY STAHL

CERTIFICATE OF SERVICE

I hereby certify that on May 9th, 2006, a copy of the Second Declaration of Andy Stahl was served electronically on:

Bruce M. Landon

s/ Marc D. Fink