BRUCE M. LANDON
U.S. Department of Justice
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska  99501-3657
Telephone: (907) 271-5452
Facsimile:  (907) 271-5827
Email: bruce.landon@usdoj.gov

Attorney for Federal Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS, and Glen.... | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:06-cv-068 (JWS) |
| v. | ) ) | |
| UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, | ) ) ) | |
| Defendant. | ) ) ) | |

## OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

US Opp. to TRO

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. Road Maintenance on the Tongass . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B. NEPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C. Forest Service Categorical Exclusion for Road Maintenance . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. PRELIMINARY INJUNCTIVE RELIEF IS EXTRAORDINARY RELIEF AND WILL NOT
    ISSUE UNLESS PLAINTIFFS CAN ESTABLISH ALL THE REQUIREMENTS FOR
    SUCH RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. PLAINTIFFS' MOTION IS MOOT AS TO ALL MAINTENANCE CONTRACTS EXCEPT
    THE ROCKFISH AND FRANCIS COVE CONTRACTS . . . . . . . . . . . . . . . . . . . . . . . 5

III. PLAINTIFFS LACK STANDING TO CHALLENGE THE ROCKFISH AND FRANCIS
    COVE CONTRACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. PLAINTIFFS HAVE NO LIKELIHOOD OF SUCCESS ON THE MERITS . . . . . . . . . . . 8

    A. The Forest Service Fully Complied with NEPA . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1. The maintenance contracts fall within a categorical exclusion. . . . . . . . . . . . 8

        2. Road maintenance and timber sales do not constitute connected actions . . . 14

        3. Cumulative impacts do not require the consideration of the maintenance projects
          in the Traitor's Cove Timber Sale EIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        4. The Agency is not required to delay road maintenance until completion of the
          Traitors Cove EIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    B. Plaintiffs' Appeals Reform Act Claim Has Already Been Rejected . . . . . . . . . . . . 18

V. PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.    THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST ENTRY OF AN INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    A.  <u>Halting the Rockfish and Francis Cove Projects Will Result in Environmental Harm by Leaving Roadbeds in an Unstable Condition</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    B.  <u>Halting the Rockfish and Francis Cove Projects Will Result in Harm by Preventing Maintenance that Would Contribute to Water Quality and Public Safety</u> . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TABLE OF AUTHORITIES

FEDERAL CASES

Alaska Center for the Environment v. United States Forest Service, 189 F.3d 851 (9th Cir.1999)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Allen v. Wright, 468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Alpine Lakes Protection Soc. v. Schlapfer, 518 F.2d 1089 (9th Cir. 1975) . . . . . . . . . . . . . . . 20

American Motorcyclist Ass'n v. Watt, 714 F.2d 962 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . 20

Amoco Production Company v. Native Village of Gambell, 480 U.S. 531 (1987) . . . . . . . . . . . 19

Arizonans for Official English v. Arizona, 520 U.S. 43 (1997) . . . . . . . . . . . . . . . . . . . . . . . . 6

Back Country Horsemen of America v. Johanns, — F.Supp.2d — , 2006 WL 825534 (D.D.C. 2006)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bicycle Trails Council of Marin v. Babbitt, 82 F.3d 1445 (9th Cir. 1996) . . . . . . . . . . . . . . . . 15

California v Norton, 311 F.3d 1162 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Committee for Idaho's High Desert v. Collinge, 148 F.Supp.2d 1097 (D. Idaho 2001) . . . . . . . 12

Earth Island Institute v. Pengilly, 376 F.Supp.2d 994 (E.D. Cal. 2005) . . . . . . . . . . . . . . . . 18, 19

Earth Island Institute v. United States Forest Service, 351 F.3d 1291 (9th Cir. 2003); . . . . . . . . 14

Edmonds Institute v. Babbitt, 42 F.Supp.2d 1 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Feller v. Brock, 802 F.2d 722 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Intel Corp. v. ULSI System Technology, Inc., 995 F.2d 1566 (Fed. Cir. 1993), cert. denied, 510 U.S.
1092 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Marbled Murrelet v. Babbitt, 83 F.3d 1068 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Nome Eskimo Community v. Babbitt, 67 F.3d 813 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 6

Oakland Tribune, Inc. v. The Chronicle Publishing Company, Inc., 762 F.2d 1374 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Region 8 Forest Service Timber Purchasers Council v. Alcock, 993 F.2d 800 (11th Cir. 1993), cert. denied, 114 S.Ct. 683 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rice v. Cayetano, 941 F.Supp. 1529 (D. Haw. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Save the Yaak Committee v. Block, 840 F.2d 714 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . 14

Sierra Club v. Marsh, 816 F.2d 1376 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Snake River Farmers' Ass'n v. Department of Labor, 9 F.3d 792 (9th Cir. 1993) . . . . . . . . . . . 6

State of Utah v. Babbitt, 137 F.3d 1193 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Thomas v. Peterson, 753 F.2d 754 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Wetlands Action Network v. U. S. Army Corps or Engineers, 222 F.3d 1105 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17, 18

Westlands Water Dist. v. Natural Resources Defense Council, 43 F.3d 457 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

FEDERAL STATUTES

16 U.S.C. § 1612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

42 U.S.C. § 4331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

43 U.S.C. § 4332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

FEDERAL REGULATIONS

36 CFR § 215.4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

40 CFR § 1500.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

40 CFR § 1506.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

40 CFR § 1508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

40 CFR § 1508.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 16

40 CFR § 1507.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

OTHER

57 Fed. Reg. 43180 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

INTRODUCTION

Plaintiffs have filed a motion for temporary restraining order and for preliminary injunction seeking to enjoin the Forest Service "from proceeding with any further road construction associated with the Traitors Cove and Overlook logging projects on the Tongass National Forest, and ordering the Forest Service and its agents and contractors to immediately cease any ongoing road work or reconstruction."  Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.  Specifically, plaintiffs seek to enjoin work under the S.W. Neets, Rockfish, Francis Cove, Road 6231 and Road 6232 road maintenance contracts.  *Id.*

Plaintiffs claim that the Forest Service violated the National Environmental Policy Act (NEPA), 42 U.S.C. § 4331 *et seq.,* when it used a "categorical exclusion" for road maintenance activities to approve the contracts.  Plaintiffs also claim that the Forest Service violated the Appeals Reform Act (ARA), note following 16 U.S.C. § 1612, by proceeding with the contracts without providing public notice, accepting public comments and allowing administrative appeals.

Federal defendants oppose the motion for temporary restraining order and preliminary injunction.  First, the Court lacks jurisdiction to grant the relief sought.  The motion is moot as to three of the five road maintenance projects because the maintenance work has already been completed.  Plaintiffs have no standing to challenge the two contracts that are not moot.

Even if the Court had jurisdiction to grant any relief, plaintiffs have no likelihood of prevailing on the merits.  Pursuant to the regulations of the Council on Environmental Quality (CEQ), 40 CFR §§ 1507.3(b), 1508.4, the Forest Service has determined in a published categorical exclusion that road maintenance work does not normally individually or cumulatively have a significant impact on the environment, and thus requires neither an environmental impact

statement (EIS) nor a environmental assessment (EA).  The work at issue in this case comes within the categorical exclusion for road maintenance and there are no extraordinary circumstances suggesting the need for an EIS or EA.  Accordingly, no EIS or EA was required. Plaintiffs' argument under the Appeals Reform Act has already been rejected by Judge Singleton in his clarification order in *Earth Island Institute v. Pengilly*, Fed. Def. Exh. 1.

Moreover, plaintiffs fail to establish irreparable harm.  The maintenance contracts involve the repair of existing roads, including such activities as clearing out ditches, repairing culverts, grading and resurfacing the existing road, and brush removal.  These activities have an environmentally positive effect.

The balance of the harms and the public interest weigh against the issuance of an injunction.  The maintenance activities under one of the uncompleted contracts are approximately 80% complete by cost.  The maintenance activities under the other uncompleted contract are approximately 30% complete (21% by cost).  Leaving the maintenance uncompleted poses a risk to public safety and to the environment in the form of increased sedimentation.

For all of these reasons, plaintiffs' motion for temporary restraining order should be denied.

## BACKGROUND

### A. **Road Maintenance on the Tongass**

This action involves maintenance work on roads previously constructed on the Tongass National Forest.  The Forest Service or its contractors construct roads in the National Forest in connection with timber sales and other purposes.  When a road it constructed, it is assigned a maintenance level.  Declaration of Jack Oien ¶ 3, Fed. Def. Exh. 2.  Level 1 roads are those roads

that are closed to motorized use by the public after the initial use and receive minimal maintenance that emphasizes maintaining drainage facilities and runoff patterns. *Id.* Level 2 roads are those roads which remain open to the public for high clearance vehicles and are maintained from time to time at a low use level. *Id.*

In their complaint, plaintiffs challenge five road maintenance projects. The maintenance work was completed and accepted for the S.W. Neets and Forest Service Roads No. 6231 and 6232 projects in 2005.[1] By May 8, 2006, maintenance work was approximately 80% (by cost) complete on the Rockfish contract, and 30% (21% by cost) complete on the Francis Cove contract. Declaration of Lynn Kolund ¶ 3, Fed. Def. Exh. 5. The roads in the Rockfish and Francis Cove contracts are Level 2 roads. *Id.* at ¶ 7.

## B. NEPA

NEPA requires the preparation of a detailed statement on the environmental effects of major federal actions significantly affecting the human environment. 43 U.S.C. § 4332. The CEQ has promulgated regulations for the implementation of NEPA at 40 CFR Parts 1500 to 1508. Those regulations are binding on all federal agencies. 40 CFR § 1500.3. The regulations establish three types of documentation to be prepared to satisfy NEPA, depending on the nature of the activity. One of those is a categorical exclusion.

The regulations define a categorical exclusion as a "category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by the Federal agency in

---

[1] See, Fed. Def. Exh. 3 (certificate of final inspection of S.W. Neets contract); Fed. Def. Exh. 4 (certificate of final inspection and related documents for Forest Development Roads No. 6231 and 6232).

implementation of these regulations and for which, therefore, neither an environmental

assessment nor an environmental impact statement is required." 40 CFR § 1508.4.  The

regulations direct the agencies to adopt procedures that, *inter alia,* identify categorical

exclusions.  40 CFR § 1507.3(b)(2)(ii).

## C.  Forest Service Categorical Exclusion for Road Maintenance

Pursuant to the CEQ regulations, the Forest Service identified the following categorical

exclusion:

> 4.  <u>Repair and maintenance of roads, trails, and landline boundaries</u>.  Examples
> include, but are not limited to:
> a.  Authorizing a user to grade, resurface, and clean the culverts of an established
> National Forest System road.
> b.  Grading a road and clearing the roadside of brush without the use of herbicides.
> c.  Resurfacing a road to its original condition.
> d.  Pruning vegetation and cleaning culverts along a trail and grooming the surface of the \
> trail.
> e.  Surveying, painting, and posting landline boundaries.

Forest Service Handbook (FSH) 1909.15, 31.12 (4), Fed. Def. Exh. 6 at 9.  This categorical

exclusion may be used "unless scoping indicates extraordinary circumstances ... exist" *Id.* at

31.12, Fed. Def. Exh. 6 at 8.

## ARGUMENT

## PLAINTIFFS' MOTION SHOULD BE DENIED

## I.  PRELIMINARY INJUNCTIVE RELIEF IS EXTRAORDINARY RELIEF AND WILL NOT ISSUE UNLESS PLAINTIFFS CAN ESTABLISH ALL THE REQUIREMENTS FOR SUCH RELIEF.

The test for the issuance of a temporary restraining order is the same as for the issuance

of a preliminary injunction.  *Rice v. Cayetano,* 941 F.Supp. 1529, 1537 (D. Haw. 1996), *aff'd*

146 F.3d 1075 (9th Cir. 1998).   A preliminary injunction is a "drastic and extraordinary remedy

that is not to be routinely granted." *Intel Corp. v. ULSI System Technology, Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993), *cert. denied*, 510 U.S. 1092 (1994).   In this Circuit, the standard governing the issuance of a preliminary injunction is whether the moving party has established: "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation, and the balance of the hardships tips sharply in favor of the party seeking relief." *Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996)(*citing Sierra Club v. Marsh*, 816 F.2d. 1376, 1382 (9th Cir. 1987)).   These are not two distinct tests, but the "extremes of the continuum of [the Court's] equitable discretion." *Sierra Club,* 816 F.2d at 1382-83; *Westlands Water Dist. v. Natural Resources Defense Council*, 43 F.3d 457, 459 (9th Cir. 1994)("sliding scale").   On this continuum, the required probability of success on the merits that the moving party must demonstrate decreases as the degree of harm increases.  *Westlands Water*, 43 F.3d at 459. Moreover, where the public interest is implicated, the court must determine whether the public interest favors the moving party.  *Id.*

## II.  PLAINTIFFS' MOTION IS MOOT AS TO ALL MAINTENANCE CONTRACTS EXCEPT THE ROCKFISH AND FRANCIS COVE CONTRACTS

Plaintiffs seek an injunction against the maintenance contracts for S.W. Neets, Forest Roads 6231 and 6232 as well as the Francis and Rockfish maintenance contracts.  As shown by Fed. Def. Exh. 3 and 4, all activities under the contracts for S.W. Neets and Forest Roads 6231 and 6232 have been completed and accepted by the Forest Service.  Plaintiffs' motion is, therefore, moot as to those contracts.

Mootness, like the related doctrine of standing, restricts judicial power to the decision of

cases and controversies. *Nome Eskimo Community v. Babbitt*, 67 F.3d 813, 815 (9th Cir. 1995).

Federal courts lack power to make a decision unless the plaintiff has suffered an injury in fact,

traceable to the challenged action, and likely to be redressed by a favorable decision. *Id. quoting

Snake River Farmers' Ass'n v. Department of Labor,* 9 F.3d 792 (9th Cir. 1993). To qualify as

fit for federal-court jurisdiction, an actual controversy must be extant at all stages of review, not

merely at the time the complaint is filed. *Arizonans for Official English v. Arizona,* 520 U.S. 43,

45 (1997). By their motion, plaintiffs seek to halt the maintenance activities under the various

contracts. The motion is moot as to those contracts that are complete.

## III. PLAINTIFFS LACK STANDING TO CHALLENGE THE ROCKFISH AND FRANCIS COVE CONTRACTS

Article III of the Constitution limits the federal courts to the adjudication of actual

"cases" and "controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984). The case and

controversy requirement is of special importance in cases where a federal court is being asked to

rule on the legality of an act of the executive branch. *Region 8 Forest Service Timber

Purchasers Council v. Alcock*, 993 F.2d 800, 804 (11th Cir. 1993), *cert. denied*, 114 S.Ct. 683

(1994); *State of Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998).

A central component of Article III's case and controversy requirement is that the litigant

must have standing to invoke the power of the federal court. *Id*. at 805; *Allen v. Wright*, 468

U.S. at 750. In *Lujan v. Defenders of Wildlife*, the Supreme Court delineated the three minimum

constitutional requirements for standing:

> First, the plaintiff must have suffered an "injury in fact" — an invasion of
> a legally protected interest which is (a) concrete and particularized and (b)
> "actual and imminent, not 'conjectural or hypothetical.'" Second there
> must be a causal connection between the injury and the conduct

> complained of — The injury has to be "fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." Third, it must be "likely" as opposed to merely "speculative that the injury will be redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. at 560-61.

Plaintiffs' sole proffer of proof of standing is the Declaration of Glen Ith. While Mr. Ith alleges use of the areas of the now-completed contract for Roads 6231 and 6232 on Mitkof Island where he lives, his allegations regarding the location of the Rockfish and Francis Cove contracts in the Ketchikan-Misty Fiords District of the Tongass fall below the requirements established by the Supreme Court in *Lujan*.

> Mr. Ith alleges:

> 4. I have visited and worked in the mid 1980's on the Ketchikan Misty Fiords Ranger District near the location of the Traitors Cove logging project and associated logging roads. This is an area that I would like to return to visit, recreate, hunt, and fish. If the Forest Service continues to construct the challenged logging roads and implement the Traitors Cove logging project, I am concerned that my future use and enjoyment of this area will be negatively impacted.

Declaration of Glen Ith.

These are precisely the types of allegations that the Supreme Court held were insufficient to establish standing. In *Lujan,* plaintiffs had visited areas and expressed an intention to return in the future. The fact that one has visited a place in the past "proves nothing" for standing analysis, which concentrates on "continuing present adverse effects." *Lujan v. Defenders of Wildlife,* 504 U.S. at 564. With regard to the allegations of an intent to return, the Court stated:

> And the affiants' profession of an "inten[t]" to return to the places they had visited before – where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species – is simply not enough. Such "some day" intentions – without any description of concrete plans, or indeed even a

specification of *when* the some day will be – do not support a finding of the "actual or imminent" injury that our cases require.

*Id.*

Because plaintiffs fail to show standing with regard to the Rockfish and Francis Cove contracts, no relief can be granted with regard to those projects.

## IV.  PLAINTIFFS HAVE NO LIKELIHOOD OF SUCCESS ON THE MERITS

### A.  <u>The Forest Service Fully Complied with NEPA</u>

#### 1.  The maintenance contracts fall within a categorical exclusion.

Plaintiffs have no likelihood of success on the merits of their NEPA claims with regard to the Rockfish and Francis Cove[2] contracts because the activities under the contracts fall clearly within the scope of the categorical exclusion, and there are no extraordinary circumstances.  An agency's interpretation of its own regulations, including its own categorical exclusions, is to be given controlling weight unless plainly erroneous or inconsistent with the regulation.  *Alaska Center for the Environment v. United States Forest Service,* 189 F.3d 851, 857 (9th Cir.1999). An agency's determination that a particular action falls within one of its categorical exclusions is reviewed under the arbitrary and capricious standard.  *Id.*  There is nothing arbitrary about the agency's determination in this case.

The statement of work for the Rockfish contract describes the road work to be done as "producing and placing aggregate base, haul, mobilization, reconditioning roadbed, roadside brushing, and pit development, installation of culverts and a bridge, quality control and quantity

---

[2] Because all activities have been completed on the contracts for S.W. Neets and Forest Roads 6231 and 6232, this discussion or the merits  is limited to the Rockfish and Francis Cove contracts.  The absence of discussion of the completed contracts should not be taken as agreement with the allegations plaintiffs make with regard to those contracts.

measurement." Fed. Def. Exh. 7 (Rockfish statement of work).  The description of road work for

the Francis Cove contract includes "producing and placing aggregate base, haul, mobilization,

reconditioning roadbed, pit development, installation of culverts, removal and installation of log

culvert."  Fed. Def. Exh. 8. These activities are of the type listed in Categorical Exclusion 4, set

forth in subpart C of the Background section above.  The contracts seek, not to construct new

road, but to maintain the roads in their original condition in a way that contributes to water

quality and public safety.

There are no "extraordinary circumstances" that would make the categorical exclusion

inapplicable to the case.  The only "extraordinary circumstance" proffered by plaintiffs is the fact

that the Forest Service is considering potential timber sales in the area that could be serviced by

the roads being maintained.  This is not an extraordinary circumstance.

The agency has defined the conditions that should be considered in determining whether

extraordinary circumstances exist, and those conditions do not include the potential for additional

timber sales in the area where the roads to be maintained are located.  FSH 109.15 Sec. 30.3 (2)

provides:

> 2.  Resource conditions that should be considered in determining whether
> extraordinary circumstances related to the proposed action warrant further analysis
> and documentation in an EA or an EIS are:
>> a.  Federally listed threatened or endangered species or designated
>> critical habitat, species proposed for Federal listing or proposed
>> critical habitat, or Forest Service sensitive species.
>> b.  Flood plains, wetlands, or municipal watersheds
>> c.  Congressionally designated areas, such as wilderness,
>> wilderness study areas, or national recreation areas.
>> d.  Inventoried roadless areas.
>> e.  Research natural areas.
>> f.  American Indians and Alaska Native religious or cultural sites.
>> g.  Archaeological sites, or historic properties or areas.

> The mere presence of one or more of these resource conditions does not preclude use of a categorical exclusion.  It is the degree of the potential effect of the potential effect of a proposed action on these resource conditions that determines whether extraordinary circumstances exist.

Fed. Def. Exh. 6 at 6.

Even if the Court could go outside the conditions listed in the categorical exclusion provisions of the Forest Service Handbook, there is no basis for a finding that the fact that a timber sale may occur in an area constitutes an extraordinary circumstance.  The Forest Service has constructed roads throughout the Tongass.  Declaration of Jack Oien ¶ 4, Fed. Def. Exh. 2.  As a general rule, the Forest Service would not cut all of the available timber along a road during the first harvest entry.  *Id.*  Indeed, the Tongass Land Management Plan (TLMP) would not permit such total removal in the first entry.  Consequently, many forest roads are built with the assumption that they will used for a series of timber sales spaced over a significant period of time.  *Id.*  There is thus nothing extraordinary about continued maintenance and repeated use of roads.

Even when not used by the Forest Service or its contractors, a Level 2 road remains open for public use.  *Id.*  For example, a portion of the Francis Cove road system is used by float plane operators taking tourists to a bear-viewing platform in the area.  Declaration of Lynn Kolund ¶ 5, Fed. Def. Exh. 5.  Both the Rockfish and Francis Cove roads are used by deer hunters and other recreationists.  *Id.* at ¶ 7.

Level 2 roads are built to a relatively low standard and require periodic maintenance to preserve water quality and the public safety.  Declaration of Jack Oiens ¶ 5, Fed. Def. Exh. 2.  Over time ditches and culverts can become clogged or wash away.  *Id.*  Land slides occur and

US Opp. to TRO                            10

gullies can begin to develop in the road base. *Id.* Failure to do periodic maintenance can also result in the loss of the Forest Service's investment in a road, if the deterioration makes it more difficult to use in the future. *Id.*

Thus, maintenance is necessary from time to time regardless of whether a timber sale is being planned in the vicinity. *Id.* at ¶ 7. In the relatively recent past the Forest Service has performed maintenance on roads in both the Rockfish and Francis Cove areas at a time when no timber sale was imminent. *Id.* ¶ 6. In recent years, the Forest Service has performed between 1100 and 2400 miles per year of maintenance work throughout the Tongass.[3] *Id.* at ¶ 7. Most of this work is performed on roads for which no timber sale is imminent. *Id.*

The roads being maintained under the Rockfish and Francis Cove contracts were originally built pursuant to the North Revilla Final Environmental Impact Statement (FEIS) or were already in existence at the time of that FEIS. Declaration of Lynn D. Kolund ¶ 8, Fed. Def. Exh. 5. That FEIS specifically envisioned future maintenance of Level 2 Roads. Fed. Def. Exh. 9.

Plaintiffs, nonetheless, claim that the agency could not apply the categorical exclusion without public comments and a decision document setting forth the agency's findings of why extraordinary circumstances were not present. They are wrong. The Forest Service Handbook specifically provides that no project or case file or decision memorandum is required for categorical actions set forth in sections 31.11 and 31.12. FSH 1909.15 32.1, Fed. Def. Exh. 6 at 16. The road maintenance categorical exclusion is set forth in section 31.12. Fed. Def. Exh. 6 at

---

[3] The Forest Service manages approximately 5000 miles of road on the Tongass. Exh. 3 to Declaration of Andy Stahl accompanying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

9.

The Forest Service Handbook is consistent with the case law. As the Ninth Circuit stated in *California v Norton,* 311 F.3d 1162, 1176 (9th Cir. 2002), "[i]n many instances a brief statement that a categorical exclusion is being invoked will suffice." Where, as here, the categorical exclusion is one for which no decision memorandum is required, the absence of documentation relating to the basis for the agency's decision does not render the assertion of a categorical exclusion a post hoc rationalization. *Back Country Horsemen of America v. Johanns,* — F.Supp.2d — , 2006 WL 825534 *7 (D.D.C. 2006). Findings such as those sought by plaintiffs are required only where there is substantial evidence in the record that exceptions to the categorical exclusion may apply. *California v. Norton,* 311 F.3d at 1176-77. See also *Committee for Idaho's High Desert v. Collinge,* 148 F.Supp.2d 1097, 1102-04 (D. Idaho 2001) (findings required where activity did not appear to come within the categorical exclusion and categorical exclusion itself required four specific findings). The courts do not require a full-blown statement of reasons invoking a categorical exclusion. *Edmonds Institute v. Babbitt,* 42 F.Supp.2d 1, 18 n.11 (D.D.C. 1999).

Contrary to plaintiffs' argument, the assertion of the categorical exclusion in this case was by no means a mere litigation position. Plaintiffs' own exhibits demonstrate that prior to this litigation the agency responded to plaintiffs' initial information request about the Rockfish and Francis Cove contracts, by stating that they were garden-variety maintenance contracts covered by the categorical exclusion. Exh. G and H to the Declaration of Andy Stahl.

Moreover, the Forest Service compiles on a yearly basis a "Road Accomplishment Report" in which it totals the miles of new construction, capital improvement and maintenance

contracts awarded in that year.  Declaration of Jack Oien P 8, Fed Def. Exh. 2.  The miles for the

Rockfish and Francis Cove contracts were counted as maintenance milage in the FY 2005 Road

Accomplishment Report.  *Id.*

Finally, plaintiffs claim that the agency may not rely on the categorical exclusion because

it did not engage in notice and public comment as part of its "scoping" process.   The CEQ

regulations do not require scoping except for an EIS.   40 CFR § 1501.7.  The Forest Service

Handbook nonetheless provides that "[s]coping is required on all proposed actions, including

those that would appear to be categorically excluded."  FSH 1019.15 30.3 (3), Fed. Def. Exh. 6 at

7.

Plaintiffs' misread this provision as "the agency's own interpretation concerning its

NEPA obligation to allow public scoping and comment for actions that it proposes to exclude

from NEPA review."  Plaintiffs' Memorandum in Support of Motion for Temporary Restraining

Order and Preliminary Injunction (Plnts' TRO brief) at 11.  To the contrary, the Handbook makes

very clear that the Service is going beyond what is required by NEPA.  FSH 1019.15 11

("Although the Council on Environmental Quality (CEQ) regulations required scoping only for

environmental impact statement (EIS) preparation, the Forest Service has broadened the concept

to apply to all proposed actions.").  Fed. Def. Exh. 10 at 6.  The Handbook specified, however,

that the agency did not require notice and public comment as part of that scoping.

> Because the nature and complexity of a proposed action determine the scope and
> intensity of the required analysis, no single technique is required or prescribed.
> Except where required by statute or regulations, the responsible official may
> adjust or combine the various steps of the process outlined in this chapter to aid in
> the understanding of the proposed action and identified issues.

*Id.*      Thus neither NEPA nor the Forest Service Handbook required the public notice and

comments demanded by plaintiffs in order for the agency to rely on the categorical exclusion.

**2.  Road maintenance and timber sales do not constitute connected actions**.

The CEQ regulations define connected actions as follows:

(1) Connected actions, which means that they are closely related and therefore
should be discussed in the same impact statement.  Actions are connected if they:
(i) Automatically trigger other actions which may require an environmental
impact statement.
(ii) Cannot or will not proceed unless other actions are taken previously or
simultaneously.
(iii) Are interdependent parts of a larger action and depend on the larger
 action for their justification.

40 CFR § 1508,24(a).

Because periodic maintenance of existing roads is required regardless of whether a timber

sale will occur in the near future, the maintenance has independent utility.  Consequently,

maintenance does not constitute a "connected action" that needs to be considered in NEPA

documentation together with the potential timber sale.  *See Earth Island Institute v. United States*

*Forest Service,* 351 F.3d 1291, 1305 (9th Cir. 2003); *Wetlands Action Network v. U. S. Army*

*Corps or Engineers,* 222 F.3d 1105, 1118-19 (9th Cir. 2000) (actions are connected if it would be

irrational, or at least unwise, to proceed with the first action unless the subsequent action were

also undertaken).

The very cases on which plaintiffs rely demonstrate that the contracts at issue here do not

constitute actions connected to potential timber sales in the vicinity.  In  *Thomas v. Peterson,* 753

F.2d 754, 758-59 (9th Cir. 1985) the court had before it the original construction of a road.  That

construction could not be justified in the absence of the timber sales and, thus, had to be

considered along with those sales.  In *Save the Yaak Committee v. Block,* 840 F.2d 714, 719 (9th

Cir. 1988), the "reconstruction" involved "upgrad[ing] the existing ... system to a double lane paved standard to accommodate increased traffic associated with accelerated harvest...."  Here in contrast, the agency is merely maintaining the roads to their original service level – maintenance which must be done periodically to protect water quality and the public safety.

**3. Cumulative impacts do not require the consideration of the maintenance projects in the Traitors Cove Timber Sale EIS**

Categorical exclusions are by definition "actions which do not individually or cumulatively have a significant effect on the human environment...." 40 CFR § 1508.4.  The Forest Service has determined that road maintenance activities constitute a categorical exclusion. Although plaintiffs' complaint does not challenge the validity of the categorical exclusion itself, their memorandum at 16 attempts to refute the Forest Service determination that road maintenance does not have cumulatively significant impacts on the environment by submitting extra-record declarations to the effect that road maintenance results in increased sedimentation and adverse impacts on wildlife by virtue of increased accessability to martin habitat by trappers.

As a threshold matter, plaintiffs' argument is outside of the scope of their complaint. Even if plaintiffs were to amend their complaint to state a direct challenge to the agency's determination that road maintenance constitutes a categorical exclusion, that claim is barred by the statute of limitations.  *Bicycle Trails Council of Marin v. Babbitt,* 82 F.3d 1445, 1456 n. 5 (9th Cir. 1996) (categorical exclusions are "indisputably valid regulations under NEPA" when they were issued prior to the six-year statute of limitations in 28 U.S.C. § 2401(a)).  The categorical exclusion for road maintenance has been unchanged since at least 1992.  57 Fed. Reg. 43180, 43208 (Sept. 18, 1992).

US Opp. to TRO                    15

Even if the challenge to the categorical exclusion were not barred, and the Court could rely on plaintiffs' declarations to assess the merits of the categorical exclusion, plaintiffs' declarations are unpersuasive because they "mix apples and oranges."  For example, plaintiffs cite (Plnts' TRO brief at 16) Dr. Montgomery's declaration for the proposition that road "construction" causes sedimentation.  The roads in the Rockfish and Francis Cove projects were built long ago and have been subject to periodic maintenance.  Declaration of Jack Oien ¶ 6, Fed. Def. Exh. 2; Declaration of Lynn Kolund ¶ 7-8, Fed. Def. Exh. 5; Fed. Def. Exh. 9.  The very study on which Dr. Montgomery relied for his declaration found that maintenance resurfacing of existing roads **reduces** sedimentation by up to 80 percent.  Declaration of Lynn Kolund ¶ 4, Fed. Def. Exh. 5.  Plaintiffs cite (Plnts' TRO brief at 16) the Declaration of Glen Ith for the proposition that "reconstruction of logging roads can also have adverse impacts on wildlife species, especially if the road had previously been closed to motorized use."  However, the roads in the Rockfish and Francis Cove projects are Level 2 roads that have never been closed to the public.  Declaration of D. Lynn Kolund ¶ 7, Fed. Def. Exh. 5.  To the contrary, part of the Francis Cove roads system has been used to transport up to 3,100 tourists per year to a bear viewing site. *Id.* at ¶ 5.

### 4.  The Agency is not required to delay road maintenance until completion of the Traitors Cove EIS

At pages 17-20 of their brief, plaintiffs make the remarkable argument that the CEQ regulations prohibit the Forest Service from doing maintenance on the roads in the Rockfish and Francis Cove projects because the agency is preparing an EIS for a possible timber sale in the Traitors Cove area.  This argument is especially ironic, because the continuation of maintenance

of these roads already was considered in the North Revilla EIS.

The CEQ regulations provide that until an agency issues a record of decision on a proposal, it should not take "action concerning the proposal" that would "have an adverse environmental impact" or "limit the choice of reasonable alternatives." 40 CFR § 1506.1. The maintenance contracts do not implicate that regulation. First, as explained above, maintenance must occur periodically on national forest roads regardless of whether a timber sale is being planned. Indeed, these roads were already in existence or built pursuant to the North Revilla EIS, which specifically provided that the Level 2 roads would be maintained. Fed. Def. Exh. 9. The contracts are, thus not an action "concerning" the timber sale proposal. See, *Wetlands Action v. U.S. Army Corps of Engineers,* 222 F.3d at 1118-19. Second, as explained in the Declarations of Jack Oien and Lynn Kolund, Fed. Def. Exh. 2 and 5, maintenance work is undertaken to *prevent* adverse environmental impacts that could arise if maintenance is not performed.[4] Third, the maintenance of roads does not limit the reasonable alternatives of a timber sale. These roads were designated as Level 2 roads subject to periodic maintenance. The Forest Service maintains over a thousand miles of road per year, most of which is unconnected to any imminent timber sale. Maintenance, therefore, creates no impermissible "administrative momentum" limiting the agency's ability to choose any alternative, including the "no action" alternative for the proposed

---

[4] Plaintiffs argue that the contracts will have an adverse affect on the environment because they "included the cutting of numerous old growth trees and the reopening of formally closed roads..." Plnts' TRO brief at 18. However, plaintiffs rely on declarations addressing the contract for Forest Roads 6231 and 6232. Because the maintenance contract for those roads is complete, plaintiffs' motion with regard to those roads is moot, and we do not discuss why the maintenance of those roads, in fact, does not cause adverse effects to the environment. The Rockfish and Francis Cove contracts do not involve the felling of old-growth trees. Declaration of Lynn D. Kolund, Fed. Def. Exh. 5. The roads being maintained are Level 2 roads that have been open to the public. *Id.*

US Opp. to TRO                    17

timber sale.  Indeed, if the Forest Service were to approve a timber sale pursuant to the Traitors

Cove EIS, now in preparation, it is likely that additional road maintenance would have to occur

either prior to or as part of the timber sale contract.  Declaration of Jack Oien ¶ 10, Fed. Def.

Exh. 2.  This is so because the likely time lag between the maintenance now being done and the

date of actual sale is sufficiently long that additional maintenance would probably have to be

done prior to any sale.  *Id.*

Finally, plaintiffs argue that no irretrievable commitment of resources can be made prior

to completion of NEPA procedures.   But the commitment of resources was made long ago, and

after preparation of an EIS.  The North Revilla EIS considered these roads and provided for their

maintenance at a Level 2 standard..  Declaration of Lynn Kolund ¶ 8, Fed. Def. Exh. 5; Fed. Def.

Exh. 9.

In sum, none of plaintiffs' NEPA arguments has merit.

## B.  **Plaintiffs' Appeals Reform Act Claim Has Already Been Rejected**

The Appeals Reform Act (ARA), note following 16 U.S.C. § 1612, authorized the

Secretary of Agriculture to establish a notice and comment process for proposed actions of the

Forest Service concerning projects and activities implementing land management plans.  The

ARA also gives those who provided comments pursuant to that notice and comment process the

right to an administrative appeal of the decision.

Judge Singleton recently addressed the application of the ARA to categorical exclusions

in *Earth Island Institute v. Pengilly,* 376 F.Supp.2d 994, 1004-05 (E.D. Cal. 2005).  Plaintiffs

misread Judge Singleton's decision as supporting the proposition that all decisions involving

categorical exclusions require public notice, comment and administrative appeals.  To the

contrary, Judge Singleton struck down section 36 CFR §§ 215.4(a) and 215.12(f) of the 2003 version of Forest Service regulations implementing the ARA because those provisions exempted *all* categorical exclusion decisions from administrative appeal. However, Judge Singleton recognized that the "ARA certainly permits exclusion of environmentally insignificant projects from the appeals process." *Earth Island Institute v. Pengilly,* 376 F.Supp.2d at 1004. In an order clarifying his nation-wide injunction, which thus binds the Forest Service for the projects at issue here, he listed all of the categorically excluded activities that *are* subject to notice, comment and appeal. Fed. Def. Exh. 1. Road maintenance is not on that list. *Id.* Consequently, an injunction against the road maintenance projects here is inappropriate, at the very least as a matter of judicial comity. *Feller v. Brock,* 802 F.2d 722, 727-28 (4th Cir. 1986) ("whenever possible, coordinate courts should avoid issuing conflicting orders.").

## V.  PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM

In the absence of a congressional statute limiting the court's equitable discretion, irreparable harm is the *sine qua non* of injunctive relief. *Amoco Production Company v. Native Village of Gambell*, 480 U.S. 531, 542 (1987). Under any formulation of the preliminary injunction test, plaintiff must demonstrate that there exists a significant threat of irreparable injury. *Oakland Tribune, Inc. v. The Chronicle Publishing Company, Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985). Plaintiff fails to do so here.

This case does not involve the building of new roads. All of the roads at issue in the case are already in existence and are open to the public. The contracts involve maintenance of the existing roads to improve water quality and public safety. Increased water quality and public safety do not harm plaintiffs.

Plaintiffs apparently object to the proposed timber sales that could use the roads being maintained. As maintenance is appropriate regardless of whether the sales are ever held, the impacts of those sales cannot constitute irreparable harm from the maintenance. If and when the agency actually decides to hold the proposed timber sales, plaintiffs will have ample opportunity to raise any claims they have against the sales themselves.

## VI. THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST ENTRY OF AN INJUNCTION

### A. Halting the Rockfish and Francis Cove Projects Will Result in Environmental Harm by Leaving Roadbeds in an Unstable Condition

The courts will not issue an injunction in a NEPA case when the injunction would itself cause environmental harm. *American Motorcyclist Ass'n v. Watt,* 714 F.2d 962, 966 (9th Cir. 1983); *Alpine Lakes Protection Soc. v. Schlapfer,* 518 F.2d 1089 (9th Cir. 1975). The Rockfish road maintenance is already approximately 80% complete by cost. Declaration of Lynn Kolund ¶ 3, Fed. Def. Exh. 5. The Francis Cove road maintenance is already approximately 30% (21% by cost) complete. *Id.* Attached to the Declaration of Lynn Kolund, Fed. Def. Exh. 5, are reports setting forth the status of each road or road segment for which the Rockfish or Francis Cove contract calls for maintenance, and the harms that will occur if the maintenance is not completed. The activities remaining consist largely of compacting the aggregate already placed on the roadbed. *Id.* Failure to compact the road surface leaves it more subject to erosion, thereby endangering water quality. *Id.*

### B. Halting the Rockfish and Francis Cove Projects Will Result in Harm by Preventing Maintenance that Would Contribute to Water Quality and Public Safety

Both the Rockfish and Francis Cove Projects are located on the northern part of Revilla

Island and are not connected to Ketchikan by road.  Accordingly, equipment must be mobilized

to the site by barge.  Declaration of Lynn D. Kolund ¶ 9, Fed. Def. Exh. 5.  Thus, mobilization

costs are substantial.   Enjoining the completion of the maintenance now could result in the need

to demobilize and remobilize in the future.  Contract claims could result in the diversion of the

Forest Service's limited budget for maintenance to paying claims rather than performing the

environmentally beneficial maintenance.  Such diversion would harm the public interest.

### CONCLUSION

For the foregoing reasons, the Court should deny the motion for temporary restraining

order.

RESPECTFULLY SUBMITTED this 17th day of May, 2006, at Anchorage, Alaska.

> BRUCE M. LANDON
> U.S. Department of Justice
> Environment & Natural Resources Division
> 801 B Street, Suite 504
> Anchorage, Alaska  99501-3657
> Telephone: (907) 271-5452
> Facsimile:  (907) 271-5827
> Email: bruce.landon@usdoj.gov
>
> Attorney for Defendants

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of May, 2006 a copy of the foregoing
was served electronically to:

Marc Fink
Peter van Tuyn


   s/   Bruce M. Landon
Bruce M. Landon