|  | **FOREST SERVICE HANDBOOK**<br>**NATIONAL HEADQUARTERS (WO)**<br>**WASHINGTON, DC** |
|---|---|

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK**

**CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

**Amendment No.:** 1909.15-2004-2

**Effective Date:** July 6, 2004

**Duration:** This amendment is effective until superseded or removed.

| **Approved:** TOM L. THOMPSON<br>Deputy Chief for National Forest System | **Date Approved:** 06/29/2004 |
|---|---|

**Posting Instructions:** Amendments are numbered consecutively by Handbook number and calendar year. Post by document; remove the entire document and replace it with this amendment. Retain this transmittal as the first page(s) of this document. The last amendment to this Handbook was 1909.15-2004-1 to 1909.15_zero_code.

| New Document | 1909.15_10 | 25 Pages |
|---|---|---|
| Superseded Document(s) by Issuance Number and Effective Date | !1909.15,10 Contents<br>(Amendment 1909.15-92-1, 09/21/1992)<br>1909.15,10<br>(Amendment 1909.15-92-1, 09/21/1992) | 2 Pages<br><br>19 Pages |

**Digest:**

<u>10</u> - Notice of issuance of this amendment was published in the Federal Register on July 6, 2004 (69 FR 40591). Revises the chapter to make minor editorial changes in addition to the following specific changes:

<u>10.4-10.42</u> - Revises, reorganizes, recodes, and adds direction on responsibilities of the official responsible for a decision on a proposed action (sec. 10.41) and the Director, Ecosystem Management Coordination Staff, Washington Office (sec. 10.42). Adds wording to clarify that the list of responsibilities in section 10.41 for the official responsible for decisions on a proposed action is not a step-by-step process and does not imply any particular sequence and adds



EXHIBIT 10
Page 1 of 16

| | |
|---|---|
| WO AMENDMENT 1909.15-2004-2 | 1909.15_10 |
| EFFECTIVE DATE: 07/06/2004 | Page 2 of 25 |
| DURATION: This amendment is effective until superseded or removed. | |

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK**
**CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

## Digest--Continued:

responsibility to initiate the NEPA process with a project initiation letter (para. 2); to document approval of significant issues (para. 5); to document approval of alternatives that merit detailed study (para. 6); and to ensure, when signing a decision document, that effects analyses address all legal and regulatory requirements and that accuracy and precision are consistent with the methods and technology used (para. 8). Recodes to a new section 10.42 without change to the existing direction on the responsibilities of the Director, Ecosystem Management Coordination Staff, Washington Office.

12.1 - Removes a former sentence, which inferred that interdisciplinary team membership is restricted to Federal Government personnel, for consistency with the provisions of the Unfunded Mandates Reform Act of 1995 (2 U.S.C. Sec. 1501 et seq.), as it relates to the Federal Advisory Committee Act (5 U.S.C. App.).

EXHIBIT 10
Page 2 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 3 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK**
**CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

## Table of Contents

10.2 - Objectives ............................................................................................................. 5
10.3 - Policy ................................................................................................................... 5
10.4 - Responsibility ...................................................................................................... 6
   10.41 - Official Responsible for Decision on Proposed Action.............................. 6
   10.42 - Director, Ecosystem Management Coordination Staff, Washington Office .............. 6
**11 - CONDUCT SCOPING** ................................................................................................7
   11.1 - Organize Scoping Effort .................................................................................. 8
   11.2 - Identify Characteristics of Proposed Action and Nature of Decision To Be Made ......... 8
   11.3 - Identify Responsible Official(s) and Agencies Involved ................................ 10
      11.31 - Determine Lead and Cooperating Agencies .......................................... 10
      11.31a - Lead Agency ........................................................................................ 11
      11.31b - Cooperating With Other Agencies ...................................................... 12
   11.4 - Determine if Existing Documents Address Proposed Action ........................ 13
   11.5 - Look for Preliminary Issues and Identify Public Participation Needs ........... 13
      11.51 - Identify Preliminary Issues ................................................................... 13
      11.52 - Identify Public Participation Needs ...................................................... 14
   11.6 - Determine If Proposal Can Be Categorically Excluded from Documentation in Environmental Impact Statement or Environmental Assessment ................ 15
   11.7 - Inform Participants and the Public of Results of Scoping and the Progress of the Analysis ................................................................................................. 16
**12 - USE INTERDISCIPLINARY ANALYSIS** ..............................................................16
   12.01 - Authority ...................................................................................................... 16
   12.03 - Policy .......................................................................................................... 16
   12.04 - Responsibility ............................................................................................. 16
   12.1 - Interdisciplinary Team Selection ................................................................... 17
      12.11 - Team Leader ......................................................................................... 17
      12.12 - Other Team Members ........................................................................... 17
   12.2 - Selection of Interdisciplinary Analyst(s) in Lieu of a Team .......................... 18
   12.3 - Role of Interdisciplinary Team or Analyst(s) ................................................ 18
      12.31 - Formulate Analysis and Evaluation Criteria ........................................ 18
      12.32 - Identify Significant Issues .................................................................... 19
      12.33 - Explore Possible Alternatives ............................................................... 19
      12.34 - Expand Public Involvement as Appropriate ......................................... 19
**13 - COLLECT AND INTERPRET DATA** ....................................................................19
   13.01 - Authority ...................................................................................................... 19
   13.03 - Policy .......................................................................................................... 20
**14 - DEVELOP ALTERNATIVES** ..................................................................................20
   14.1 - No-Action Alternative .................................................................................. 21
   14.2 - Other Alternatives ........................................................................................ 21
   14.3 - Alternatives Not Considered in Detail ......................................................... 21

EXHIBIT 10
Page 3 of 16

Case 3:06-cv-00068-JWS    Document 27-12    Filed 05/17/2006    Page 4 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 4 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK**
**CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

**15 - ESTIMATE EFFECTS OF EACH ALTERNATIVE ................................................. 21**
    15.1 - Cumulative Effects ........................................................................................ 22
**16 - EVALUATE ALTERNATIVES AND IDENTIFY PREFERRED ALTERNATIVE(S) 22**
**17 - DETERMINE TYPE OF ENVIRONMENTAL DOCUMENT NEEDED ..................... 22**
**18 - CORRECTION, SUPPLEMENTATION, OR REVISION OF ENVIRONMENTAL**
    **DOCUMENTS AND RECONSIDERATION OF DECISIONS TO TAKE ACTION**
    **........................................................................................................................... 23**
    18.03 - Policy ......................................................................................................... 23
    18.1 - Review and Documentation of New Information Received After Decision Has Been
        Made ........................................................................................................ 23
    18.2 - Reconsideration of Decisions Based on an Environmental Impact Statement ............... 24
    18.3 - Reconsideration of Decisions Categorically Excluded from Environmental
        Documentation ........................................................................................ 25
    18.4 - Reconsideration of Decisions Based on Environmental Assessment and Finding of No
        Significant Impact .................................................................................. 25

EXHIBIT 10
Page 4 of 16

Case 3:06-cv-00068-JWS   Document 27-12   Filed 05/17/2006   Page 5 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 5 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK
CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

Environmental analysis assesses the nature and importance of the physical, biological, social, and economic effects of a proposed action and its reasonable alternatives. Exhibit 01 in section 06 of this Handbook shows how environmental analysis relates to other procedures required under the National Environmental Policy Act (NEPA) and its implementing regulations.

For ease of reference and use, portions of the relevant Council on Environmental Quality (CEQ) regulations are set out in boldface type and block-indented throughout the text of this chapter.

## 10.2 - Objectives

1. Conduct scoping (sec. 05) to:

    a. Determine the nature and complexity of the proposed action.

    b. Identify environmental issues related to the proposed action.

    c. Determine the disciplines required to guide environmental analysis and documentation.

    d. Determine how much analysis is necessary.

    e. Achieve effective use of time and money in conducting environmental analysis.

    f. Determine the type and level of public participation.

2. Conduct environmental analyses to assess the nature, characteristics, and significance of the effects of a proposed action and its alternatives on the human environment.

## 10.3 - Policy

1. Environmental analysis, as the term is used in the Forest Service, includes scoping as well as subsequent analysis of the proposed action.

2. The use of scoping applies to all proposed actions which require environmental analysis; it is not limited to the preparation of an environmental impact statement (EIS).

    a. Conduct the scoping actions set forth in this chapter commensurate with the nature and complexity of the proposed action.

    b. Keep the public informed of the progress of environmental analyses and decisionmaking.

EXHIBIT 10
Page 5 of 16

Case 3:06-cv-00068-JWS   Document 27-12   Filed 05/17/2006   Page 6 of 16

| WO AMENDMENT 1909.15-2004-2 | 1909.15_10 |
| EFFECTIVE DATE: 07/06/2004 | Page 6 of 25 |
| DURATION: This amendment is effective until superseded or removed. | |

FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK
CHAPTER 10 - ENVIRONMENTAL ANALYSIS

## 10.4 - Responsibility

### 10.41 - Official Responsible for Decision on Proposed Action

The official who is responsible for a decision on a proposed action (FSM 1950.4) also has the responsibility for the following matters at various stages of the process:

   1. Ensure that an appropriate level of scoping and environmental analysis and documentation occurs.

   2. Determine whether an interdisciplinary (ID) team of specialists and a formal plan of work are needed and initiate the NEPA process with a project initiation letter (PIL) (sec. 12.04).

   3. Select the ID team and leader, where needed, and keep abreast of their work (sec. 12.1).

   4. Ensure that the public is kept informed of the results of scoping and the progress of the environmental analysis commensurate with the public interest in the proposed action.

   5. Document approval of the list of significant issues used to develop alternatives to the proposed action (sec. 12.3b).

   6. Document approval of which alternatives to a proposed action merit detailed study and analysis (sec. 12.33).

   7. Identify the preferred alternative (sec. 16).

   8. Ensure, when signing the decision document, that the effects analyses (direct, indirect, and cumulative) address all legal and regulatory requirements and ensure that the levels of accuracy and precision are consistent with the methods and technology used.

### 10.42 - Director, Ecosystem Management Coordination Staff, Washington Office

For actions where the Chief or the Secretary is the official responsible for a decision, it is the responsibility of the Washington Office Director, Ecosystem Management Coordination Staff:

   1. To participate in scoping and subsequent analysis, including identification of the preferred alternative(s), with the appropriate field or other Washington Office staffs and

   2. To involve the appropriate Deputy Chief, the Chief, or the Assistant Secretary, as necessary (FSM 1950.41a).

EXHIBIT 10
Page 6 of 16

Case 3:06-cv-00068-JWS   Document 27-12   Filed 05/17/2006   Page 7 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 7 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK**
**CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

## 11 - CONDUCT SCOPING

Although the Council on Environmental Quality (CEQ) regulations require scoping only for environmental impact statement (EIS) preparation, the Forest Service has broadened the concept to apply to all proposed actions.

Scoping is an integral part of environmental analysis. Scoping includes refining the proposed action, determining the responsible official and lead and cooperating agencies, identifying preliminary issues, and identifying interested and affected persons. The results of scoping are used to identify public involvement methods, refine issues, select an interdisciplinary team, establish analysis criteria, and explore possible alternatives and their probable environmental effects.

Because the nature and complexity of a proposed action determine the scope and intensity of the required analysis, no single technique is required or prescribed. Except where required by statute or regulations, the responsible official may adjust or combine the various steps of the process outlined in this chapter to aid in the understanding of the proposed action and identified issues.

The following direction on scoping from the CEQ regulations applies to all scoping conducted by the Forest Service without regard to whether or not the results of the analysis is to be documented in an EIS or an environmental assessment (EA).

> **There shall be an early and open process for determining the scope of issues to be addressed and for identifying the significant issues related to a proposed action. This process shall be termed scoping...**
> **(a) As part of the scoping process the lead agency shall:**
> **(1) Invite the participation of affected Federal, State, and local agencies, any affected Indian tribe, the proponent of the action, and other interested persons (including those who might not be in accord with the action on environmental grounds), unless there is a limited exception under §1507.3(c). An agency may give notice in accordance with §1506.6.**
> **(2) Determine the scope (§1508.25) and the significant issues to be analyzed in depth in the environmental impact statement.**
> **(3) Identify and eliminate from detailed study the issues which are not significant or which have been covered by prior environmental review (§1506.3), narrowing the discussion of these issues in the statement to a brief presentation of why they will not have a significant effect on the human environment or providing a reference to their coverage elsewhere.**
> **(4) Allocate assignments for preparation of the environmental impact statement among the lead and cooperating agencies, with the lead agency retaining responsibility for the statement.**

EXHIBIT 10
7 16

Case 3:06-cv-00068-JWS    Document 27-12    Filed 05/17/2006    Page 8 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 8 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK
CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

> (5) Indicate any public environmental assessments and other environmental impact statements which are being or will be prepared that are related to but are not part of the scope of the impact statement under consideration.
>
> (6) Identify other environmental review and consultation requirements so the lead and cooperating agencies may prepare other required analyses and studies concurrently with, and integrated with, the environmental impact statement as provided in §1502.25.
>
> (7) Indicate the relationship between the timing of the preparation of environmental analyses and the agency's tentative planning and decisionmaking schedule. (40 CFR 1501.7)

For additional direction on scoping, see section 65.13, "CEQ Scoping Guidance."

## 11.1 - Organize Scoping Effort

The National Environmental Policy Act (NEPA) requires a systematic, interdisciplinary approach to ensure integrated application of the natural and social sciences and the environmental design arts in any planning and decisionmaking that affects the human environment (42 U.S.C. 4332(2)(A)).

The responsible official may choose whether or not to establish an interdisciplinary (ID) team and designate a team leader to conduct scoping. However, the decision not to establish an ID team does not relieve the Forest Service of the responsibility to take an interdisciplinary approach to the scoping of the proposed action. In ensuring an interdisciplinary approach to the scoping process, responsible officials shall be guided by the direction on interdisciplinary analysis in section 12 of this chapter.

## 11.2 - Identify Characteristics of Proposed Action and Nature of Decision To Be Made

The most important element of the scoping process is to correctly identify and describe the proposed action. Elements of the proposed action include the nature, characteristics, and scope of the proposed action, the purpose and need for the proposed action, and the decision to be made.

Case 3:06-cv-00068-JWS   Document 27-12   Filed 05/17/2006   Page 9 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 9 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK
CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

The following concepts from the CEQ regulations also apply to gathering preliminary information for all proposals which may undergo environmental analyses:

> (a) Agencies shall make sure the proposal which is the subject of an environmental impact statement is properly defined. Agencies shall use the criteria for scope (§1508.25) to determine which proposal(s) shall be the subject of a particular statement. Proposals or parts of proposals which are related to each other closely enough to be, in effect, a single course of action shall be evaluated in a single impact statement.
> (b) Environmental impact statements may be prepared, and are sometimes required, for broad Federal actions such as the adoption of new agency programs or regulations (§1508.18). Agencies shall prepare statements on broad actions so that they are relevant to policy and are timed to coincide with meaningful points in agency planning and decisionmaking.
> (c) When preparing statements on broad actions (including proposals by more than one agency), agencies may find it useful to evaluate the proposal(s) in one of the following ways:
>> (1) Geographically, including actions occurring in the same general location, such as body of water, region, or metropolitan area.
>> (2) Generically, including actions which have relevant similarities, such as common timing, impacts, alternatives, methods of implementation, media, or subject matter.
>> (3) By stage of technological development including federal or federally assisted research, development or demonstration programs for new technologies which, if applied, could significantly affect the quality of the human environment. Statements shall be prepared on such programs and shall be available before the program has reached a stage of investment or commitment to implementation likely to determine subsequent development or restrict later alternatives.
>
> (d) Agencies shall as appropriate employ scoping (§1501.7), tiering (§1502.20), and other methods listed in §1500.4 and 1500.5 to relate broad and narrow actions and to avoid duplication and delay. (40 CFR 1502.4)

EXHIBIT 10
Page 9 - 16

Case 3:06-cv-00068-JWS   Document 27-12   Filed 05/17/2006   Page 10 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 10 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK**
**CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

## 11.3 - Identify Responsible Official(s) and Agencies Involved

The agency employee who has the delegated authority to make and implement a decision on a proposed action (FSM 1230 and 1950) is the responsible official for NEPA compliance. When an action is proposed, the responsible official must identify and contact other Federal, State, or local agencies with an interest in the action.

## 11.31 - Determine Lead and Cooperating Agencies

The CEQ regulations address the role of the lead and cooperating agencies' responsibilities as follows:

> The purpose of this section is to emphasize agency cooperation early in the NEPA process. Upon request of the lead agency, any other Federal agency which has jurisdiction by law shall be a cooperating agency. In addition any other Federal agency which has special expertise with respect to any environmental issue, which should be addressed in the statement, may be a cooperating agency upon request of the lead agency. An agency may request the lead agency to designate it a cooperating agency.
> (a) The lead agency shall:
>   (1) Request the participation of each cooperating agency in the NEPA process at the earliest possible time.
>   (2) Use the environmental analysis and proposals of cooperating agencies with jurisdiction by law or special expertise, to the maximum extent possible consistent with its responsibility as lead agency.
>   (3) Meet with a cooperating agency at the latter's request.
> (b) Each cooperating agency shall:
>   (1) Participate in the NEPA process at the earliest possible time.
>   (2) Participate in the scoping process (described below in §1501.7).
>   (3) Assume on request of the lead agency responsibility for developing information and preparing environmental analyses including portions of the environmental impact statement concerning which the cooperating agency has special expertise.
>   (4) Make available staff support at the lead agency's request to enhance the latter's interdisciplinary capability.

Case 3:06-cv-00068-JWS   Document 27-12   Filed 05/17/2006   Page 11 of 16

| WO AMENDMENT 1909.15-2004-2 | 1909.15_10 |
| EFFECTIVE DATE: 07/06/2004 | Page 11 of 25 |
| DURATION: This amendment is effective until superseded or removed. | |

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK**
**CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

(5) Normally use its `own funds. The lead agency shall, to the extent available funds permit, fund those major activities or analyses it requests from cooperating agencies. Potential lead agencies shall include such funding requirements in their budget requests.

(c) A cooperating agency may in response to a lead agency's request for assistance in preparing the environmental impact statement (described in paragraph (b) (3), (4), or (5) of this section) reply that other program commitments preclude any involvement or the degree of involvement requested in the action that is the subject of the environmental impact statement. A copy of this reply shall be submitted to the Council. (40 CFR 1501.6)

Refer to the definitions of lead and cooperating agency in section 05 of this Handbook. For additional guidance on lead and cooperating agencies, see section 65.12, CEQ's "40 Most Asked Questions," questions 14a, 14b, 14c, and 30.

## 11.31a - Lead Agency

When the proposed action will occur on National Forest System lands, the Forest Service is usually the lead agency. The Forest Service may also be a lead or cooperating agency when State and private forest lands are involved.

The CEQ regulations address the determination and role of the lead agency as follows:

(a) A lead agency shall supervise the preparation of an environmental impact statement if more than one Federal agency either:
  (1) Proposes or is involved in the same action; or
  (2) Is involved in a group of actions directly related to each other because of their functional interdependence or geographical proximity.
(b) Federal, State, or local agencies, including at least one Federal agency, may act as joint lead agencies to prepare an environmental impact statement (§1506.2).
(c) If an action falls within the provisions of paragraph (a) of this section the potential lead agencies shall determine by letter or memorandum which agency shall be the lead agency and which shall be cooperating agencies. The agencies shall resolve the lead agency question so as not to cause delay. If there is disagreement among the agencies, the following factors (which are listed in order of descending importance) shall determine lead agency designation:

EXHIBIT 10
Page 11 of 16

Case 3:06-cv-00068-JWS   Document 27-12   Filed 05/17/2006   Page 12 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 12 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK**
**CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

      (1) Magnitude of agency's involvement.
      (2) Project approval/disapproval authority.
      (3) Expertise concerning the action's environmental effects.
      (4) Duration of agency's involvement.
      (5) Sequence of agency's involvement.
(d) Any Federal agency, or any State or local agency or private person substantially affected by the absence of lead agency designation, may make a written request to the potential lead agencies that a lead agency be designated. (e) If Federal agencies are unable to agree on which agency will be the lead agency or if the procedure described in paragraph (c) of this section has not resulted within 45 days in a lead agency designation, any of the agencies or persons concerned may file a request with the Council asking it to determine which Federal agency shall be the lead agency. A copy of the request shall be transmitted to each potential lead agency. The request shall consist of:
      (1) A precise description of the nature and extent of the proposed action.
      (2) A detailed statement of why each potential lead agency should or should not be the lead agency under the criteria specified in paragraph (c) of this section.
(f) A response may be filed by any potential lead agency concerned within 20 days after a request is filed with the Council. The Council shall determine as soon as possible but not later than 20 days after receiving the request and all responses to it which Federal agency shall be the lead agency and which other Federal agencies shall be cooperating agencies. (40 CFR 1501.5)

If a responsible Forest Service official wishes to ask the Council on Environmental Quality to determine which Federal agency shall be the lead agency, send the request to the Washington Office Director of Environmental Coordination for processing.

## 11.31b - Cooperating With Other Agencies

Where National Forest System lands are involved, the Forest Service shall play a strong role in the preparation of environmental documents. If the Forest Service is the lead agency, promptly request in writing that all other Federal agencies with jurisdiction by law or special expertise (sec. 05) become cooperating agencies. Also, promptly request in writing the cooperation of potentially affected State and local government agencies.

When National Forest System lands are involved and the Forest Service is not the lead agency, the responsible Forest Service official shall make a written request to participate as a cooperating agency in scoping, environmental analysis, and documentation.

EXHIBIT 10
Page 12 of 16

Case 3:06-cv-00068-JWS   Document 27-12   Filed 05/17/2006   Page 13 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 13 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK**
**CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

If the Forest Service is asked to be a cooperating agency and other program commitments preclude being able to become involved, the responsible official shall consult with the Washington Office Director of Ecosystem Management Coordination prior to preparing a reply to this effect to the requesting agency. Send two copies of this reply to the Washington Office Director of Ecosystem Management Coordination, for transmittal to CEQ.

## 11.4 - Determine if Existing Documents Address Proposed Action

During scoping, determine if there are existing documents pertinent to the environmental analysis. Existing environmental documents, higher level plans such as resource management plans, and other pertinent documents, including State and local land use plans or data sources, may provide useful information to:

1. Help define the proposed action.

2. Narrow the scope of analysis.

3. Estimate potential environmental effects.

4. Reduce the bulk of the documentation.

In such cases, all or parts of these existing documents may be tiered to, adopted, or incorporated by reference in documenting the site-specific environmental analysis (sec. 05, 22.32, 25.1, and 25.2).

## 11.5 - Look for Preliminary Issues and Identify Public Participation Needs

## 11.51 - Identify Preliminary Issues

Identify and evaluate preliminary issues for possible significance, based on review of similar actions, knowledge of the area or areas involved, discussions with interested and affected persons, community leaders, organizations, and State and local governments, and/or consultations with experts and other agencies familiar with such actions and their direct, indirect, and cumulative effects. This review provides an early look at potential issues, sharpens the focus of the environmental analysis, and provides a means for:

> **(d) Identifying at an early stage the significant environmental issues deserving of study and deemphasizing insignificant issues, narrowing the scope of the environmental impact statement accordingly.**
> **(40 CFR 1501.1(d))**



EXHIBIT __10__
Page __13__ of __16__

Case 3:06-cv-00068-JWS   Document 27-12   Filed 05/17/2006   Page 14 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 14 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK**
**CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

## 11.52 - Identify Public Participation Needs

Review and consider comments and suggestions offered by interested and affected agencies, organizations, and individuals in response to listing of the action in the schedule of proposed actions (sec. 07). Consider options for involving potentially interested and affected agencies, organizations, and persons in the analysis process.

The CEQ regulations provide the following direction on public notice and participation:

> **Agencies shall: . . .**
>> **(b) Provide public notice of NEPA-related hearings, public meetings, and the availability of environmental documents so as to inform those persons and agencies who may be interested or affected.**
>>> **(1) In all cases the agency shall mail notice to those who have requested it on an individual action.**
>>> **(2) In the case of an action with effects of national concern notice shall include publication in the FEDERAL REGISTER and notice by mail to national organizations reasonably expected to be interested in the matter . . . An agency engaged in rulemaking may provide notice by mail to national organizations who have requested that notice regularly be provided. Agencies shall maintain a list of such organizations.**
>>> **(3) In the case of an action with effects primarily of local concern the notice may include:**
>>>> **(i) Notice to State and area wide clearinghouses . . .**
>>>> **(ii) Notice to Indian tribes when effects may occur on reservations.**
>>>> **(iii) Following the affected State's public notice procedures for comparable actions.**
>>>> **(iv) Publication in local newspapers (in papers of general circulation rather than legal papers).**
>>>> **(v) Notice through other local media.**
>>>> **(vi) Notice to potentially interested community organizations including small business associations.**
>>>> **(vii) Publication in newsletters that may be expected to reach potentially interested persons.**
>>>> **(viii) Direct mailing to owners and occupants of nearby or affected property.**
>>>> **(ix) Posting of notice on and off site in the area where the action is to be located.**

EXHIBIT 10
Page 14 of 16

Case 3:06-cv-00068-JWS   Document 27-12   Filed 05/17/2006   Page 15 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 15 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK**
**CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

>   **(c) Hold or sponsor public hearings or public meetings whenever appropriate or in accordance with statutory requirements applicable to the agency. Criteria shall include whether there is:**
>     **(1) Substantial environmental controversy concerning the proposed action or substantial interest in holding the hearing.**
>     **(2) A request for a hearing by another agency with jurisdiction over the action supported by reasons why a hearing will be helpful. If a draft environmental impact statement is to be considered at a public hearing, the agency should make the statement available to the public at least 15 days in advance (unless the purpose of the hearing is to provide information for the draft environmental impact statement).**
>   **(d) Solicit appropriate information from the public. (40 CFR 1506.6)**

## 11.6 - Determine If Proposal Can Be Categorically Excluded from Documentation in Environmental Impact Statement or Environmental Assessment

After determining the nature of the proposed action; identifying preliminary issues; identifying the interested and affected agencies, organizations, and individuals; and the extent of existing documentation, the responsible official should have sufficient data to determine if the proposed action can be categorically excluded from documentation in an EIS or an EA or, alternatively, to determine the type of document that should be prepared.

If the proposed action is within one of the categories in the Department of Agriculture policies and procedures (7 CFR 1b.3) or one of the categories listed in sections 31.12 or 31.2, and if the proposed action does not involve any extraordinary circumstances (sec. 30.3), the action may be categorically excluded from documentation in an EIS or EA. If the proposed action is not within a listed category, it may not be categorically excluded from documentation on an EIS or EA.

If required by chapter 30, document a decision to categorically exclude a proposed action from documentation in an EIS or EA in a decision memo.

At this point, it may be possible to determine if an EIS should be prepared. If the proposed action falls within one of the classes of actions in section 20.6 that require preparation of an EIS, or if preliminary analysis indicates that there may be significant effects on the environment, prepare a notice of intent to prepare an EIS for publication in the Federal Register.

EXHIBIT 10
Page 15 of 16

Case 3:06-cv-00068-JWS   Document 27-12   Filed 05/17/2006   Page 16 of 16

WO AMENDMENT 1909.15-2004-2
EFFECTIVE DATE: 07/06/2004
DURATION: This amendment is effective until superseded or removed.

1909.15_10
Page 16 of 25

**FSH 1909.15 - ENVIRONMENTAL POLICY AND PROCEDURES HANDBOOK
CHAPTER 10 - ENVIRONMENTAL ANALYSIS**

## 11.7 - Inform Participants and the Public of Results of Scoping and the Progress of the Analysis

Consistent with the importance of the proposed action, inform participants of the results of scoping and keep the public informed of the progress of the environmental analysis through appropriate means. This may include, but is not limited to: personal contacts with individuals, organizations, and State and local government officials; use of local media; and newsletters.

Enter the status of the environmental analysis, the decision memo, or the notice of intent to prepare an EIS on the schedule of proposed actions.

## 12 - USE INTERDISCIPLINARY ANALYSIS

### 12.01 - Authority

Section 102(2)(A) of the National Environmental Policy Act (NEPA) requires all agencies to use an interdisciplinary approach to analysis which will ensure the integrated use of the natural and social sciences and the environmental design arts in planning and decisionmaking which may have an impact on the human environment (42 U.S.C. 4332(2)(A)). The Council on Environmental Quality (CEQ) regulations requires that:

> **The disciplines of the prepares shall be appropriate to the scope and issues identified in the scoping process (§1501.7). (40 CFR 1502.6)**

### 12.03 - Policy

Establish interdisciplinary teams to analyze proposed actions with the potential for significant environmental effects, especially if an environmental impact statement (EIS) may be needed.

Proposals for less complex actions may not require the selection of an interdisciplinary team. In such cases, a knowledgeable individual may perform the analysis, which must consider all of the physical, biological, social, and economic factors pertinent to the decision.

Interdisciplinary review of the analysis also may satisfy the requirement for use of the interdisciplinary approach.

### 12.04 - Responsibility

Except for those actions determined not to require documentation in an EIS or environmental assessment (EA) under 40 CFR 1508.4, the responsible official shall initiate the NEPA process with a project initiation letter (PIL) (sec. 05 and 10.41).


EXHIBIT 10
Page 16 of 16