Marc D. Fink (MN License # 343407)
4515 Robinson Street
Duluth, Minnesota 55804
Tel: 218-525-3884
Fax: 218-525-3857
marc@marcdfink.com

Peter Van Tuyn (AK Bar # 8911086)
Bessenyey & Van Tuyn
310 K Street, Suite 200
Anchorage, AK 99501
Tel:  907-278-2000
Fax:  907-278-2004
pvantuyn@earthlink.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS, and GLEN ITH,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES FOREST  SERVICE, an agency of the U.S. Department of Agriculture,<br><br>Defendant. | Case No: 3:06-CV-0068-JWS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

I.      This Case is Not Moot Concerning Any of the Road Reconstruction Contracts .    3

II.     FSEEE Has Standing to Challenge All of the Road Reconstruction Contracts . .    5

        A.     FSEEE Members Have Been and Will Continue to Be Harmed by the
               Challenged Road Reconstruction Projects . . . . . . . . . . . . . . . . . . . . . . . .    5

        B.     FSEEE Has Also Suffered Procedural Injury by the Forest Service's
               Failure to Allow Public Scoping and Comment on the Road Projects . . .    7

        C.     FSEEE Has Demonstrated Causation and Redressability . . . . . . . . . . . . .    9

III.    FSEEE Has Raised Serious Questions, and Will Prevail on the Merits . . . . . . .    10

        A.     The Forest Service Failed to Follow the Proper Procedures to
               Categorically Exclude the Challenged Road Projects from NEPA
               Review, and the Categorical Exclusion is Improper for these Road
               Projects . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

        B.     The Forest Service Violated NEPA by Not Analyzing and Disclosing
               the Environmental Impacts of the SW Neets, Rockfish, and Francis
               Cove Road Reconstruction, and the Traitors Cove Logging Project,
               within a Single EIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

               1)     The Road Reconstruction and Logging Project are Connected
                      Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

               2)     The Road Reconstruction and Logging Project May Result in
                      Cumulatively Significant Impacts . . . . . . . . . . . . . . . . . . . . . . . .    18

        C.     The Forest Service Violated NEPA by Entering into Contracts and
               Proceeding with Road Reconstruction Prior to Completing the
               Environmental Analyses for the Associated Timber Sales . . . . . . . . . . . .    20

        D.     The Forest Service Violated the Appeals Reform Act by Proceeding
               with Road Reconstruction Prior to Providing Public Notice, Accepting
               Public Comments, and Allowing Administrative Appeals . . . . . . . . . . . .    22

IV.     FSEEE Will Suffer Irreparable Harm if an Injunction is Not Issued, and the
        Balance of Harms Tips Strongly in FSEEE's Favor . . . . . . . . . . . . . . . . . . . .     23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

## TABLE OF AUTHORITIES

### CASES

*Alaska Center for the Environment v. U.S. Forest Service*
189 F.3d 851 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12, 15

*Alaska Fish and Wildlife Federation v. Dunkle,*
829 F.2d 933 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     4

*Alaska State Snowmobile Assoc. v. Babbitt,*
79 F.Supp.2d 1116 (D. Alaska 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13, 15

*Alaska State Snowmobile Assoc. v. Babbitt,*
1999 U.S. Dist. LEXIS 21148 (D. Alaska, Nov. 18, 1999) . . . . . . . . . . . . . . . . . . . .     15

*Back Country Horseman of America v. Johanns,*
- F.Supp.2d - , 2006 WL 825534 (D.C.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . .     15

*Blue Mountains Biodiversity Project v. Blackwood,*
161 F.3d 1208 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18, 19

*California v. Norton,*
311 F.3d 1162 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14, 15

*Cantrell v. City of Long Beach,*
241 F.3d 674 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3, 5

*Churchill County v. Babbitt,*
150 F.3d 1072 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

*Citizens' Committee to Save our Canyons v. U.S. Forest Service,*
297 F.3d 1012 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13

*Citizens for Better Forestry v. U.S. Dept. of Agriculture,*
341 F.3d 961 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 10, 23

*Earth Island Institute v. Pengilly,*
376 F.Supp.2d 994 (E.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     22

*Earth Island Institute v. U.S. Forest Service,*
442 F.3d 1147 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

*Edmonds Institute v. Babbitt,*
42 F. Supp. 2d 1 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

*Friends of the Earth, Inc. v. Laidlaw Environmental Services,*
528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5, 6, 7

*Jones v. Gordon,*
792 F.2d 821 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5, 6, 7

*Lujan v. National Wildlife Federation,*
497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

*Metcalf v. Daley,*
214 F.3d 1135 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21, 22

*Northern California Power Agency v. F.E.R.C.,*
37 F.3d 1517 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

*Save Greers Ferry Lake v. Department of Defense,*
255 F.3d 498 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

*Save the Yaak Committee v. Block,*
840 F.2d 714 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     16, 17

*Sierra Club v. Morton,*
405 U.S. 727 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

*Sierra Club v. U.S. Forest Service,*
843 F.2d 1190 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     19

*Steamboaters v. FERC,*
759 F.2d 1382 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13

*Thomas v. Peterson*,
753 F.2d 754 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17, 18, 20, 23

*West v. Sec'y of Dep't of Transportation*,
206 F.3d 920 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

 *Wilderness Society v. Rey*,
180 F.Supp.2d 1141 (D. Mont. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

*Wilderness Society v. Rey*,
Civ. 03-119-M-DWM (D. Montana) (April 24, 2006, Order) . . . . . . . . . . . . . . . . . . .    22

## STATUTES

16 U.S.C. § 1612 Note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

16 U.S.C. § 1612(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

## REGULATIONS

40 C.F.R. § 1502.2(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21, 22

40 C.F.R. § 1506.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

40 C.F.R. § 1506.1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20, 22

40 C.F.R. § 1506.1(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

40 C.F.R. § 1508.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11, 18

40 C.F.R. § 1508.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

40 C.F.R. § 1508.25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

40 C.F.R. § 1508.25(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16, 18

40 C.F.R. § 1508.25(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18, 20

MISCELLANEOUS

FSH 1909.15, Chapter 30.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

FSH 1909.15, Chapter 30.3(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12

FSH 1909.15, Chapter 31.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12

FSH 1909.15, Chapter 31.12(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

70 Fed. Reg. 16,795 (April 1, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19, 22

# INTRODUCTION

Forest Service wildlife biologist Glen Ith and Forest Service Employees for Environmental Ethics ("FSEEE") filed this case to force the Forest Service to follow its own procedures before entering into contracts and proceeding with significant road reconstruction projects. Even though the Forest Service's Handbook and Ninth Circuit precedent explicitly require the agency to conduct public scoping *before* categorically excluding a road project from NEPA review, FSEEE only found out about the projects at issue in this case due to an accidental fly over and subsequent investigation. *See* Second Stahl Dec. There is no evidence in the record that the Forest Service ever considered the environmental consequences of these road projects, or whether there are potential extraordinary circumstances that would preclude the use of a categorical exclusion.

Prior to litigation, the Forest Service routinely referred to the challenged road projects as what they actually are: road <u>reconstruction</u>. *See* First Stahl Dec., Ex. N, O, P. For the various road projects, the Forest Service is logging old growth trees, opening formerly closed roads in remote areas, constructing rock quarries, installing culverts and bridges, and constructing marine access facilities next to the water. And yet the Forest Service claims that each of the five road projects fits within a limited categorical exclusion for the <u>maintenance</u> of roads and trails, which is supposed to only include minor activities such as the grading and resurfacing of a road, the cleaning of culverts, and the clearing of brush. *See* FSH 1909.15, Chapter 31.12(4).

The Forest Service claims that three of the road reconstruction projects are not related to the proposed Traitors Cove timber sale, for which the agency is already in the process of preparing an environmental impact statement ("EIS"). However, one only needs to look at maps of the roads that are included within the "SW Neets, Rockfish, and Francis Cove" road reconstruction projects, along with the harvest units for the "SW Neets, Rockfish, and Francis Cove" timber sales (which have been combined to form the Traitors Cove project), to see the clear connection.

The Forest Service further claims that the road reconstruction projects do not have to be considered within the Traitors Cove EIS that is already being prepared because the road reconstruction will not independently result in significant environmental impacts. By definition, however, cumulatively significant impacts may result from the road reconstruction projects when considered *along with* the timber sale that is currently proposed in the very same analysis area.

Last, the Forest Service finds it "remarkable" that FSEEE would argue that the Forest Service cannot take actions to implement the Traitors Cove timber sale, such as the ongoing road work, until the EIS is completed. This, however, is precisely what NEPA requires, 40 C.F.R. § 1506.1, and was in fact recognized in the press by the Forest Supervisor: "Prior to us doing any development activities, we always do an environmental assessment." *See* Ex. A, attached hereto.

Three of the five road projects at issue in this case were completed before FSEEE even found out about them. Work on the remaining two projects (Rockfish and Francis Cove) is currently ongoing. FSEEE therefore recognizes that it must limit its request for preliminary injunctive relief to just the Rockfish and Francis Cove projects.

To establish harm from the ongoing road reconstruction, FSEEE submitted declarations from qualified experts which the Forest Service has largely ignored. As explained, reconstruction disturbs and compacts soils, removes vegetative cover, increases soil erosion, and adds to the adverse impacts from associated timber sales. First Montgomery Dec., ¶¶ 4-7. Other activities associated with these projects will further cause harm, including the development of rock quarries, construction of marine access facilities, and installation of major culverts and bridges. Second Montgomery Dec., ¶¶ 5-9. On the other hand, the Forest Service points to just two locations where halting the road work may result in harm, but in each instance the continuation of road work is just as likely to produce environmental harm. *Id*, ¶ 12. FSEEE is likely to prevail on the merits, the balance of harms tips in its favor, and a temporary injunction should now be issued.

**ARGUMENT**

**I.    This Case is Not Moot Concerning Any of the Road Reconstruction Contracts**

The Forest Service argues that FSEEE's motion for a temporary restraining order and preliminary injunction is moot concerning three of the five road reconstruction projects (SW Neets, Road 6231 and Road 6232) because all activities under those contracts have now been completed.  FS Response at 5.  Upon review of the Forest Service's response and exhibits, FSEEE is satisfied that the SW Neets, Road 6231 and Road 6232 contracts are now complete, and no longer seeks to enjoin the further implementation of these three contracts.

The Forest Service also infers that the Court now lacks jurisdiction to resolve FSEEE's claims concerning the SW Neets, Road 6231 and Road 6232 contracts or projects.  FS Response at 5-6.  This case, however, is not moot concerning these road contracts, and the Court retains jurisdiction to resolve all of the FSEEE's claims concerning all five of the challenged road reconstruction contracts and projects.

"[T]he burden of demonstrating mootness is a heavy one."  *West v. Sec'y of the Dept. of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000).  The question is "not whether the precise relief sought at the time of the application for an injunction was filed is still available," but "whether there can be any effective relief."  *Id., quoting Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001); *Earth Island Institute v. USFS*, 442 F.3d 1147, 1157 (9th Cir. 2006).  As in *Earth Island Institute* and *Cantrell*, even if the road contracts are complete, there remain a variety of measures that could provide some effective relief to FSEEE, including closing the roads to motorized use and prohibiting the hauling of timber on the roads pending full NEPA compliance.  *Id.*[1]

---

[1] *See also West v. Secretary of the Dept. of Transportation*, 206 F.3d at 925 ("[U]pon finding that defendants failed to comply with NEPA, our remedial powers would include remanding for additional environmental review and, conceivably, ordering the interchange closed or taken down."); *Save Greers Ferry Lake v. Department of Defense*, 255 F.3d 498, 501 (8th Cir.

Furthermore, the courts "recognize an exception to the mootness doctrine if the government's actions are capable of repetition but will evade review." *Alaska Fish and Wildlife Federation v. Dunkle*, 829 F.2d 933, 939 (9th Cir. 1987). This exception applies when "(1) the duration of the challenged action is too short to be fully litigated before it ceases; and (2) there is a reasonable expectation that the plaintiffs will be subjected to the same action again." *Id.* Moreover, the court should caution against a finding of mootness where the public interest favors having the legality of the agency's practices resolved. *Id.*

In this case, one of FSEEE's primary concerns is that the Forest Service is entirely failing to notify the public before proceeding with major road reconstruction contracts. As a result, FSEEE was completely unaware of a number of the challenged projects until they were already completed. FSEEE therefore had no time whatsoever to obtain judicial review prior to the completion of the challenged activities. This can be contrasted to the one-year duration that has been held to be too short to obtain effective judicial review. *Alaska Fish and Wildlife*, 829 F.2d at 939 ("It is difficult to obtain judicial review during the duration of a one-year agreement.").

There is also a high likelihood that FSEEE would again face the same type of Forest Service actions if this case is not resolved. *Alaska Fish and Wildlife*, 829 F.2d at 939. The agency has shown no indication that it intends to start allowing public scoping or involvement before commencing with major road reconstruction projects such as those at issue in this case. The public interest also favors having this issue resolved, to clarify the level of public notice and involvement for activities on national forests. *Id.* In sum, FSEEE's claims are not moot.

---

2001) ("The boat docks that have already been constructed on the Lake under permits issued pursuant to the 2000 [Shore Management Plan] may remain on the Lake, and they may be maintained to prevent movement or deterioration but may not be used for any recreational purposes, unless and until the Corps implements a new shoreline management plan in full accordance with NEPA and lawfully issues new permits for those docks.").

II.    **FSEEE Has Standing to Challenge All of the Road Reconstruction Contracts**

The Forest Service challenges FSEEE's standing to challenge the Rockfish and Francis Cove road reconstruction projects.  FS Response at 6-8.  FSEEE has standing to invoke federal court jurisdiction if: (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) the injury is fairly traceable to the challenged action of defendant; and (3) the injury is likely to be redressed by a favorable decision.  *See Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  "As association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Friends of the Earth*, 528 U.S. at 181.[2]  As demonstrated by the declarations of FSEEE members Glen Ith and Mike Sallee, along with the procedural failure of the Forest Service to allow FSEEE to be involved in the challenged projects, FSEEE satisfies all three elements in this case.

A.    **FSEEE Members Have Been and Will Continue to Be Harmed by the Challenged Road Reconstruction Projects**

FSEEE initially submitted the Declaration of Glen Ith, a Forest Service wildlife biologist who is also a member of FSEEE, who has both worked and recreated in the area of the Traitors Cove logging project and associated logging roads.  Ith Declaration, ¶ 4.  Mr. Ith states that he would like to return to this area to recreate, hunt, and fish, but is concerned that his future use and enjoyment of the area will be negatively impacted by the challenged logging roads.  *Id.*

---

[2]  "In addition to these constitutional requirements, a plaintiff bringing suit under the Administrative Procedure Act for a violation of NEPA must show that his alleged injury falls within the 'zone of interests' that NEPA was designed to protect."  *Cantrell v. City of Long Beach*, 241 F.3d 674, 679 (9th Cir. 2001).

The Forest Service claims Mr. Ith's use of this area is insufficient, so FSEEE has submitted a declaration from another FSEEE member who uses this area more frequently. Mr. Mike Sallee is a 59-year-old, life-long resident of Ketchikan, Alaska, who has been to the Traitors Cove area "over 50 times" to hunt deer and black bear, harvest sea cucumbers, camp, hike and kayak. Sallee Dec., ¶ 3. Mr. Sallee intends "to hunt there again in the future, including this fall, 2006." *Id.* Mr. Sallee's use of this area has already been negatively impacted by excessive logging and road building, and he is concerned that the proposed Traitors Cove project will further harm his hunting in this area. *Id.* Mr. Sallee is also concerned that the ongoing road reconstruction projects will harm his recreational and subsistence use "by increasing the prospects for illegal poaching." *Id.*, ¶ 4. Moreover, Mr. Sallee is concerned that the building or improving of the log transfer facilities as part of these road projects will "directly harm my ability to harvest sea cucumbers," as the tree bark accumulates and suffocates marine organisms. *Id.*, ¶ 6.

Mr. Sallee's frequent use of the area, along with his plans to again use the area in 2006, together with his concerns that the challenged projects will harm his use and enjoyment of the area, satisfies the "injury in fact" requirement, especially at this early preliminary injunction stage of the litigation. *See Lujan v. Defenders of Wildlife*, 504 U.S. at 561 (explaining plaintiff's burden to establish standing at the various stages of the litigation). Mr. Sallee's interests in hunting, camping, hiking, kayaking, and harvesting sea cucumbers are also clearly the type of recreational interests that NEPA is designed to protect. *See Friends of the Earth*, 528 U.S. at 183 ("We have held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the areas will be lessened' by the challenged activity."), *quoting Sierra Club v. Morton*, 405 U.S. 727, 735 (1972).

This is not a case like *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), where plaintiffs challenge an entire "land withdrawal review program" over millions of acres. This is also not a case like *Lujan v. Defenders of Wildlife*, 504 U.S. 555, where plaintiffs were asserting an interest in the animals of a far away country. This case is instead more similar to *Friends of the Earth,* 528 U.S. 705, where plaintiffs have specific concerns about a particular area that is relatively close to where they reside, and where they frequently choose to recreate. Mr. Sallee has visited and recreated in this area numerous times in the past, he would be adversely affected by the challenged Forest Service actions, and this harm is imminent as Mr. Sallee wishes to return in 2006. This is sufficient to establish injury to FSEEE.

### B.    FSEEE Has Also Suffered Procedural Injury by the Forest Service's Failure to Allow Public Scoping and Comment on the Road Projects

FSEEE has also suffered "procedural injury" resulting from the Forest Service's failure to allow public scoping or comment on its road reconstruction projects, along with the agency's failure to document that it actually considered the environmental consequences and potential extraordinary circumstances before relying on a categorical exclusion for these projects. *See Citizens for Better Forestry v. U.S. Dept. of Agriculture*, 341 F.3d 961 (2003).  Due to the nature of the injury suffered when mandatory procedures are not followed, "[t]he requisite weight of proof for each element of the [standing] test is lowered" in procedural standing cases. *Churchill County v. Babbitt*, 150 F.3d 1072, 1077 (9th Cir. 1998); *see also Lujan*, 504 U.S. at 572 n. 7 ("The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.").

When alleging a procedural injury to establish an injury in fact, FSEEE must allege "that (1) the [Forest Service] violated certain procedural rules; (2) these rules protect [FSEEE's] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their

concrete interests." *Citizens for Better Forestry*, 341 F.3d at 969-970.

While the plaintiffs in *Citizens for Better Forestry* were denied the opportunity to comment on the challenged EA, FSEEE was similarly denied the opportunity to be notified and be involved in public scoping regarding the proposed categorical exclusion for the road reconstruction projects. As in *Citizens for Better Forestry*, this deprivation violated FSEEE's rights under NEPA. *See* FSH 1909.15, Chapter 30.3(3) ("Scoping is required on all proposed actions, including those that would appear to be categorically excluded."); FSH 1909.15, Chapter 31.12 ("The following categories . . . may be categorically excluded from documentation in an EIS or an EA unless scoping indicates extraordinary circumstances exist."); *Alaska Center for the Environment v. U.S. Forest Service*, 189 F.3d 851, 858 (9th Cir. 1999) ("The Forest Service conducts scoping for 'all proposed actions, including those that would appear to be categorically excluded.' If extraordinary circumstances having a significant effect on the environment are revealed during scoping, then the Forest Service conducts an EA." (citations omitted).

"Standing may properly hinge on this type of injury." *Citizens*, 341 F.3d at 971. FSEEE has been harmed by the "added risk to the environment" that takes place when the Forest Service makes up its mind on challenged projects, and in this case proceeds to implement those projects, without first allowing public scoping and considering the environmental consequences of the proposed actions. *Id*. One of NEPA's goals is to minimize the risk of such an uninformed choice, and one of FSEEE's central missions is to force the Forest Service to comply with its mandatory procedures in the expectation that this will result in better decisions. *See* First Stahl Dec., 2 (FSEEE "has a strong interest in insuring that the Forest Service follow the proper, mandatory procedures prior to proceeding with projects and activities that may impact the environment," as FSEEE believes these procedures "are designed to insure that the concerned public has a meaningful voice in Forest Service decisions, and [will] result in better agency decisions.").

To establish procedural standing, environmental plaintiffs must also allege "that they will suffer harm by virtue of their geographic proximity to and use of the [affected] areas." *Citizens*, 341 F.3d at 971. FSEEE has properly alleged in its complaint, and supported with the declarations of Glen Ith and Mike Sallee, that its members use and enjoy the areas of the challenged projects for hunting and other recreational purposes. *Id*. at 971-972. FSEEE has also established through these declarations a "reasonable probability" that the challenged actions threaten their member's use and enjoyment of this area. *Id*. at 972. FSEEE has thereby again demonstrated a cognizable injury in fact." *Id.* at 975.

### C.    FSEEE Has Demonstrated Causation and Redressability

"Once a plaintiff has established an injury in fact under NEPA, the causation and redressability requirements are relaxed." *Citizens for Better Forestry*, 341 F.3d at 975. As in *Citizens for Better Forestry*, there is no dispute about causation in this case, "because this requirement is only implicated where the concern is that an injury caused by a third party is too tenuously connected to the acts of the defendant." *Id*.

"The final standing inquiry, redressability, requires a court to determine whether it possesses the ability to remedy the harm that a petitioner asserts." *Citizens*, 341 F.3d at 975-76. For its procedural injury, FSEEE does not need to show that the Forest Service would have made a better or different decision had it properly followed the required procedures. *Id*. at 976. Since the NEPA procedures are designed to produce better decisions, it is assumed that complying with the procedures could have influenced the agency's decision. *Id*. In addition, the declarations of Mr. Ith and Mr. Sallee show that their injuries concerning the challenged projects could be redressed by a favorable decision that enjoins these projects pending NEPA compliance. For Mr. Ith and Mr. Sallee, the presumption is again that the agency will make less environmentally harmful decisions when it involves the public and considers the environmental consequences.

Besides meeting the basic standing requirements, FSEEE has properly alleged injury to its members, and the interests it asserts are directly pertinent to FSEEE's interests as an organization. *See Citizens*, 341 F.3d at 976; FSEEE's Second Amended Complaint, ¶ 5 (FSEEE is comprised of concerned citizens, present, former and retired Forest Service employees, and other resource managers, who's mission is to forge a socially responsible value system for the Forest Service that ensures ecologically and economically sustainable resource management.). As in *Citizens*, "there is no indication that resolving this case would require, or even be assisted by the participation of [FSEEE's] individual members." *Id*. Finally, FSEEE is properly challenging final agency actions, as the actions are already being implemented, and FSEEE's interests fit squarely within NEPA's zone of interests. *Id*. FSEEE therefore has standing to challenge these road projects.

## III.   **FSEEE Has Raised Serious Questions, and Will Prevail on the Merits**

### A.   **The Forest Service Failed to Follow the Proper Procedures to Categorically Exclude the Challenged Road Projects from NEPA Review, and the Categorical Exclusion is Improper for these Road Projects**

The Forest Service did not notify the public about the road reconstruction projects at issue in this case, did not disclose that it intended to rely on a categorical exclusion for the road projects, did not conduct public scoping to determine whether there were extraordinary circumstances that would prohibit use of a categorical exclusion, and did not provide a statement of reasons to explain why a categorical exclusion was appropriate prior to proceeding with the projects. Instead, FSEEE was simply fortunate to discover on its own, through a Forest Service employee, that the Forest Service was already implementing the challenged projects. *See* Second Stahl Dec. When confronted after the fact, the Forest Service sent FSEEE an e-mail claiming that the projects were covered by a categorical exclusion. First Stahl Dec., Ex. H, J. As FSEEE has explained, the Forest Service's reliance on this categorical exclusion is procedurally flawed.

In its opening brief, FSEEE relies the Forest Service's internal Handbook along with Ninth

Circuit precedent to demonstrate that the Forest Service violated the mandatory procedures for categorically excluding a project from NEPA.  In its response, the Forest Service picks and chooses when it must follow its Handbook, disregarding the Handbook's requirements on public scoping since the agency failed to follow these requirements, but then relying on the Handbook as a defense for when the agency is required to provide documentation for a categorically excluded decision.  In addition to this arbitrary treatment of the Handbook's requirements, the Forest Service simply ignores the majority of applicable Ninth Circuit precedent.

As FSEEE explained in its opening brief, both the Forest Service's Handbook and Ninth Circuit precedent explicitly require the Forest Service to conduct public scoping prior to relying on a categorical exclusion, in order to provide the public with an opportunity to explain why extraordinary circumstances might be present, or otherwise explain why a categorical exclusion may not be appropriate.  FSH 1909.15, Chapter 30.3(3) ("Scoping is required on all proposed actions, including those that would appear to be categorically excluded."); FSH 1909.15, Chapter 31.12 ("The following categories . . . may be categorically excluded from documentation in an EIS or an EA unless scoping indicates extraordinary circumstances exist."); *Alaska Center for the Environment v. U.S. Forest Service*, 189 F.3d 851, 858 (9th Cir. 1999) ("The Forest Service conducts scoping for 'all proposed actions, including those that would appear to be categorically excluded.'  If extraordinary circumstances having a significant effect on the environment are revealed during scoping, then the Forest Service conducts an EA."  (citations omitted).

The Forest Service argues in response that the Council on Environmental Quality ("CEQ") regulations do not require scoping for categorical exclusions.  FS Response at 13.  The CEQ regulations do require, however, that agency procedures for categorically excluding an action "shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect."  40 C.F.R. § 1508.4.  This is why the Forest Service requires

public scoping in its own Handbook, in order to provide the procedures required by CEQ that are necessary to determine whether there are any extraordinary circumstances. FSH 1909.15, Chapter 30.3(3); FSH 1909.15, Chapter 31.12. The Forest Service is not allowed to simply ignore its own mandatory procedures in its Handbook without any rationale or reason. *Northern California Power Agency v. F.E.R.C.*, 37 F.3d 1517, 1522 (9th Cir. 1994) ("An agency acts arbitrarily when it departs from its precedent without giving good reason.").

Similarly, the Forest Service cannot simply ignore Ninth Circuit precedent on this issue. In *Alaska Center for the Environment*, plaintiffs challenged the Forest Service's reliance on a categorical exclusion concerning one-year permits for commercial helicopter activities. 189 F.3d 851. The Forest Service was relying on the same general category of actions that is at issue here: categories established by the Chief of the Forest Service, for which the Forest Service claimed that a "Decision Memo" was not required. FSH 1909.15, Chapter 31.12. While the Forest Service in this case relies on the fourth exclusion in this category (for the repair and maintenance of roads and trails), the Forest Service in *Alaska Center* relied on the eighth exclusion in this category (for short-term special uses of National Forest System lands). *Id*. at 857.

The Ninth Circuit in *Alaska Center* concluded that the challenged permit fit within the general scope of the categorical exclusion. *Id*. at 858. The Ninth Circuit made clear, however, that the Forest Service was still required to conduct public scoping to help determine whether there were any extraordinary circumstances that might significantly effect the environment, which would thereby preclude the use of the categorical exclusion. *Id*. In this case, the Forest Service entirely failed to conduct public scoping for the challenge road reconstruction projects, and yet fails to offer a response or even address the Ninth Circuit's decision in *Alaska Center*. The Forest Service's failure to conduct public scoping to determine whether there were extraordinary circumstances or other exceptions to its use of a categorical exclusion for the road reconstruction

projects in this case violates NEPA.[3]

As explained in FSEEE's opening brief, the Forest Service is also required to prepare findings and adequately explain its use of a categorical exclusion *prior* to proceeding with the proposed activity.   This time in response, instead of ignoring its own Handbook as its does for public scoping, the Forest Service attempts to use the Handbook as a shield by arguing that no "Decision Memo" is required for this category of action.  FS Response at 11.  The Forest Service again, however, fails to address directly applicable Ninth Circuit precedent.  As stated, the Forest Service in *Alaska Center* was similarly relying on a categorical exclusion for which it claimed no "Decision Memo" was required.  189 F.3d at 857.  The Ninth Circuit still recognized, however, that when an agency chooses to rely on a categorical exclusion, and thereby avoid its responsibility to prepare a more detailed NEPA analysis, "the agency must adequately explain its decision."  *Id*. at 859.  And the agency cannot simply assert that the activity will have no significant impacts, but rather "must supply a convincing statement of reasons why potential effects are insignificant."  *Id., quoting Steamboaters v. FERC*, 759 F.2d 1382, 1393 (9th Cir. 1985).  The Ninth Circuit in *Alaska Center* clearly does not carve out an exception to this fundamental requirement for projects where the agency claims no "Decision Memo" is required.[4]

As FSEEE has also explained, the Forest Service cannot simply explain during the course of litigation why the road reconstruction projects fit within the chosen categorical exclusion, and

---

[3] *See also Citizens' Committee to Save our Canyons v. U.S. Forest Service*, 297 F.3d 1012, 1024 (10th Cir. 2002) ("SOC correctly points out that, under applicable regulations, "If a proposed action has been categorically excluded from documentation in an EIS or an EA . . . [,] interested and affected persons must be informed in an appropriate manner of the decision to proceed with the proposed action.'  FSH 1909.15 § 32.1.").

[4] *See also Alaska State Snowmobile Assoc. v. Babbitt*, 79 F.Supp.2d 1116, 1137 (D. Alaska 1999) ("the Park Service abused its discretion in not explaining its reliance on the categorical exclusion it applied.").

why there are no extraordinary circumstances.  *See* FS Response at 8-10.  The Forest Service

similarly cannot now rely on the agency's conclusory, "after-the-fact" e-mails to FSEEE, which

would not have been sent at all if FSEEE had not discovered on its own that the road

reconstruction contracts had already been signed and most of the work already completed.  *Id*. at

12.  And the Forest Service cannot rely on an "after-the-fact" "Road Accomplishment Report,"

that apparently just lists the road contracts that have *already been awarded* in a certain year.  *See*

FS Response at 12-13; Oien Dec., ¶ 8.  The Forest Service's arguments to the contrary again

directly conflict with Ninth Circuit precedent and the very purpose of NEPA.

In *California v. Norton*, 311 F.3d 1162 (9th Cir. 2002), the plaintiff environment groups

argued that the federal agency could not rely on a categorical exclusion because the agency did not

make the categorical exclusion determination at the time of the challenged decision.  The Ninth

Circuit recognized that if the agency failed to consider the potential environmental consequences

of its decision *at the time the decision was made*, this would "frustrate the fundamental purpose of

NEPA."  *Norton*, 311 F.3d at 1175.  As in this case, the agency in *Norton* could not point to

anywhere in record that would suggest that it made the categorical exclusion determination at the

time it approved the challenged decisions.  *Id*.  The Ninth Circuit concluded as follows:

> It is difficult for a reviewing court to determine if the application of an exclusion is
> arbitrary and capricious where there is no *contemporaneous documentation* to show that
> the agency considered the environmental consequences of its action and decided to apply a
> categorical exclusion to the facts of a particular decision.  Post hoc invocation of a
> categorical exclusion does not provide assurance that the agency actually considered the
> environmental effects of its action *before the decision was made*.

*Id*. at 1176 (emphasis added).[5]  There is again in this case no evidence before the Court that the

---

[5] *See also Jones v. Gordon*, 792 F.2d 821, 828 (9th Cir. 1986) ("The Service's explanation
is deficient in that it fails to explain why issuance of the permit does not fall within an exception
to the categorical exclusions . . . "); *Edmonds Institute*, 42 F. Supp. 2d at 18 ("[A] post hoc
assertion of a CE during litigation, unsupported by any evidence in the administrative record or

Forest Service considered the environmental consequences and possibility of extraordinary

circumstances *prior to* proceeding with the road reconstruction projects, in violation of NEPA.

The Forest Service argues that in some instances, "a brief statement that a categorical

exclusion is being invoked will suffice."  FS Response 12.  The Ninth Circuit, however, made this

statement in *Norton* only after clarifying that there must be some documentation in the record to

show that the agency actually considered the environmental consequences of its action and

decided to apply a categorical exclusion before the decision was made.  *Norton*, 311 F.3d at 1176.

Here, there is not a "brief statement," or any statement showing that the Forest Service considered

its actions and the potential environmental consequences before making its decisions.[6]

In sum, and as held by this Court in *Alaska State Snowmobile Assoc. v. Babbitt*, the Forest

Service's decision in this case violates NEPA because the Forest Service "never explained its

reliance on a categorical exclusion and never explained why exceptions did not apply to the

categorical exclusion."  1999 U.S. Dist. LEXIS 21148, *9 (D. Alaska, Nov. 18, 1999).

Furthermore, as explained in FSEEE's opening brief, even if the Forest Service had

followed the proper procedures, its reliance on the categorically exclusion for these projects was

still improper.  First, the SW Neets, Rockfish, and Francis Cove road projects will contribute to

cumulatively significant environmental impacts *along with* the Traitors Cove timber sale, and

therefore must be assessed within a single EIS.  *See* Section III, B., *infra*; 40 C.F.R. § 1508.25.

Second the road reconstruction projects involve far more than the minor "maintenance" activities

---

elsewhere that such a determination was made at the appropriate time, cannot justify a failure to
prepare either an EA or an EIS.").

[6] The Forest Service's reliance on *Back Country Horseman of America v. Johanns*, -
F.Supp.2d - , 2006 WL 825534 (D.C.C. 2006) is misplaced, as it conflicts with the controlling
precedent from the Ninth Circuit, such as *Alaska Center for the Environment*, 189 F.3d 851, and
*Norton v. California*, 311 F.3d 1162, as well as this Court, including *Alaska State Snowmobile
Assoc. v. Babbitt*, 79 F.Supp. 2d 1116, and 1999 U.S. Dist. LEXIS 21148.

that are listed as permitted within the categorical exclusion, including the construction of marine access facilities, the mining of rock and development of rock quarries, the construction of bridges, and the installation of culverts. *See* Second Montgomery Declaration, ¶¶ 5-9.[7] Third, the Forest Service has not provided an explanation, outside of litigation, as to whether there may be extraordinary circumstances that should preclude the use of a categorically exclusion for these projects. *See* FSH 1909.15, Chapter 30.3 ("A proposed action may be categorically excluded . . . only if there are no extraordinary circumstances related to the proposed action.").

**B.    The Forest Service Violated NEPA by Not Analyzing and Disclosing the Environmental Impacts of the SW Neets, Rockfish, and Francis Cove Road Reconstruction, and the Traitors Cove Logging Project, within a Single EIS**

**1)    The Road Reconstruction and Logging Project are Connected Actions**

NEPA requires "connected actions" to be considered together in a single EIS. *Save the Yaak Committee v. Block*, 840 F.2d 714, 719 (9th Cir. 1988); 40 C.F.R. § 1508.25(a)(1). The Forest Service disputes that the "SW Neets," "Rockfish," and "Francis Cove" road projects are connected to the "SW Neets," "Rockfish," and "Francis Cove" timber sales (which were combined to form the Traitors Cove project). FS Response at 14-15. All that is needed to see the connection, however, are maps of the roads that are being reconstructed, along with maps of the proposed harvest units.

FSEEE has reviewed the available maps and found that the "[r]oads being reconstructed lead only to Traitors Cove logging units, while roads in the area that do not lead to Traitors Cove logging units are not being reconstructed." Third Stahl Dec., ¶ 2. For the Rockfish road reconstruction project, Roads 8060585, 8000586, and 8000000 area being reconstructed and

_____

[7] As concluded by Dr. Montgomery, "these contracts are exactly as advertised and stated in the contracts themselves; contracts for the <u>reconstruction</u> of roads, not simply road <u>maintenance</u>." Second Montgomery Dec., ¶ 10 (emphasis in original).

surround Rockfish logging units #21 and #22.  *Id*., ¶ 3.  Meanwhile, "the road system that begins

immediately north of the intersection of Roads 8060585 and 8000586 and leads to no Rockfish

logging units is not being reconstructed."  *Id*.  Similarly, "Rockfish Road 8060050, which is being

reconstructed, leads to Rockfish logging unit #48, but the roads immediately south lead to no

Rockfish logging units and are not to be reconstructed."  *Id*.  And several short spur roads that

lead to logging units are being reconstructed, while adjacent spur roads that do not lead to logging

units are not being reconstructed.  *Id*.

The story is the same for the Francis Cove road reconstruction project.  "All the roads

chosen for reconstruction (with one exception - the short segment of Road 8000000 that leads to

the Bear Viewing Platform) lead to Francis Cove logging units."  Third Stahl Dec., ¶ 4.  Road

8040300 leads to units #16-20, Road 8040440 leads to unit #21, and Road 804000 accesses a

number of units.  *Id*.  "On the other hand, there are numerous comparable spur and longer roads in

the Francis Cove area that do not access Francis Cove logging units and are not chosen for

reconstruction."  *Id*.  Upon review of the maps, Mr. Stahl concludes as follows:

> In sum, for the Francis Cove and Rockfish road reconstruction projects, I conclude that the
> probability that the roads selected for reconstruction are unrelated to the location of
> Francis Cove or Rockfish (in sum, Traitors Cove) logging units is virtually zero.  The
> same holds true for the SW Neets road work and logging units, as even a casual inspection
> of the two maps demonstrates.

*Id*., ¶ 5.

The Forest Service is therefore wrong that this situation is unlike *Thomas v. Peterson*, 753

F2d 754 (9th Cir. 1985) and *Save the Yaak Committee v. Block*, 840 F.2d 714 (9th Cir. 1988).  FS

Response at 14-15.  As stated, the reconstructed roads lead directly to harvest units.  *See* First

Stahl Dec., Ex. D at ¶¶ 3-5; Third Stahl Dec., ¶¶ 2-5.  And after the trees are harvested, the Forest

Service acknowledges that they "would be barged from three existing marine access facilities

located at Margaret Bay, SW Neets, and Fire Cove."  70 Fed. Reg. at 16,795-96.  The SW Neets,

Rockfish, and Francis Cove in fact lead directly to these same marine access facilities. *See* First Stahl Dec., Ex. L at 2; Ex. M at 2. As in *Thomas v. Peterson* and *Save the Yaak*, the facts are simply too overwhelming to conclude anything but that these roads are in fact being reconstructed to assist with the upcoming logging project. The road reconstruction projects and proposed timber sale therefore need to be assessed in a single EIS. 40 C.F.R. § 1508.25(a)(1).

> **2)    The Road Reconstruction and Logging Project May Result in Cumulatively Significant Impacts**

NEPA also requires that "cumulative actions" be considered together in a single EIS. *Thomas v. Peterson*, 753 F.2d at 759; 40 C.F.R. § 1508.25(a)(2). The Forest Service does not dispute that the SW Neets, Rockfish, and Francis Cove road reconstruction projects are in the same area as the proposed Traitors Cove timber sale. The Forest Service instead argues that because it has categorically excluded the individual road reconstruction projects from NEPA review, they are somehow exempt from any required cumulative impacts analysis for the overall Traitors Cove logging project. FS Response at 15-16. The Forest Service is wrong.

Assuming for the sake of argument that the road projects at issue properly fit within a categorical exclusion (which they do not), this would only mean that when the road projects are considered by themselves, they are unlikely to have a cumulatively significant impact on the environment. 40 C.F.R. § 1508.4. This is far different from arguing, however, that the three road projects *along with* the proposed timber sale cannot possibly have any cumulatively significant impacts on the environment. In fact, the NEPA regulations specifically state that "[c]umulative impacts can result form individually minor but collectively significant actions taking place over a period of time." 40 C.F.R. § 1508.7.

The Forest Service's argument, in addition to ignoring NEPA's definition of "cumulative impact," again conflicts with Ninth Circuit precedent. In *Blue Mountains Biodiversity Project v.*

*Blackwood*, 161 F.3d 1208 (9th Cir. 1998), plaintiffs challenged five individual timber sales that were proposed within the same area of the Umatilla National Forest, arguing that they were required to be assessed in a single EIS.  At least one of these five projects had been categorically excluded from NEPA review.  *Blue Mountains*, 161 F.3d at 1211 n. 2.  As in this case, however, the projects were all in the same area, and were all "reasonably foreseeable."  *Id*. at 1214-1215.  The Ninth Circuit therefore found that the five projects at least raised substantial questions that they would result in significant cumulative impacts, and held that the Forest Service was required by NEPA to address the cumulative effects of the proposed sales in a single EIS.  *Id*. at 1215.

Similarly, in *Sierra Club v. U.S. Forest Service*, 843 F.2d 1190, 1191 (9th Cir. 1988), plaintiffs challenged a number of timber sales in the same area, one of which the Forest Service had again categorically excluded from NEPA review.  The Ninth Circuit found that when considered together, the proposed timber sales may significantly degrade some environmental factor, and that the agency's failure to prepare a single EIS was therefore unreasonable.  *Sierra Club*, 843 F.2d at 1193.  "Because substantial questions have been raised concerning the potential adverse effects of harvesting these timber sales, an EIS should have been prepared."  *Id*. at 1195.

Here, the Forest Service has already acknowledged "that there was a possibility of significant cumulative effects on these project areas" when it combined the SW Neets, Rockfish, and Francis Cove timber sales into one EIS.  70 Fed. Reg. 16,795 (April 1, 2005).  As explained in the Declaration of Dr. David Montgomery, even if only a small amount of erosion is caused by the SW Neets, Rockfish, and Francis Cove road reconstruction projects, this could still substantially degrade water quality and fish habitat when added together with other sediment sources.  First Montgomery Dec., ¶ 7.[8]  Dr. Montgomery was therefore careful to point out that the

---

[8] The Forest Service claims that Dr. Montgomery considered only the potential impacts of road <u>construction</u>, but his declaration is clear that he also considered the environmental impacts

Forest Service cannot just look at the impacts of the road reconstruction in isolation, but must consider the impacts along with any proposed logging activities in the affected watersheds. *Id.*; *see also* Second Montgomery Declaration, ¶¶ 5-9 (additional impacts associated with the road reconstruction projects will be caused by the development and construction of rock quarries, marine access facilities, culverts, and bridges); Declaration of Glen Ith, ¶ 9 (road reconstruction can also "increase the accessibility to high value old-growth marten habitat for trappers and greatly increases the vulnerability and mortality rates for these old-growth associated species.").

In sum, as in *Thomas v. Peterson*, 753 F.2d at 759, the road work and proposed timber harvest may result in cumulatively significant impacts, and therefore the Forest Service must prepare a single EIS to analyze the overall, combined impact. 40 C.F.R. § 1508.25(a)(2).

C.    **The Forest Service Violated NEPA by Entering into Contracts and Proceeding with Road Reconstruction Prior to Completing the Environmental Analyses for the Associated Timber Sales**

The Forest Service finds it "remarkable" that FSEEE would argue that NEPA prohibits the Forest Service from proceeding with road reconstruction until it completes the NEPA analysis for the related timber sale.  FS Response at 16-17.  FSEEE, however, raised this argument in its administrative appeal of the Overlook project on the Tongass National Forest, its appeal was granted, and the Forest Supervisor Forrest Cole stated as follows in the press:

> "Cole acknowledged some logging roads have been built in advance of timber sales and said he has pulled back the sale challenged by Ith to clarify its wording. 'Prior to us doing any development activities, we always do an environmental assessment.'"

Ex. A, attached hereto.

FSEEE's position is supported by numerous NEPA requirements, which are fully explained in FSEEE's opening brief.  FSEEE's Brief at 17-20; s*ee e.g.*, 40 C.F.R. § 1506.1(a)(1)

---

of road reconstruction, including soil erosion. *Id.*., ¶¶ 4-7.

(agencies are prohibited from taking any action concerning a proposal that would have an

"adverse environmental impact" during the NEPA process); 40 C.F.R. § 1506.1(a)(2) (agencies

are prohibited from taking any action that would "[l]imit the choice of reasonable alternatives"

during the NEPA process); 40 C.F.R. § 1502.2(f) ("agencies shall not commit resources

prejudicing selection of alternatives before making a final decision."); *Metcalf v. Daley* 214 F.3d

1135 (9th Cir. 2000) (agency cannot enter into contracts or agreements that would bind them to a

particular course of action prior to completing NEPA process).

    Prior to completing the EIS for the Traitors Cove timber sale, the Forest Service has and

continues to take action concerning the related road reconstruction projects that will adversely

affect the environment, including the development of a number of rock quarries (with the

associated blasting and pulverizing),[9] the construction of marine access facilities,[10] the installation

of major culverts,[11] and the construction and installation of bridges.[12] The Forest Service has also

clearly entered into contracts for the related road reconstruction projects prior to the completion of

---

[9] "Quarries are a notorious source of soil erosion because of the ground disturbance involved in any above-ground mining activity and the fine particles produced by rock crushing that inevitably find their way into stream channels."  Second Montgomery Dec., ¶ 5.

[10] "Erosion from construction next to or in water is virtually certain to make its way into the water rather than be stored on the land."  Second Montgomery Dec., ¶ 6.  "Such erosion can damage sensitive inter-tidal zones and marine life."  *Id.*

[11] "Culvert installation requires substantial earth excavation as the entire roadbed must be dug up for the length of the culvert and deeper than the diameter of the culvert to be installed." Second Montgomery Dec., ¶ 7.  "This sort of excavation, particularly when conducted during the wet Spring season creates substantial erosion, which is virtually all delivered to streams as sediment because culverts are generally located where water travels downhill to streams."  *Id.*

[12] "Bridge installation requires substantial excavation of soil immediately adjacent to the stream course, increasing the risk of sedimentation."  Second Montgomery Dec., ¶ 9.  "This is particularly true if installation is conducted when the soil is saturated from rain or snow melt." *Id.*

the Traitors Cove EIS.  The Forest Service has thereby violated NEPA.  40 C.F.R. § 1506.1(a)(1);

40 C.F.R. § 1502.2(f); *Metcalf v. Daley*, 214 F.3d 1135.

    **D.**    **The Forest Service Violated the Appeals Reform Act by Proceeding with Road Reconstruction Prior to Providing Public Notice, Accepting Public Comments, and Allowing Administrative Appeals**

The Appeals Reform Act ("ARA") grants individuals the right to be notified, submit

comments, and file administrative appeals of Forest Service decisions. 16 U.S.C. § 1612 Note.

The ARA's notice, comment and administrative appeal requirements explicitly apply to all Forest

Service projects and activities that implement forest plans.  16 U.S.C. § 1612(a); *Wilderness*

*Society v. Rey*, 180 F.Supp.2d 1141, 1148 (D. Mont. 2002).  The Forest Service does not contest

that the SW Neets, Rockfish, Francis Cove road reconstruction projects, along with the Traitors

Cove timber sale, were designed to implement the goals and objectives of the Tongass Forest

Plan.  *See* 70 Fed. Reg. at 16795 (Traitors Cove project) ("The purpose and need for the proposed

[Traitors Cove] action responds to the goals objectives identified in the Tongass Land

Management Plan, as amended, and helps move the area toward the desired conditions as

described in the forest plan.").  The Forest Service still argues, however, that no public notice,

comments, or appeals are required for these projects under the ARA.

There is no indication that Congress intended to exempt "categorically excluded" projects

from the mandatory requirements of the ARA.  *See Earth Island Institute v. Pengilly*, 376

F.Supp.2d 994, 1004-05 (E.D. Cal. 2005); *Wilderness Society v. Rey*, Civ. 03-119-M-DWM (D.

Montana) (April 24, 2006, Order).  Even if Congress did so intend, however, the challenged road

reconstruction projects in this case do not fit within a categorical exclusion and therefore must be

subject to notice, comment, and appeal.  Again these reconstruction projects include numerous

activities such as the construction of rock quarries, the construction of marine access facilities, the

installation of major culverts, and the construction and installation of bridges, that are simply not

included in the Forest Service's limited categorical exclusion for minor road maintenance. The Forest Service therefore must subject these projects to the notice, comment, and administrative appeal requirements of the ARA.

## IV.  FSEEE Will Suffer Irreparable Harm if an Injunction is Not Issued, and the Balance of Harms Tips Strongly in FSEEE's Favor

The Forest Service claims that because no new roads are being built, there can be no harm to the environment. FS Response at 19. FSEEE, however, submitted expert declarations from a University professor and the Forest Service's own wildlife biologist to describe how the proposed and ongoing road <u>reconstruction</u> can harm the area's watersheds and wildlife, which the Forest Service has not refuted. FSEEE has submitted a second declaration from Dr. Montgomery to describe additional harm from the road reconstruction activities such as the development of rock quarries. Second Montgomery Dec., ¶¶ 5-9. And as FSEEE has noted, the actual significance of the ongoing harm is unknown because the Forest Service has failed to conduct the required public scoping and consider the environmental consequences. *See Citizens for Better Forestry v. U.S. Dept. of Agriculture*, 341 F.3d 961, 971 (9th Cir. 2003) (this harm "consists of added risk to the environment that takes place when governmental decisionmakers make up their minds without having before them an analysis (with public comment) of the likely effects of their decision on the environment."); *Thomas v. Peterson*, 753 F.2d at 764 ("[i]rreparable damage is presumed to flow from a failure properly to evaluate the environmental impact of a major federal action.").

The Forest Service also argues that the ongoing road reconstruction will only improve water quality. The Forest Service fails to address, however, the soil impacts and erosion described in Dr. Montgomery's First Declaration, ¶¶ 4-7. The Forest Service also ignores the ground disturbing activities associated with the ongoing reconstruction that is having and will continue to have an adverse environmental effect, including: (1) the development of rock quarries,

which are "a notorious source of soil erosion because of the ground disturbance involved in any above-ground mining activity;" (2) the construction of marine access facilities, which will cause erosion that "is virtually certain to make its way into the water;" (3) the installation of major culverts up to 4 feet in diameter, which "requires substantial earth excavation as the entire roadbed must be dug up for the length of the culvert," and which creates substantial sediment which is virtually all delivered to streams; and (4) the construction and installation of bridges, which requires "substantial excavation of soil immediately adjacent to the stream course, increasing the risk of sedimentation."  Second Montgomery Dec., ¶¶ 5-9.

Furthermore, the agency's declaration indicates that the ongoing road reconstruction is more substantial and is causing more harm than the Forest Service anticipated, and likely should not be occurring during the wet spring months.  *See e.g.*, FS Exhibit 5, page 5 (the road condition is "mucky, from clearing operations;" "there is a need for three additional culverts that are not presently in the design;" "During periods of heavy rain the existing ditch cannot hold the volume of water coming down the hillside so there is water running over the mucky road, causing sedimentation in the drainages;"); Second Montgomery Dec., ¶ 2 ("the Forest Service acknowledges that the reconstruction work has already created erosion-prone sites.").

Last, the Forest Service tries to argue that the road reconstruction must continue, as a temporary injunction would cause more environmental harm.  FS Response at 20.  This, however, is "certainly not the case for the road segments that have had no work performed along them." Second Montgomery Dec., ¶ 11. And while the Forest Service notes several locations where it claims it needs to fix problems, "this remedial work has apparently already been completed."  *Id.*; *see* FS Exhibit 5, pages 5-9.  It appears that only two locations remain where the Forest Service asserts that immediate erosion will occur if construction activities are temporarily suspended.  *Id.* ¶ 12; FS Exhibit 5, pages 5-9.  Fixing these problems, however, "will also create erosion from the

excavation associated with installing the culverts."  Second Montgomery Dec., ¶ 11.

The roads currently being reconstructed all lead to proposed Traitors Cove harvest units, with the exception of one mile of road leading to the Margaret Creek Wildlife Observation Site, which the Forest Service argues is used throughout the summer by outfitters, guides, and the general public.  FS Exhibit 5, page 10.  FSEEE is not opposed to the completion of the reconstruction of this one mile of road leading to the bear viewing area, as the reconstruction of this road does not appear to need the substantial, ground disturbing activities described above, and would be in the public interest.  The remaining roads that are still being reconstructed, however, which lead to harvest units and the marine access facilities, are being constructed in anticipation of the upcoming timber harvest, in plain violation of NEPA, and should be immediately enjoined.

## CONCLUSION

For the above stated reasons, FSEEE's motion for a temporary restraining order and preliminary injunction should be granted, and the Forest Service should be immediately enjoined from any further road reconstruction concerning the Rockfish, and Francis Cove road projects.

DATED this 19th day of May, 2006.

Respectfully submitted,

s/ Marc D. Fink
Marc D. Fink (MN License # 343407)
4515 Robinson Street
Duluth, Minnesota 55804
Tel: 218-525-3884
Fax: 218-525-3857
marc@marcdfink.com

Peter Van Tuyn (AK Bar # 8911086)
Bessenyey & Van Tuyn
310 K Street, Suite 200
Anchorage, AK 99501
Tel:  907-278-2000
Fax:  907-278-2004

pvantuyn@earthlink.net

Attorneys for Plaintiffs


CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2006, a copy of Plaintiffs' Reply in Support of Motion for Temporary Restraining Order and Preliminary Injunction was served electronically on:

Bruce M. Landon

s/ Marc D. Fink