**UNITED STATES DISTRICT COURT**

**DISTRICT OF ALASKA**

FOREST SERVICE EMPLOYEES FOR )
ENVIRONMENTAL ETHICS and    )
GLEN ITH,                    )
                            )
        Plaintiffs,         )    **CASE NO. 3:06-cv-00068 JWS**
                            )
    vs.                     )    **ORDER ON REQUEST FOR**
                            )    **PRELIMINARY INJUNCTIVE RELIEF**
                            )
UNITED STATES FOREST SERVICE, )   **[Re:   Motions at Dockets 9 & 21]**
                            )
        Defendant.          )
_____ )

## I.  MOTIONS PRESENTED

At docket 9, Forest Service Employees for Environmental Ethics ("FSEEE") and

Glen Ith filed a motion for a temporary restraining order and preliminary injunction

against the United States Forest Service ("Forest Service").  At docket 21, FSEEE and

Ith filed an amended motion for a temporary restraining order and preliminary injunction,

which the Clerk of court terminated in favor of tracking the motion at docket 9.  The

Clerk is directed to resume tracking the motion at docket 21 and the motion at docket 9

will be denied as moot.  At docket 27, the Forest Service filed an opposition to the

motion at docket 27.  At docket 29, FSEEE and Ith filed a reply in support of their motion

at docket 21.  The court heard oral argument on the motion at docket 21 on Thursday, May 25, 2006.

## II.  STANDARD OF REVIEW

FSEEE is entitled to preliminary injunctive relief if it "demonstrate[s] either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of the hardships tips in its favor."[1] Those are "'two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'"[2]

## III.  DISCUSSION

The parties' briefing on the motion at docket 21 raises three issues, which the court will address in turn: 1) to what extent this action is moot; 2) whether FSEEE and Ith have standing to bring this action; and 3) whether preliminary injunctive relief is warranted.

### A. Plaintiffs' Request for Injunctive Relief Is Moot Regarding Three Projects

This case is about the Forest Service's work on roads in Tongass National Forest in Southeast Alaska.  FSEEE and Ith challenge two road projects on Mitkof Island, those concerning Roads 6231 and 6232, and the SW Neets, Rockfish, and Francis Cove road projects near Traitors Cove on Revillagigedo Island.  The parties agree the

---

[1] *Idaho Sporting Cong., Inc. V. Alexander*, 222 F.3d 562, 565 (9th Cir. 2000) (citing *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998)).

[2] *Id.* (quoting *Anderson*, 134 F.3d at 1402).

Forest Service has completed work on Roads 6231 and 6232 and the SW Neets road project and that plaintiffs' request for preliminary injunctive relief therefore is moot with respect to those projects.  However, their request is not moot with respect to the Rockfish and Francis Cove road projects, because those projects have not been completed.  As noted in the order at docket 33, the fact the Forest Service has completed work on Roads 6231 and 6232 and the SW Neets road project does not moot requests for non-injunctive relief which plaintiffs may seek regarding those projects.

**B. FSEEE Has Standing to Challenge the Rockfish and Francis Cove Projects**

To have standing to challenge the Rockfish and Francis Cove road projects, FSEEE must meet constitutional and prudential standing requirements.  Article III of the Constitution requires that FSEEE show  "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the [Forest Service]; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[3]  FSEEE also must satisfy the prudential requirement that its alleged injuries fall within the "zone of interests" protected by the statute the Forest Service allegedly violated.[4]

As an alternative to meeting those standards in its own right, FSEEE may assert

---

[3]*Friends of the Earth, Inc. V. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 405 U.S. 555, 560-61 (1992)).

[4]*Cantrell v. City of Long Beach*, 241 F.3d 674, 679 (9th Cir. 2001) (citing *Douglas County v. Babbitt*, 48 F.3d 1495, 1499 (9th Cir. 1995)).

standing based on injuries to its members.  FSEEE has "associational standing" to bring

this lawsuit on behalf of its members if they "would otherwise have standing to sue in

their own right, the interests at stake are germane to [its] purpose, and neither the claim

asserted nor the relief requested requires the participation of individual members in the

lawsuit."[5]

FSEEE asserts it has associational standing to bring this action on behalf of one

of its members, Mike Sallee.  Sallee is fifty-nine years old and has lived in Ketchikan,

Alaska, his entire life.[6]  He has been to the Rockfish and Francis Cove road project

areas "over 50 times," and when in those areas, he hunts, camps, and hikes.[7]  He

intends to travel there again to hunt this fall and is concerned "[t]he reconstruction of the

[Rockfish and Francis Cove] logging roads [will harm his] recreational and subsistence

use of [those] areas by increasing the prospects for illegal poaching."[8]

Sallee's declaration shows he would have standing to bring this suit in his own

right.  He has visited the relevant areas dozens of times and that history shows his

intent to visit the areas again this fall is genuine and the likelihood of him doing so is

extremely high.  Sallee's concern that the road projects will lead to increased poaching

and thus injure his ability to hunt is the only evidence of that cause-and-effect

relationship, but it is not contradicted by any other evidence in the record.

Consequently, the court concludes the road projects likely will injure Sallee's ability to

---

[5]*Id.* (citing *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

[6]Doc. 31, p. 2, ¶ 2.

[7]*Id.*, p. 2, ¶ 3.

[8]*Id.*, p. 2, ¶¶ 3-4.

hunt in the areas in question in a direct, concrete and particularized manner.  That injury is imminent, because the Forest Service presently is working on the roads near Sallee's hunting grounds.  Fortunately for him, however, the injury can be redressed by a decision from this court because the court could order the road projects halted.  Finally, the injury falls within the zone of interests protected by the National Environmental Policy Act ("NEPA"), one of the statutes FSEEE alleges the Forest Service violated.  NEPA protects cultural "aspects of our national heritage,"[9] and Sallee's hunting qualifies as cultural and part of our nation's heritage.

Because Sallee would have standing to bring this suit in his own right and is an FSEEE member, FSEEE has associational standing to bring suit on his behalf if the interests at stake are germane to its purpose, and neither the claim asserted nor the relief requested requires his participation in this lawsuit.  Both requirements are met here.  The interests at stake include the ecologically sustainable management of the areas surrounding the road projects and, therefore, are germane to FSEEE's purpose of ensuring that the Forest Service's "land ethic" is "based on ecologically and economically sustainable resource management."[10]  Neither the claim asserted nor the relief requested requires Sallee to participate in this lawsuit.

---

[9]42 U.S.C. § 4331(b)(4).

[10]Doc. 25, p. 3, ¶ 5.

The question whether at least one plaintiff has standing to contest the Rockfish and Francis Cove road projects is the only standing issue that is necessary to resolve now.[11]  The court will reserve consideration of all other standing issues for a later date.

## C. Preliminary Injunctive Relief Is Warranted

### 1. Probability of Success on the Merits

FSEEE offers a number of arguments why the Rockfish and Francis Cove road projects do not comply with NEPA and the Appeals Reform Act.  All its arguments raise serious questions, but one appears particularly persuasive.  The court will limit its discussion to that argument, because FSEEE only needs to show probable success on one ground to be entitled to preliminary injunctive relief.  The argument the court finds persuasive is FSEEE's contention that the Forest Service did not follow procedural rules applicable to its classification of the Rockfish and Francis Cove road projects as "repair and maintenance."

Projects designated as repair and maintenance fall into a "categorical exclusion" exempting them from further NEPA review.[12]  The reason for the exemption is that, in the usual case, repair and maintenance projects have only insignificant effects on the environment.[13]  However, when the Forest Service classifies a project as repair and

---

[11]At oral argument, the Forest Service's counsel conceded FSEEE has associational standing to challenge the Rockfish and Francis Cove road projects based on Sallee's declaration.

[12]*Alaska Ctr. for the Env't v. U.S. Forest Service*, 189 F.3d 851, 858 (9th Cir. 1999) (citing Forest Service Handbook, 1909.15, 30.3(1)(b); 40 C.F.R. § 1508.4).

[13]40 C.F.R. § 1508.4.

maintenance, NEPA requires that it do more than simply "'assert[ ] that [the project] will have an insignificant effect on the environment.'"[14]  Instead, the agency must "'supply a convincing statement of reasons why potential effects are insignificant.'"[15]  Such a statement allows a reviewing court to determine "'whether the [Forest Service's] decision was based on a consideration of the relevant factors and whether there has been clear error of judgment.'"[16]  A court will uphold the agency's action only when it is "assur[ed] that the agency actually considered the environmental effects of its action *before* the decision was made."[17]

There are no documents in the record from which the court can determine whether the Forest Service considered the environmental effects of the Rockfish and Francis Cove road projects when it approved them.[18]  A *post hoc* rationalization is offered in the declaration of Jack Oien,[19] but his declaration does not identify any documentation contemporaneous to the decision to proceed which the court could review.  The Ninth Circuit has explained that *post hoc* explanations "frustrate the fundamental purpose of NEPA"[20] and pointed out that "[*p*]*ost hoc* invocation of a

---

[14]*Alaska Ctr. for the Env't*, 189 F.3d at 859 (quoting *Jones*, 792 F.2d at 828).

[15]*Id.* (quoting *The Steamboaters v. FERC*, 759 F.2d 1382, 1393 (9th Cir. 1985)).

[16]*Id.* (quoting *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989)).

[17]*California v. Norton*, 311 F.3d 1162, 1176 (9th Cir. 2002) (emphasis added).

[18]The Forest Service concedes as much by arguing "[w]here, as here, the categorical exclusion is one for which no decision memorandum is required, *the absence of documentation relating to the basis for the agency's decision* does not render the assertion of a categorical exclusion a post hoc rationalization."  Doc. 27, p. 12 (emphasis added).

[19]Doc. 27, ex. 2.

[20]*Norton*, 311 F.3d at 1175.

categorical exclusion does not provide assurance that the agency actually considered the environmental effects of its action before the decision was made."[21]  The agency suggests its handbook did not require it to contemporaneously document its decision, but it does not explain why its handbook trumps the Ninth Circuit case law discussed above.  Because the Forest Service has not produced explanatory documentation contemporaneous with its approval of the road projects or adequately justified the absence of documentation, FSEEE probably will succeed on its argument that the projects run afoul of NEPA.

## 2.  Irreparable Harm

Irreparable harm is presumed to flow from a NEPA violation and an injunction is the appropriate remedy unless the injunction would cause irreparable harm.[22]  The Forest Service alleges the exception applies here.  In support of its allegation, the agency offers assessments of the current status of the road projects in declarations from Rozie Berry and Fred Norman.  FSEEE contends that they do not show that an injunction would cause harm and supports that denial with two declarations by David Montgomery, a professor in the University of Washington's Earth and Space Sciences Department.  FSEEE also notes, however, it does not oppose allowing the Forest Service to complete work on the section of road leading to the popular Margaret Creek Wildlife Observation Site.

---

[21]*Id.*, at 1176.

[22]*Thomas v. Peterson*, 753 F.2d 754, 764, 764 n.8 (9th Cir. 1985) (citations omitted).

Berry's and Norman's assessments emphasize the damage to the environment that may result if work is halted on Road 8000586 within the Rockfish road project area, and Roads 8040440 (at .31 miles), 8040700 (at .85 miles), and 8040000 (at .21 and 1.56 miles) in the Francis Cove project area.  The problem with Road 8000586 in the Rockfish area is its "mucky" surface condition and aging log culverts that remain functional but, according to Berry, could "fail at any time."[23]  Montgomery acknowledges the road's "mucky" surface is a problem, albeit one that could have been avoided with better planning, and he does not comment on the aging culverts.[24]  For Roads 8040440 (at .31 miles), 8040700 (at .85 miles), and 8040000 (at 1.56 miles) in the Francis Cove area, Norman asserts culverts are needed to prevent erosion.[25]  Montgomery notes installing culverts could cause erosion, but he does not recommend against installing them.[26]  Rather, he suggests "a qualified geotechnical engineer or geomorphologist" be assigned to assess whether culverts should be installed at the proposed sites.[27]  Finally, Norman asserts Road 8040000 (at .21 miles) in the Francis Cove area is "sinking into the muskeg and will become much worse without scheduled contract lift."[28]

---

[23]Doc. 27, ex. 5, p. 5.

[24]Doc. 32, p. 2, ¶ 2.

[25]Doc. 27, ex. 5, pp. 8-9.

[26]Doc. 32, p. 5, ¶ 12.

[27]*Id.*, pp. 5-6, ¶ 12.

[28]Doc. 27, ex. 5, pp. 9.

Besides pointing out continuing problem areas, Norman's report shows that two trouble spots, on Road 8040000 (at .01 and .02 miles), already have been fixed.[29]  As for the other roads in the project areas – those for which work has not yet begun or has been partially completed – neither Berry nor Norman's report suggests enjoining work on them would harm the environment.

At oral argument, the Forest Service's counsel provided an update on the status of the road work.  The information he conveyed that this court finds most relevant to an injunction concerned an unfinished stringer bridge.  Counsel suggested it could pose a threat to public safety if the bridge is not finished, described the limited work remaining, and indicated that the remaining work would have no impact on the stream.  FSEEE's counsel indicated his client likely would not object to the Forest Service completing the bridge if it is a safety hazard and did not comment on the absence of environmental impact ascribed to the limited work which remains.

### 3.  Scope of Injunction

After considering Berry and Norman's assessments, Montgomery's declaration, and the representations by the parties' counsel at oral argument, the court concludes that some work should be enjoined, but that other work is necessary to protect the environment and so should not be enjoined.  In particular, the court concludes that it should not halt work on the placement of a layer of rock on Road 8000586, but this exception does not apply to the replacement of culverts on that road.  The court also concludes that it should not halt work on the unfinished stringer bridge.  The court

---

[29]*Id.*, ex. 5, pp. 7-8.

concludes that it should not halt work on the blading (leveling) of rock already in place on any road, but this exception does not extend to adding additional rock to any road (save road 8000586 as noted above). Finally, the work on the road to the Margaret Creek Wildlife Observation Site will not be halted. All other remaining work on the Rockfish and Francis Cove road projects should be enjoined beginning at 12:01 AM Alaska Daylight Time on May 31, 2006, a date and time which allow one full business day after today for all persons who need to be informed to receive notice of the injunction. Although all the other work will be enjoined, after conferring with FSEEE about Road 8000586's aging log culverts; the necessity of installing culverts on Roads 8040440 (at .31 miles), 8040700 (at .85 miles), and 8040000 (at 1.56 miles); and the sinking Road 8040000 (at .21 miles), the Forest Service, with or without FSEEE's concurrence, may move for leave to proceed with one or more of these items of work.

## IV.  CONCLUSION

The amended motion for a temporary restraining order and preliminary injunction at docket 21 is **GRANTED** in part and **DENIED** in part as discussed above. The original motion at docket 9 is **DENIED** as moot.

DATED at Anchorage, Alaska, this 26th day of May, 2006.


                                        _____/s/_____
                                        JOHN W. SEDWICK
                                        UNITED STATES DISTRICT JUDGE