Marc D. Fink (MN License # 343407)
4515 Robinson Street
Duluth, Minnesota 55804
Tel: 218-525-3884
Fax: 218-525-3857
marc@marcdfink.com

Peter Van Tuyn (AK Bar # 8911086)
Bessenyey & Van Tuyn
310 K Street, Suite 200
Anchorage, AK 99501
Tel:  907-278-2000
Fax:  907-278-2004
pvantuyn@earthlink.net

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS, and GLEN ITH )<br><br>Plaintiffs, )<br><br>vs. )<br><br>UNITED STATES FOREST  SERVICE, an agency of the U.S. Department of Agriculture, )<br><br>Defendant. ) | Case No: 3:06-CV-0068-JWS<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF** |

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

I.    Tongass National Forest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

II.    Logging Roads Associated with the Overlook Timber Sale . . . . . . . . . . . . . . .    4

III.    Logging Roads Associated with the Traitors Cove Timber Sale . . . . . . . . . . . .    6

IV.    The Present Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

I.    The Forest Service Violated NEPA by Failing to Allow Public Scoping
       and By Failing to Provide a Sufficient Explanation Prior to "Categorically
       Excluding" the Road Reconstruction Projects from NEPA . . . . . . . . . . . . . . . .    11

II.    The Forest Service Violated NEPA Because the Road Reconstruction
       Projects Do Not Properly Fit Within a Categorical Exclusion . . . . . . . . . . . . . . .    16

III.    The Forest Service Violated NEPA by Not Analyzing the Environmental
         Impacts of the SW Neets, Rockfish, and Francis Cove Road Reconstruction
         Projects and the Traitors Cove Logging Project Within a Single EIS . . . . . . . . .    19

         A.    The Road Reconstruction and Logging Projects are Connected
                 Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

         B.    The Road Reconstruction and Logging Projects May Result in
                 Cumulatively Significant Impacts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

IV.    The Forest Service Violated NEPA by Proceeding with Reconstruction of
         the Five Logging Roads Prior to Completing the Environmental Analyses
         for the Associated Timber Sales . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

V.   The Forest Service Violated the Appeals Reform Act by Proceeding with the Road Reconstruction Projects Prior to Providing Public Notice, Accepting Public Comments, and Allowing Administrative Appeals . . . . . . . . .   27

VI.  The Court Should Order the Forest Service to Close the Five Logging Roads and Implement Appropriate Mitigation Measures Pending the Agency's Full Compliance with NEPA and the Appeals Reform Act . . . . . . . . . . . . . . . . . . . . .   28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

## TABLE OF AUTHORITIES

<u>CASES</u>

*Alaska Center for the Environment v. U.S. Forest Service*,
189 F.3d 851 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 18

*Alaska State Snowmobile Assoc. v. Babbitt*,
79 F.Supp.2d 1116 (D. Alaska 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Alaska State Snowmobile Assoc. v. Babbitt*,
1999 U.S. Dist. LEXIS 21148 (D. Alaska 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Amoco Production Co. v. Village of Gambell*,
480 U.S. 531 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Biodiversity Legal Foundation v. Badgley*,
309 F.3d 1166 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Blue Mts. Biodiversity Project v. Blackwood*,
161 F.3d 1208 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 22, 24

*California v. Norton*,
311 F.3d 1162 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Citizens' Committee to Save our Canyons v. U.S. Forest Service*,
297 F.3d 1012 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Conner v. Burford*,
848 F.2d 1441 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Earth Island Institute v. Ruthenbeck*,
2006 U.S. App. LEXIS 20497 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Earth Island Institute v. U.S. Forest Service*,
442 F.3d 1147 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Edmonds Institute v. Babbitt*,
42 F. Supp. 2d 1 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*Forest Conservation Council v. U.S. Forest Serv.,*
66 F.3d 1489 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    29

*Forest Guardians v. Johanns,*
450 F.3d 455 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*High Sierra Hikers Assoc. v. Blackwell,*
390 F.3d 630 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10, 29

*Idaho Sporting Congress v. Thomas,*
137 F.3d 1146 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Jones v. Gordon,*
792 F.2d 821 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

*Marsh v. ONRC,*
490 U.S. 360 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

*Metcalf v. Daley,*
214 F.3d 1135 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25, 26

*Motor Vehicle Mfr. Ass'n v. State Farm,*
463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

*National Parks & Conservation Assoc. v. Babbitt,*
241 F.3d 722 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    29

*Natural Resources Defense Council v. U. S. Forest Service,*
421 F.3d 797 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

*Neighbors of Cuddy Mt. v. Alexander,*
303 F.3d 1059 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11, 30

*Neighbors of Cuddy Mt. v. U.S. Forest Service,*
137 F.3d 1372 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    26

*Northern Spotted Owl v. Hodel,*
716 F. Supp. 479 (W.D. Wash. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

*Portland Audubon Society v. Lujan,*
795 F. Supp. 1489 (D. Or. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    26

*Robertson v. Methow Valley Citizens Council,*
490 U.S. 332 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Save Greers Ferry Lake v. Department of Defense*,
255 F.3d 498 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    29, 30

*Save the Yaak Committee v. Block*,
840 F.2d 714 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19, 20, 21, 22, 24, 26

*Sierra Club v. U.S. Forest Service*,
843 F.2d 1190 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23, 24

*The Steamboaters v. FERC*,
759 F.2d 1382 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

*Thomas v. Peterson*,
753 F.2d 754 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21, 22, 29

*Wilderness Society v. Rey*,
180 F. Supp. 2d 1141 (D. Mont. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27

## STATUTES

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

5 U.S.C. § 706(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

16 U.S.C. § 1612 note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2, 27

16 U.S.C. § 1612(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27

16 U.S.C. § 1612(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    28

16 U.S.C. § 1612(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27

16 U.S.C. § 1612(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27

16 U.S.C. § 1612( c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27, 28

16 U.S.C. § 1612(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    28

16 U.S.C. § 1612(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27

42 U.S.C. § 4332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

42 U.S.C. § 4332(C)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

REGULATIONS

40 C.F.R. § 1500.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11, 24

40 C.F.R. § 1501.4(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

40 C.F.R. § 1501.4(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

40 C.F.R. § 1501.4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

40 C.F.R. § 1502.2(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

40 C.F.R. § 1502.14(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

40 C.F.R. § 1506.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

40 C.F.R. § 1506.1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

40 C.F.R. § 1506.1(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

40 C.F.R. § 1508.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12, 13

40 C.F.R. § 1508.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     22

40 C.F.R. § 1508.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

40 C.F.R. § 1508.25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     19

40 C.F.R. § 1508.25(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2, 19, 22

40 C.F.R. § 1508.25(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 19, 22, 23, 24

## INTRODUCTION

Plaintiffs Forest Service Employees for Environmental Ethics and Glen Ith (hereinafter "FSEEE") challenge the Forest Service's reconstruction of five logging roads on the Tongass National Forest: the SW Neets, Rockfish, and Francis Cove roads, which are associated with the Traitors Cove timber sale; and Roads 6231 and 6232, which are associated with the Overlook timber sale. The Forest Service violated the National Environmental Policy Act ("NEPA") and the Appeals Reform Act by entering into contracts and commencing with the reconstruction of these roads prior to providing notice and an opportunity for public involvement, completing the required NEPA analyses, signing decision documents, and allowing administrative appeals.

The Forest Service claims that these road reconstruction projects were "categorically excluded" from NEPA review. *See* AR 2022, p. 3; AR 2016, p. 4. The Forest Service, however, violated NEPA by failing to conduct public scoping prior to excluding the projects, and by failing to prepare any findings, statement of reasons, or environmental documentation at the time of the challenged decisions. Further, because the projects involved major road reconstruction, including the cutting of many old-growth Sitka spruce estimated to be 300-800 years old, the major expansion of rock quarries, the reopening of roads in remote areas, the installation of culverts and bridges, and the construction of marine access facilities, the projects do not fit within the Forest Service's limited categorical exclusion for the maintenance of roads and trails. *See* AR 1006, p. 9 (FSH 1909.15, Chapter 31.12(4)).

The reconstruction of the SW Neets, Rockfish, and Francis Cove roads is also connected to the proposed Traitors Cove timber sale, for which the agency is currently preparing an environmental impact statement ("EIS"). NEPA therefore required the projects to be analyzed

together, in a single EIS, before the road reconstruction was allowed to commence. 40 C.F.R. §

1508.25(a)(1). The road reconstruction and the proposed Traitors Cove timber sale will also

cumulatively result in significant environmental impacts, again requiring an EIS. 40 C.F.R. §

1508.25(a)(2). The Forest Service also violated NEPA by allowing the road reconstruction to

proceed prior to completing the NEPA analysis for the associated timber sales. *See* 40 C.F.R. §

1506.1. Additionally, the Forest Service violated the Appeals Reform Act, 16 U.S.C. § 1612

note, by failing to publish notice, accept public comments, and allow administrative appeals.

FSEEE requests a declaratory judgment that these road reconstruction projects were

undertaken in violation of NEPA and the Appeals Reform Act, and injunctive relief ordering the

Forest Service to close these roads with locked gates and implement appropriate mitigation

measures to minimize the environmental harm pending the agency's compliance with the law.

## STATEMENT OF ISSUES

1.    Did the Forest Service violate NEPA by relying on a categorical exclusion for the Road

6231, Road 6232, SW Neets, Rockfish, and Francis Cove reconstruction projects, without

providing public notice, and without preparing sufficient, contemporaneous documentation?

2.    Did the Forest Service violate NEPA by not analyzing and disclosing the overall,

cumulative environmental impacts of the SW Neets, Rockfish, and Francis Cove road

reconstruction, and the Traitors Cove timber sale, within a single EIS?

3.    Did the Forest Service violate NEPA by entering into contracts and allowing the Road

6231, Road 6232, SW Neets, Rockfish, and Francis Cove projects to proceed prior to completing

the NEPA process and signing decisions for the Overlook and Traitors Cove timber sales?

4.    Did the Forest Service violate the Appeals Reform Act by proceeding with the Road

6231, Road 6232, SW Neets, Rockfish, and Francis Cove projects without first providing public

notice, an opportunity to submit comments, and an opportunity to file an administrative appeal?

5.      Should the Forest Service be ordered to close with locked gates the Road 6231, Road

6232, SW Neets, Rockfish, and Francis Cove roads, and implement appropriate mitigation

measures, pending full compliance with the law?

## STATEMENT OF FACTS

### I.      Tongass National Forest

The Tongass National Forest "is an immense forest located in Southeast Alaska

comprised of mainland and many islands within the Alexander Archipelago." *Natural Resources*

*Defense Council v. U. S. Forest Service*, 421 F.3d 797, 800 (9th Cir. 2005).  "The Tongass is the

nation's largest national forest, and the largest unspoiled and intact temperate rainforest in the

world, containing almost seventeen million acres and occupying about seven percent of Alaska's

area." *Natural Resources Defense Council*, 421 F.3d at 800.

"The total amount of National Forest roads constructed on the Tongass is about 5000

miles." *See* Declaration of Andy Stahl ("Stahl Dec.") (May 5, 2006), Ex. C, p. 3 (Tongass

National Forest "Five Year Monitoring Review.").  The Forest Service identifies these roads as

classified, unclassified, or temporary. *See* Stahl Dec., Ex. B at 4 (Tongass National Forest

"Forest-Level Roads Analysis").  Classified roads are intended for long-term use, while

unclassified roads are not managed as part of the forest transportation system. *Id.*  Of the 5,000

miles of road, about 3,560 miles "are considered classified or permanent roads." *Id.*, Ex. C at 3.

The Tongass National Forest also defines roads by the following "maintenance levels":

Level 1 – Closed more than one year;
Level 2 – High-clearance vehicles;

Level 3 – Passenger vehicles, surface not smooth;
Level 4 – Passenger vehicles, surface smooth;
Level 5 – Passenger vehicles, dust free, possibly paved.

*Id.*, Ex. B at 4-5.  There are approximately 1,260 miles of "maintenance level 1" roads on the Tongass National Forest, which the Forest Service keeps "in storage and closed to normal passenger vehicle use."  *Id.*, Ex. C at 3.

## II.    Logging Roads Associated with the Overlook Timber Sale

The reconstruction of Forest Service Roads 6231 and 6232 was "associated with" the Overlook timber sale.  *See* AR 4029.  In April, 2005, the Forest Service completed an "environmental assessment" ("EA") for the proposed Overlook sale, which would be located in the central portion of Mitkof Island on the Petersburg Ranger District.  Stahl Dec., Ex. I.[1]  The EA discloses the environmental impacts of four alternatives.  Alternative 1, the "no action" alternative, proposes no timber harvest or road reconstruction.  *Id.* (EA, p. 15).  Alternative 2 includes the reconstruction of about 1.2 miles of Road 6232 to access proposed harvest units.  *Id.* (EA, p. 15-16).  Alternative 3 includes the reconstruction of 0.8 miles of Road 6231 to access proposed units.  *Id.* (EA, p. 16).  And Alternative 4, the "proposed action," includes the reconstruction of 2.2 miles of Road 6232 to access proposed units.  *Id.* (EA, p. 16-17).[2]

---

[1] The Overlook EA is available online at the Tongass National Forest website: http://www.fs.fed.us/r10/tongass/projects/overlook/05_overlook-ea.shtml

[2] According to the Overlook EA, Road 6231 is a "level 1" road constructed in the 1970s as a temporary logging road.  *Id.* (EA, p. 195).  The road's level 1 status means that it has been closed for over a year, and the EA states that it "is presently closed by alder growth."  *Id.*  The Forest Service also constructed Road 6232 in the 1970s to access timber.  *Id.* (EA, p. 196).  The first 0.58 mile of this road is classified as maintenance level 3, allowing access to a picnic area.  *Id.*  From mile 0.58 to 2.65, it is classified as level 1 and has been closed to vehicular traffic.  *Id.*

In August, 2005, FSEEE learned that the Forest Service was already proceeding with road reconstruction for Road 6231 and 6232 even though the agency had not signed a decision notice for the Overlook timber sale.  Stahl Dec., ¶ 3.  The reconstruction work included the cutting of many large old-growth Sitka spruce trees, some of which were used for bridge construction.  *See* Declaration of Glen Ith, ¶ 11, Ex. D; AR 2022, p. 3.  The Forest Service informed FSEEE that a "categorical exclusion" for minor road repair and maintenance covered the road reopening and reconstruction work for Roads 6231 and 6232.  AR 2022, p. 3.  The Forest Service, however, did not provide any public notice or scoping to disclose its reliance on this categorical exclusion, and did not request any public comment prior to beginning road reconstruction.

According to documents provided in the administrative record, the Forest Service solicited bids for the "Overlook Roads" on April 14, 2005, and the project consisted of the reconstruction of a total of 3.97 miles of road.  AR 3040, pp. 1, 5.  The road work included "mobilization, erosion control, removal of native log bridge, removal of culvert pipe, unclassified borrow, waterbars, haul, roadside brushing, road reconditioning, native log bridge installation, culvert installation, seeding and fertilizing and pit development."  *Id.*, p. 5.  On June 10, 2005, the Forest Service accepted the offer of $168,859.40 from Rock-n-Road Construction to complete the "Overlook Roads project."  AR 3050.  A "certificate of final inspection" was signed on October 4, 2005, stating that "all of the work had been performed."  AR 3054.

On November 15, 2005, the Forest Service signed the Decision Notice for the Overlook timber sale, selecting a modified version of Alternative 4 from the Overlook EA.  *See* http://www.fs.fed.us/r10/tongass/projects/decisions/overlook/05overlookdn.shtml (last visited Oct. 5, 2006).  According to the Decision Notice, the timber sale would log approximately 4.1

million board feet of timber from 190 acres. *Id.* The Decision Notice no longer included the reconstruction of Road 6232 within its description of the chosen alternative, even though the Overlook EA states that such reconstruction is necessary to access proposed harvest units.

On January 27, 2006, FSEEE administratively appealed the Overlook timber sale Decision Notice, pursuant to the Appeals Reform Act. The Forest Service subsequently determined that "the road maintenance and repair work element of the project could be described more clearly to the public," and withdrew the Decision Notice and Finding of No Significant Impact on March 13, 2006. Stahl Dec., Ex. K at 2. The Forest Service plans to "update the documents associated with this project in the next few months," and "release a new decision by mid-summer 2006." *Id.* On March 15, 2006, the Forest Service informed FSEEE that it withdrew the Overlook decision, and dismissed their appeal without review. *Id.,* Ex. K at 1.

## III.    Logging Roads Associated with the Traitors Cove Timber Sale

In 2004, the Forest Service was preparing separate environmental assessments ("EAs") for three logging projects on the Ketchikan Misty Fiords Ranger District: SW Neets, Rockfish, and Francis Cove. Stahl Dec., Ex. D at 1. The Forest Service proposed that the three timber sales would harvest a combined 18.5 million board feet of timber, and would use the three "marine access facilities" (also called "log transfer facilities") located at Fire Cove, SW Neets, and Margaret Bay. *Id.* After reviewing the Project Update for the three timber sales, the National Marine Fisheries Service informed the Forest Service that the Magnuson Stevens Fishery Conservation and Management Act required the agency to prepare an "Essential Fish Habitat" assessment for the proposed projects. Stahl Dec., Ex. E. NMFS expressed particular concern for Margaret Bay because of sensitive resources in the vicinity. *Id.*

On April 1, 2005, the Forest Service decided to combine the SW Neets, Rockfish, and Francis Cove timber sales into one proposal, to be evaluated in the "Traitors Cove" environmental impact statement ("EIS"). 70 Fed. Reg. 16,795 (April 1, 2005) ("A determination was made that there was a possibility of significant cumulative effects on these project areas and therefore a decision was made to prepare an EIS."). The proposed Traitors Cove project would harvest about 16 million board feet of timber, with the logs still barged from the marine access facilities located at Margaret Bay, SW Neets, and Fire Cove. *Id.* at 16,795-96. The Forest Service is currently preparing an EIS for the Traitors Cove proposal. *See* Stahl Dec., Ex. F at 2.

In the spring and summer of 2005, the Forest Service solicited bids on the SW Neets, Rockfish and Francis Cove road reconstruction projects. *See* AR 3135; AR 2015; AR 3004. SW Neets involved the reconstruction of 8.44 miles of road, Rockfish involved the reconstruction of 13.85 miles, and Francis Cove involved the reconstruction of 3.79 miles. AR 3135, p. 2; AR 2015, p. 6; AR 3004. "Some of the major work items" included producing and placing aggregate base, haul, mobilization, reconditioning roadbed, roadside brushing, pit development, installation of culverts, and installation of log stringer bridges. *Id.* The Forest Service accepted offers and signed contracts for the three projects in the summer of 2005. *See* AR 3150a (accepting offer of $273,694 for SW Neets); AR 4051 (Rockfish); AR 3015 (Francis Cove).

According to the Forest Service, "[s]ome segments of all three of these [road] systems could be used in the Traitor's Cove project to haul timber to the respective Log Transfer Facility (LTF) to load on a barge that would be towed to a location for log processing." AR 2016, p. 2. The three reconstructed roads lead directly to the marine access facilities proposed for use in the Traitors Cove project, *see* Stahl Dec., Exhibit L, p. 2; *id.*, Exhibit M, p. 2; AR 3016, p. 47, and

each road runs adjacent to proposed harvest units.  *See* Third Stahl Dec. (comparing maps of proposed Traitors Cove harvest units with maps of road reconstruction projects).  The Forest Service claims that road reconstruction projects are "covered under FSH 1909.15, chapter 31.12 and require no NEPA documentation."  AR 2016, p. 4.  The Forest Service, however, did not notify the public of its intent to categorically exclude these projects, did not request public comment, and did not allow administrative appeals of the road work prior to implementation.

## IV.    The Present Litigation

FSEEE filed its complaint on March 30, 2006, and moved for a temporary restraining order and preliminary injunction on May 5, 2006.  Doc. # 1, 9, 21.  The Forest Service filed its response on May 17, 2006, and the Court held a hearing on May 25, 2006.  Doc. # 27, 36.  On May 26, 2006, this Court issued its order on FSEEE's request for preliminary injunctive relief.  The Court first found that FSEEE's request for a preliminary injunction was moot concerning Roads 6231 and 6232, and the SW Neets project, because all work had been completed.  Prelim. Inj. Order at 3.[3]  The Court also determined that FSEEE had standing to challenge the Rockfish and Francis Cove projects, for which the work had not been completed.  *Id*. at 3-5.

In considering the probability of success for FSEEE's claims on the merits, this Court found that all of FSEEE's arguments raised serious questions.  *Id*. at 6.  The Court found FSEEE's contention that the Forest Service did not follow the proper procedures in order to categorically exclude the road reconstruction projects from NEPA review to be particularly persuasive, and therefore limited its discussion to that argument.  *Id*.  The Court concluded that

---

[3] The Court noted, however, that "the fact the Forest Service has completed work on Roads 6231 and 6232 and the SW Neets road project does not moot requests for non-injunctive relief which plaintiffs may seek regarding those projects."  Prelim. Inj. Order at 3.

although an agency must supply a convincing statement of reasons as to why potential environmental effects will be insignificant, "[t]here are no documents in the record from which the court can determine whether the Forest Service considered the environmental effects of the Rockfish and Francis Cove road projects when it approved them." *Id*. at 7. Because the agency had failed to produce any explanatory documentation contemporaneous with its approval of the road projects, or adequately justify the absence of documentation, the Court held that FSEEE would "probably succeed on its argument that the projects run afoul of NEPA." *Id*. at 8.

Upon considering and balancing the harms, the Court enjoined the remaining road work for the Rockfish and Francis Cove projects, with the exception of specific work that it found should proceed in order to help protect the environment. *Id*. at 10-11. The remaining road work was not enjoined, however, until May 31, 2006. *Id*. at 11; Doc. #38. On June 1, 2006, the Forest Service submitted a certification of compliance, indicating that the planned road work had been completed. Doc. # 39. On July 31, 2006, the Forest Service filed the administrative record, and the parties subsequently agreed on a briefing schedule for summary judgment motions.

## STANDARD OF REVIEW

Summary judgment must be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). District courts are encouraged to utilize summary judgment in appropriate cases. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986). FSEEE's motion raises legal issues on undisputed facts, rendering summary judgment appropriate.

The Administrative Procedure Act ("APA") provides the standard of review for the merits of FSEEE's claims. *See Blue Mts. Biodiversity Project v. Blackwood,* 161 F.3d 1208,

1211 (9th Cir. 1998). Pursuant to the APA, the challenged decisions should be held unlawful and set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "without observance of procedure required by law," *id*., § 706(2)(D); *see High Sierra Hikers Assoc. v. Blackwell,* 390 F.3d 630, 640 (9th Cir. 2004) (stating that "when an agency has taken action without observance of the procedure required by law, that action will be set aside."); *Save the Yaak Committee v. Block*, 840 F.2d 714, 717 (9th Cir. 1988) (stating that because NEPA is primarily a procedural statute, "agency action taken without observance of the procedure required by law will be set aside.").

The APA standard does not shield the agency's action "from a thorough, probing, in-depth review." *Northern Spotted Owl v. Hodel,* 716 F. Supp. 479, 482 (W.D. Wash. 1988). In making decisions, the Forest Service "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfr. Ass'n v. State Farm,* 463 U.S. 29, 43 (1983). And in reviewing the agency's explanation, the Court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.*

## ARGUMENT

The Forest Service violated NEPA by failing to conduct public scoping and provide a statement of reasons prior to categorically excluding the road reconstruction projects from NEPA, by failing to consider the impacts of the SW Neets, Rockfish and Francis Cove road projects and Traitors Cove timber sale within a single EIS, and by implementing the road projects prior to completing the NEPA process for the associated timber sales. The Forest Service also violated the Appeals Reform Act by failing to publish notice, accept public comments, and allow

administrative appeals prior to implementing the challenged projects.[4]

I.    **The Forest Service Violated NEPA by Failing to Allow Public Scoping and By Failing to Provide a Sufficient Explanation Prior to "Categorically Excluding" the Road Reconstruction Projects from NEPA**

"NEPA imposes a procedural requirement that an agency must contemplate the environmental impacts of its actions." *Idaho Sporting Congress v. Thomas*, 137 F.3d 1146, 1149 (9th Cir. 1998); *see 42* U.S.C. § 4332.  "NEPA 'ensures that the agency . . . will have available, and will carefully consider, detailed information concerning significant environmental impacts; it also guarantees that the relevant information will be made available to the larger [public] audience.'"  *Id., quoting Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

"NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken."  40 C.F.R. § 1500.1(b).

NEPA establishes three "categories" of agency action.  *See generally, Edmonds Institute v. Babbitt,* 42 F. Supp. 2d 1, 18 (D.D.C. 1999).  First, proposals that normally require an EIS should immediately trigger preparation of an EIS.  40 C.F.R. § 1501.4(a)(1).  Second, the agency

---

[4]  Even though the Forest Service completed the challenged projects during the course of this litigation, the case is not moot because the Court can still order effective declaratory and injunctive relief, such as ordering the agency to close these roads with locked gates and implement mitigation measures to minimize environmental harm.  *See Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (stating that the party asserting mootness bears a heavy burden of establishing that there this no effective relief the court can provide); *Neighbors of Cuddy Mt. v. Alexander*, 303 F.3d 1059, 1065-66 (9th Cir. 2002) (holding that the completion of logging did not moot challenge to timber sale because effective relief could still be granted through a variety of measures); *see also* Prelim. Inj. Order at 3.  This case is also "capable of repetition, yet evading review," as the Forest Service has already proceeded with five road projects in two separate areas in violation of the required procedures, and FSEEE had *no time* to obtain judicial review before the projects commenced.  *See Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1173-74 (9th Cir. 2002).  FSEEE also has standing to challenge all five road projects.  *See* declarations of Glen Ith and Mike Sallee; Prelim. Inj. Order at 3-6.

may designate types of actions that normally do not require the preparation of an EIS and can be

"categorically excluded." 40 C.F.R. §§ 1508.4, 1501.4(a)(2). If a proposed action fits within a

categorical exclusion, NEPA review is not necessary unless "extraordinary circumstances" exist.

40 C.F.R. § 1508.4. Third, any action that does not fall into the first or second category should

be evaluated in an EA, which must analyze whether impacts from the proposed action may be

significant and, therefore, require an EIS. 40 C.F.R. §§ 1501.4(b), 1508.9.

The Forest Service claims that the SW Neets, Rockfish, Francis Cove, Road 6232 and

6231 projects each fit within a Forest Service categorical exclusion for the repair and

maintenance of roads. *See* AR 2022, p. 3 ("The work associated with roads 6231 and 6232 is

covered by FSH 1909.15 part 31.1b #4"); AR 2016, p. 4 ("This action is covered under FSH

1909.15, chapter 31.12 and requires no NEPA documentation."). The Forest Service, however,

did not notify the public about these road reconstruction projects, did not disclose its intent to

rely on a categorical exclusion for these projects, did not conduct public scoping to determine

whether extraordinary circumstances existed that would prohibit use of a categorical exclusion,

and did not provide a statement of reasons explaining why a categorical exclusion was

appropriate prior to proceeding with the projects. In fact, FSEEE only discovered these projects

on its own, after the road reconstruction had already commenced. *See* Second Stahl Dec., ¶ 3

("The fact is, but for the diligence of Forest Service wildlife biologist Glen Ith and the

willingness of Mr. Ith to go public regarding this illegal road work, no one would have found out

about these roads until all the work had been done, if even then.").

Pursuant to NEPA, the Forest Service may only rely on a categorical exclusion for

projects that will not significantly impact the environment and where there are no "extraordinary

circumstances." 40 C.F.R. § 1508.4.  For any proposal which it proposes to categorically

exclude from NEPA, the Forest Service is therefore required to conduct "public scoping" in order

to disclose its proposal to the public, and to provide the public with an opportunity to identify

why the exclusion may be inappropriate *before* the proposed project is allowed to proceed.  *See*

AR 1006, p. 7 (FSH 1909.15, Chapter 30.3(3) ("Scoping is required on all proposed actions,

including those that would appear to be categorically excluded."); *id.*, p. 8 (FSH 1909.15,

Chapter 31.12 ("The following categories . . . may be categorically excluded from documentation

in an EIS or an EA *unless scoping indicates extraordinary circumstances exist*") (emphasis

added); *Alaska Center for the Environment v. U.S. Forest Service*, 189 F.3d 851, 858 (9th Cir.

1999) ("The Forest Service conducts scoping for 'all proposed actions, including those that

would appear to be categorically excluded'"), *quoting* FSH, 1909.15, 30.2(3).  "If extraordinary

circumstances having an effect on [the] environment *are revealed during scoping*, then the Forest

Service conducts an EA."  *Alaska Center*, 189 F.3d at 858 (emphasis added).[5]

Here, there is no dispute that the Forest Service did not conduct public scoping or

otherwise notify the public prior to proceeding with the five challenged road reconstruction

projects.  Again, FSEEE only learned about the projects on its own, thanks to a member who also

happens to work for the Forest Service.  *See* Second Stahl Dec., ¶¶ 3-14.  And FSEEE did not

learn that the Forest Service was relying on a categorical exclusion for these projects until after it

had discovered that the projects were already being implemented.  *See* AR 2022, p. 3; AR 2016,

---

[5] *See also Citizens' Committee to Save our Canyons v. U.S. Forest Service*, 297 F.3d
1012, 1024 (10th Cir. 2002) ("SOC correctly points out that, under applicable regulations, "If a
proposed action has been categorically excluded from documentation in an EIS or an EA . . . [,]
interested and affected persons must be informed in an appropriate manner of the decision to
proceed with the proposed action.'  FSH 1909.15 § 32.1.").

p. 4.  The Forest Service's failure to notify the public and conduct scoping for these road

reconstruction projects violates NEPA.

The Forest Service also violated NEPA by failing to prepare findings and sufficiently

explain its decision to rely on a categorical exclusion for these road reconstruction projects, as

opposed to preparing an EA or EIS.  As explained by the Ninth Circuit in *Alaska Center for the*

*Environment*, "[w]hen an agency decides to proceed with an action in the absence of an EA or

EIS, the agency must adequately explain its decision."  189 F.3d at 859.  The agency cannot

avoid its NEPA obligations merely by asserting that the project will have insignificant

environmental impacts, but instead must provide "a convincing statement of reasons why

potential effects are insignificant."  *Id., quoting The Steamboaters v. FERC*, 759 F.2d 1382, 1393

(9th Cir. 1985).  This statement of reasons allows the reviewing court to determine whether the

agency's decision "was based on a consideration of the relevant factors and whether there has

been clear error of judgment."  *Id., quoting Marsh v. ONRC*, 490 U.S. 360, 378 (1989).

In *Alaska Center*, the Ninth Circuit determined that the Forest Service had provided a

reasoned decision, and had specifically indicated *"during the scoping process"* that there were

no extraordinary circumstances that would warrant preparation of an EA or EIS.  *Alaska Center*,

189 F.3d at 859 (emphasis added).  In this case, by contrast, the Forest Service did not conduct

scoping and provided the public with no reasoned decision or explanation as to why an EA or

EIS was not required prior to proceeding with the road reconstruction projects.

This case is therefore similar to *California v. Norton*, where the agency did not prepare

any environmental documentation regarding its challenged decision.  311 F.3d 1162, 1175 (9th

Cir. 2002).  As in *Norton*, the Forest Service in this case cannot "point to any documentation in

the record that would suggest that it made a categorical exclusion determination *at the time the*
*[road projects] were approved*." *Id.* (emphasis added).[6]  As recognized by the Ninth Circuit, a
reviewing court is unable to determine whether the application of a categorical exclusion is
arbitrary and capricious "where there is no contemporaneous documentation to show that the
agency considered the environmental consequences of its action and decided to apply a
categorical exclusion to the facts of a particular decision." *Id.* at 1176.[7]  Moreover, an agency's
post hoc invocation of a categorical exclusion -- as the Forest Service is relying on in this case --
"does not provide assurance that the agency actually considered the environmental effects of its
action before the decision was made." *Id.*; *see also Edmonds Institute v. Babbitt*, 42 F. Supp. 2d
1, 18 (D.D.C. 1999) (recognizing that a post hoc assertion of a CE during litigation, unsupported
by any evidence that such a determination was made at the appropriate time, cannot justify a
failure to prepare an EA or an EIS.).[8]

    In *Alaska State Snowmobile Assoc. ("ASSA") v. Babbitt*, 79 F.Supp.2d 1116 (D. Alaska
1999), at issue was the National Park Service's decision to close a portion of Denali National
Park to snowmobile use.  The Park Service was relying on a previously established categorical
exclusion, and "summarily determined that no exception to the categorical exclusion applied."
*ASSA*, 79 F.Supp.2d at 1135.  This Court concluded that an agency's findings that merely restate

---

    [6] *See* Prelim. Inj. Order, p. 7 ("There are no documents in the record from which the court
can determine whether the Forest Service considered the environmental effects of the Rockfish
and Francis Cove road projects when it approved them.").

    [7] *See also Jones v. Gordon*, 792 F.2d 821, 828-829 (9th Cir. 1986) (the agency must
address the relevant exceptions to the categorical exclusion and explain why they do not apply)

    [8] *See* Prelim. Inj. Order, p. 7 (stating that the *post hoc* rationalization offered in the
declaration of Jack Oien "does not identify any documentation contemporaneous to the decision
to proceed which the court could review.").

the categorical exclusion, without any explanation or analysis as to why it considered the activity

insignificant, are too conclusory.  *Id*. at 1136.[9]  In this case, the Forest Service did not even cite

the categorical exclusion it was relying on prior to making its decision to proceed with the road

reconstruction projects.  As in *ASSA*, the Forest Service therefore "abused its discretion in not

explaining its reliance on the categorical exclusion it applied."  *Id*.  In sum, the Forest Service's

decisions to proceed with the five road reconstruction projects "cannot be upheld in the absence

of an explanation for reliance on the categorical exclusion and an explanation why no exceptions

to the categorical exclusion would apply."  *Id*. at 1139. [10]

## II.    The Forest Service Violated NEPA Because the Road Reconstruction Projects Do Not Properly Fit Within a Categorical Exclusion

The Forest Service also improperly relied on a categorical exclusion for the five road

reconstruction projects because these projects do not fit within any of the agency's categories.

The Forest Service Chief established certain categories of "routine administrative, maintenance,

and other actions," including the following category which the agency is relying on in this case:[11]

> Repair and maintenance of roads, trails, and landline boundaries.  Examples included but are not limited to:
> a.     Authorizing a user to grade, resurface, and clean the culverts of an established National Forest System road.

---

[9] While the Court initially issued this decision as a preliminary order, the Court subsequently issued a final order confirming that the challenged decision violated NEPA "because the Park Service never explained its reliance on a categorical exclusion and never explained why exceptions did not apply to the categorical exclusion."  *Alaska State Snowmobile Association v. Babbitt*, 1999 U.S. Dist. LEXIS 21148, *9 (D. Alaska 1999).

[10] *See* Prelim. Inj. Order, p. 8 ("Because the Forest Service has not produced explanatory documentation contemporaneous with its approval of the road projects or adequately justify the absence of justification, FSEEE probably will succeed on its argument that the projects run afoul of NEPA.").

[11] *See* AR 2022, p. 3; AR 2016, p. 4.

      b.      Grading a road and clearing the roadside of brush without the use of herbicides.

      c.      Resurfacing a road to its original condition.

      d.      Pruning vegetation and cleaning culverts along a trail and grooming the surface of the trail.

      e.      Surveying, painting, and posting landline boundaries.

AR 1006, p. 9 (FSH 1909.15, Chapter 31.12(4)).

The main reason that this category does not fit is because it is for minor road *maintenance* (such as grading, cleaning culverts, and clearing brush), while the Forest Service in this case conducted major road *reconstruction*. The Forest Service's contracts and related documents characterize these projects as "reconstruction" projects. *See e.g.*, AR 3015; AR 4051; AR 2013. The Forest Service's description of these projects show that they involved more environmentally significant activities than those set forth in its categorical exclusion, including producing and placing aggregate base, and the installation of bridges and culverts. AR 3135, p. 2; AR 3004; AR 1007; AR 3040, p. 5. As recognized by Dr. Montgomery, activities such as the development of rock quarries (with the associated blasting and pulverizing), the construction of marine access facilities, the installation of major culverts up to 4 feet in diameter, and bridge installation are not included or anticipated in the limited categorical exclusion for road maintenance. Second Montgomery Dec., ¶¶ 5-10. In addition, for at least one of the roads, the Forest Service admits that 40-45 trees were cut for the new bridge stringers, AR 2022, p. 3, which included "the harvest of many large old-growth Sitka spruce (estimated ages of between 300 to 800 years old), averaging over 40 inches in diameter." Ith Dec., ¶ 11; *id.*, Exhibits C, D.[12]

---

[12] Moreover, at least one of the road projects resulted in the reopening of a formally closed road, which will result in additional impacts to wildlife species. *See* Ith Dec., ¶¶ 9-10; *id.,* Exhibits A and B (photographs showing the before and after of one of the reconstructed roads); *see also* Stahl Dec., Ex. I (EA, pp. 195-96) (identifying Road 6231 and most of Road 6232 as "level 1" roads, meaning they had been closed for over a year).

The Forest Service asserts that the Traitors Cove roads (SW Neets, Rockfish, and Francis Cove) are "level 2" roads, which it states are maintained for high clearance vehicles at a low level, and are simply being maintained at the level 2 use level. *See* Oien Decl., ¶¶ 3-4. The Forest Service also acknowledges, however, that during a resource management activity, such as a timber sale, roads must be maintained at a higher level, and will then revert back to level 2 after the activity. AR 1009, p. 3. This is why the SW Neets, Rockfish, and Francis Cove projects are identified as road reconstruction contracts as opposed to road maintenance contracts, as major reconstruction was necessary to prepare these roads for the upcoming heavy logging trucks and timber hauling, such as the installation of up to 4 foot culverts, new bridges, and the development of marine access facilities. The Forest Service, however, does not have a categorical exclusion for this type of major road reconstruction, and these projects do not fit within its limited exclusion for standard road maintenance which is for minor activities such as the cleaning of culverts and the clearing of roadside brush. AR 1006, p. 9. Because the categorical exclusion does not cover this type of major reconstruction, the Forest Service violated NEPA by failing to prepare an EA or EIS prior to authorizing the reconstruction projects.[13]

---

[13] Additionally, even if the Forest Service had followed the proper procedures and provided the required findings and explanation, and even if the major reconstruction of these logging roads did fit within the limited road maintenance category as now claimed by the agency, "extraordinary circumstances" would still likely prohibit the use of the exclusion for these road reconstruction projects. *See* AR 1006, p. 6 (FSH 1909.15, Chapter 30.3(2) ("extraordinary circumstances" include wetlands, inventoried roadless areas, Alaska Native religious or cultural sites, and archaeological sites.)); *Alaska Center*, 189 F.3d at 858 ("If a proposed action fits within a categorical exclusion, NEPA review is not required *unless there are 'extraordinary circumstances' related to the proposed action*.") (emphasis added).

III.    **The Forest Service Violated NEPA by Not Analyzing the Environmental Impacts of the SW Neets, Rockfish, and Francis Cove Road Reconstruction Projects and the Traitors Cove Logging Project Within a Single EIS**

When determining the proper scope of an EIS, an agency must consider connected and cumulative actions.  40 C.F.R. § 1508.25.  Connected actions are actions that are closely related and must be discussed in the same EIS.  40 C.F.R. § 1508.25(a)(1).  Cumulative actions are actions which, when viewed with other proposed actions, have cumulatively significant impacts that must be discussed in the same impact statement.  40 C.F.R. § 1508.25(a)(2).  The Rockfish, Francis Cove, and SW Neets road reconstruction projects and the Traitors Cove timber sale are connected and cumulative actions.  Therefore, the Forest Service's failure to assess the projects together in a single EIS violates NEPA.

A.    **The Road Reconstruction and Logging Projects are Connected Actions**

"The CEQ regulations require 'connected actions' 'to be considered together in a single EIS."  *Save the Yaak Committee v. Block*, 840 F.2d 714, 719 (9th Cir. 1988), *quoting Thomas v. Peterson,* 753 F.2d 754, 758 (9th Cir. 1985).  Actions are connected if they (i) automatically trigger other actions which may require an EIS, (ii) cannot or will not proceed unless other actions are taken previously or simultaneously, or (iii) are independent parts of a larger action and depend on the larger actions for their justification.  *Id;* 40 C.F.R. § 1508.25(a)(1).

Timber sales and the reconstruction of associated logging roads are connected actions that must be analyzed together.  *Save the Yaak Committee,* 840 F.2d at 720.  In *Save the Yaak,* the Forest Service was reconstructing sections of the Yaak River Road on the Kootenai National Forest.  *Id.* at 716.  Plaintiffs argued that the Forest Service was proposing timber sales related to the reconstruction of the road, and that the sales and road needed to be analyzed together in an

EIS.  *Id.* at 717.  The Ninth Circuit agreed, noting the "clear nexus between the timber contracts and the improvement of the road."  *Id.* at 720.  The evidence established that the purpose of the road reconstruction "was to make the log hauling more efficient, productive, and safe," and there was no indication that "the road was reconstructed for any other reason."  *Id.*  Because the road reconstruction and timber harvest were "connected actions," they were required to be analyzed together in a single NEPA document.  *Id.*

Similarly, in *Thomas v. Peterson*, 753 F.2d 754, plaintiffs sought to enjoin construction of a logging road, arguing that the Forest Service needed to analyze the combined environmental impacts of the road and the associated timber sales.  The Forest Service had prepared an EA for the logging road, but was preparing separate EAs for the timber sales that the road was designed to facilitate.  *Thomas*, 753 F.2d at 757.  The Ninth Circuit determined that the timber sale could not proceed without the logging road, and that the road would not have been built but for the contemplated timber sales.  *Id.* at 758.  Because the road reconstruction and contemplated timber were "inextricably intertwined," they were connected actions that needed to be assessed in a single NEPA document.  *Id.* at 759.

In this case, the Forest Service also improperly segmented road work from an associated timber sale, as roads were again reconstructed in order to facilitate a proposed sale.  The Forest Service acknowledges that the logs harvested in the combined Traitors Cove project "would be barged from three existing marine access facilities located at Margaret Bay, SW Neets, and Fire Cove."  70 Fed. Reg. at 16,795-96.[14]  The reconstructed SW Neets, Rockfish, and Francis Cove

---

[14] *See also* AR 2016, p. 2 ("Some segments of all three of these [road] systems could be used in the Traitor's Cove project to haul timber to the respective Log Transfer Facility (LTF) to load on a barge that would be towed to a location for log processing.").

roads each lead to these same marine access facilities.  *See* Stahl Dec., Exhibit L at 2; *id*., Exhibit

M at 2; AR 3016, p. 47.  In fact, the three marine access facilities and the three road projects are

identified by the Forest Service as "timber pipeline projects."  AR 4002, pp. 5-6.  Moreover,

maps of the proposed harvest units show that the SW Neets, Rockfish, and Francis Cove logging

roads have been reconstructed to facilitate the proposed Traitors Cove logging project.  *See* Stahl

Dec., Exhibit D at 3-5.  The "[r]oads being reconstructed lead only to Traitors Cove logging

units, while roads in the area that do not lead to Traitors Cove logging units are not being

reconstructed."  Third Stahl Dec., ¶ 2.[15]

        As in *Thomas v. Peterson*, the proposed logging project could not proceed without the

reconstruction of the logging roads, and the projects are "inextricably intertwined."  753 F.2d at

758-59.  Similarly, as in *Save the Yaak*, there is a clear nexus between the improvements to the

roads and the proposed timber sale, and the purpose of the road reconstruction projects is "to

make the log hauling more efficient, productive, and safe."  840 F.2d at 720.[16]  The Forest

Service recognized the need to prepare a single EIS to assess the cumulative impacts of the three

proposed timber sales, 70 Fed. Reg. 16,795, but improperly segmented the road reconstruction

---

        [15] For instance, roads in the Rockfish area that surround proposed units, such as 8060585,
8000586 and 8000000, are being reconstructed, while other parts of the road system that do not
lead to logging units are not being reconstructed.  Third Stahl Dec., ¶ 3.  And for Francis Cove,
all roads chosen for reconstruction lead to Francis Cove units, with the one exception of a short
segment that leads to a bear viewing platform.  *Id*., ¶ 4.

        [16]  *See also* http://www.fs.fed.us/r10/tongass/forest_facts/faqs/roadmtce.shtml (last visited
Oct. 5, 2006) ("[T]he Forest Service has received $5 million *for improving access for timber
sales*.  The funds are used to award public works contracts *for road reconstruction*, and
occasionally new construction, and to offset the cost of building roads to higher standards.
Extra funding ($1.5 million) was also provided to improve marine access facilities.") (emphasis
added).

work that was necessary for the overall logging proposal. Because the road reconstruction and proposed timber sale are connected actions, they must be analyzed in a single EIS, 40 C.F.R. § 1508.25(a)(1), and the failure to do so violates NEPA.

### B.   The Road Reconstruction and Logging Projects May Result in Cumulatively Significant Impacts

"The CEQ regulations also require that 'cumulative actions' be considered together in a single EIS." *Thomas v. Peterson*, 753 F.2d at 759, *quoting* 40 C.F.R. § 1508.25(a)(2). "'Cumulative actions' are defined as actions 'which when viewed with other proposed actions have cumulatively significant impacts.'" *Id*. A cumulative impact is defined as the impact on the environment that results from the incremental impact of the proposed actions when added to other past, present, and reasonably forseeable future actions, and "can result from individually minor but collectively significant actions taking place over a period of time." 40 C.F.R. § 1508.7.

"Both connected actions and unrelated, but reasonably foreseeable, future actions may result in cumulative impacts." *Save the Yaak*, 840 F.2d at 721. Moreover, even actions that otherwise could be categorically excluded from NEPA must still be analyzed with other actions in an EIS if significant cumulative impacts may result. In *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208 (9th Cir. 1998), plaintiffs challenged five timber sales that were proposed in the same area of the Umatilla National Forest, arguing that they were required to be assessed in a single EIS. At least one of these projects had been categorically excluded from NEPA review. *Blue Mountains*, 161 F.3d at 1211 n. 2. As in this case, however, the projects were all in the same area and were all "reasonably foreseeable." *Id.* at 1215. The Ninth Circuit determined that there were substantial questions whether the five projects would result in

cumulatively significant impacts, and held that NEPA therefore required a single EIS "to address the cumulative effects of these proposed sales." *Id.*[17]

In this case, the road reconstruction and proposed timber sale may result in cumulatively significant  impacts and, therefore, the Forest Service must prepare one comprehensive EIS to analyze the overall, combined impact.  40 C.F.R. § 1508.25(a)(2).  As explained by Dr. Montgomery, there are two sources of soil erosion associated with road reconstruction -- the road rebuilding itself and the use of the newly-reopened roads.  Montgomery Dec., ¶¶ 4-5. Montgomery warns that this erosion from road reconstruction "cannot be assessed in isolation" because it adds to the erosion from logging activities in the affected watersheds.  *Id.*, ¶ 7.  "Even a small amount of erosion from road reconstruction (and the amounts are likely not insignificant) when added together with other sediment sources *can substantially degrade water quality and fish habitat*."  *Id.* (emphasis added).  As further explained by Forest Service wildlife biologist Glen Ith, the reconstruction of logging roads can also have adverse impacts on wildlife species, especially if the road had previously been closed to motorized use.  Ith Dec., ¶ 9.  For instance, road reconstruction increases the accessibility to marten habitat for trappers, and "greatly increases the vulnerability and mortality rates for these old-growth associated species."  *Id.*

Due to its determination that the "Francis Cove Timber Sale, SW Neets Timber Sale, and Rockfish Timber Sale projects" may result in "significant cumulative effects," the Forest Service

---

[17] Similarly, in *Sierra Club v. U.S. Forest Service,* 843 F.2d 1190, 1191 (9th Cir. 1988), plaintiffs challenged a number of timber sales in the same area, one of which the Forest Service had categorically excluded from NEPA review.  Because there were substantial questions as to whether the sales would cumulatively result in significant environmental impacts, the Ninth Circuit held that the Forest Service's failure to consider the sales together in an EIS was unreasonable.  *Sierra Club,* 843 F.2d at 1194-95.

is now preparing the Traitors Cove EIS.  70 Fed. Reg. at 16,795.  Because the Francis Cove, SW

Neets, and Rockfish road reconstruction projects will further contribute to the overall, cumulative

environmental impacts in this same area, the Forest Service was also required to consider and

disclose the impacts of these road reconstruction projects within the same EIS.  40 C.F.R. §

1508.25(a)(2).  The agency's failure to do so violates NEPA.  *Blue Mountains*, 161 F.3d at 1515;

*Sierra Club*, 843 F.2d at 1195.

### IV.     The Forest Service Violated NEPA by Proceeding with Reconstruction of the Five Logging Roads Prior to Completing the Environmental Analyses for the Associated Timber Sales

"Proper timing is one of NEPA's central themes."  *Save the Yaak*, 840 F.2d at 718.  The

very purpose of NEPA is for agencies to analyze and disclose the environmental consequences of

their proposals "before decisions are made and before actions are taken."  40 C.F.R. § 1500.1(b).

By reconstructing logging roads prior to completing the environmental analyses for the

associated timber sales, the Forest Service violated numerous NEPA requirements.

First, there should be no dispute that the five logging roads at issue in this case are

associated with proposed timber sales.  As explained above, the SW Neets, Rockfish and Francis

Cove road reconstruction projects are closely associated with and connected to the Traitors Cove

logging project, for which the Forest Service is currently preparing an EIS.  Similarly, Roads

6231 and 6232 are associated with the Overlook timber sale.  *See* AR 4029; *see also* Stahl Dec.,

Ex. I (Overlook EA, pp. 16-17, explaining that as part of the "action alternatives," these roads

would be reconstructed "to access proposed harvest units.").  While the Forest Service withdrew

the Overlook decision in response to FSEEE's administrative appeal, the agency states that it is

updating the documents and expects to release a new decision.  Stahl Dec., Ex. K.

The CEQ regulations explain the limitations on agencies during the NEPA process.  Until an agency has issued its decision on a project, it is prohibited from taking any action that would have an "adverse environmental impact." 40 C.F.R. § 1506.1(a)(1).  The reconstruction of the five logging roads, which included the cutting of numerous old-growth trees, has had, and will continue to have, adverse impacts on the environment.  *See* AR 2022, p. 3 ("Approximately 40-45 trees were also cut"); Ith Dec., ¶¶ 9-11; Montgomery Dec., ¶¶ 4-7 (explaining sources of soil erosion resulting from road reconstruction).  Therefore, the reconstruction of the roads prior to the completion of the NEPA processes for the associated timber sales violated NEPA.

Agencies are also prohibited from taking any action concerning a proposal that would "[l]imit the choice of reasonable alternatives."  40 C.F.R. § 1506.1(a)(2).  By entering into contracts and allowing reconstruction to occur during the NEPA process, the Forest Service unduly limited and prejudiced its choice of reasonable alternatives for the Traitors Cove and Overlook logging projects, in violation of NEPA.  40 C.F.R. §§ 1502.2(f), 1506.1(a)(2).  The Forest Service also improperly foreclosed consideration of the mandatory "no action" alternative for its logging proposals, as "action" has already occurred.  40 C.F.R. § 1502.14(d).

Furthermore, the Forest Service may not make any irreversible commitment of resources pending the completion of its NEPA analysis.  *Metcalf v. Daley,* 214 F.3d 1135, 1143 (9th Cir. 2000); *Conner v. Burford,* 848 F.2d 1441, 1446 (9th Cir. 1988); 42 U.S.C. § 4332(C)(v).  As stated, the road reconstruction work included the cutting of trees, some of which are old-growth trees.  *See* AR 2022, p. 3 ("Approximately 40-45 trees were also cut"); Ith Dec., ¶ 11 ("The Forest Service allowed the harvest of many large old-growth Sitka spruce (estimated ages of between 300 to 800 years old) averaging over 40 inches in diameter at breast height (DBH) as

part of the road reconstruction work."). The cutting of trees, especially old-growth trees, is irretrievable. *See Neighbors of Cuddy Mountain v. U.S. Forest Service,* 137 F.3d 1372, 1382 (9th Cir. 1998); *Portland Audubon Society v. Lujan,* 795 F. Supp. 1489, 1509 (D. Or. 1992). Because this irreversible cutting of trees occurred prior to the completion of the NEPA process for the proposed logging projects, the Forest Service violated NEPA.

Moreover, an agency may not enter into agreements that would bind them to a particular course of action prior to preparing the proper NEPA documentation. *Metcalf v. Daley* 214 F.3d at 1145. In *Metcalf*, the Makah Indian Tribe entered into agreements with the National Marine Fisheries Service concerning its plan to resume whaling. The Ninth Circuit found that the agency did not consider the potential environmental effects of proposed action "until long after they had already committed in writing to support the Makah whaling proposal." *Id*. at 1143. Because the agency made the decision to support the Tribe's proposal before the EA process began, "the die already been cast" by the time the EA was prepared and the agency violated NEPA "by making such a firm commitment before preparing the EA." *Id*. at 1144-45. In this case, the Forest Service similarly violated NEPA by entering into contracts for the five road reconstruction projects, thereby binding itself to reconstructing the roads before completion of the Traitors Cove EIS and Overlook EA. *See* AR 3150a (SW Neets); AR 4051 (Rockfish); AR 3015 (Francis Cove); AR 3050 ("Overlook Roads project").

In sum, the reconstruction of logging roads prior to completing the NEPA analyses for associated timber sales is untimely and in violation of NEPA. *Save the Yaak,* 840 F.2d at 718-19 ("In this case, the reconstruction contracts were awarded prior to preparation of the EAs, . . .. These events demonstrate that the agency did not comply with NEPA's requirements concerning

the timing of their environmental analysis, thereby seriously impeding the degree to which their

planning and decisions could reflect environmental values.").

## V.  The Forest Service Violated the Appeals Reform Act by Proceeding with the Road Reconstruction Projects Prior to Providing Public Notice, Accepting Public Comments, and Allowing Administrative Appeals

The Appeals Reform Act ("ARA") grants individuals the right to be notified, submit

comments, and file administrative appeals of Forest Service decisions.  16 U.S.C. § 1612 note.

The ARA directs the Forest Service to establish a notice and comment process "for proposed

actions of the Forest Service concerning projects and activities implementing [forest plans]," and

to modify the administrative appeal procedures for the decisions concerning these same projects.

16 U.S.C. § 1612(a).  The ARA's notice, comment, and administrative appeal requirements

therefore apply to all Forest Service projects and activities that implement forest plans.  16

U.S.C. § 1612(a); *Wilderness Society v. Rey*, 180 F. Supp. 2d 1141, 1148 (D. Mont. 2002).

Prior to proposing an action, the ARA requires the Forest Service to provide notice by

promptly mailing notice to persons who are known to have participated in the decisionmaking

process, and by publishing notice in a newspaper of general circulation.  16 U.S.C. § 1612(b)(1).

The Forest Service must then accept comments on its proposal for 30 days.  16 U.S.C. §

1612(b)(2).  Within 45 days of the decision on the proposed action, individuals who were

involved in the public comment process may then file an administrative appeal.  16 U.S.C. §

1612( c).  And the Forest Service must stay implementation of its decision during the

administrative appeal period.  16 U.S.C. § 1612(e).

The SW Neets, Rockfish, Francis Cove, Road 6231, and Road 6232 reconstruction

projects, together with the Overlook and Traitors Cove logging projects, were designed to

implement the goals and objectives of the Tongass Forest Plan.  *See* 70 Fed. Reg. at 16795 ("The purpose and need for the proposed [Traitors Cove] action responds to the goals and objectives identified in the Tongass Land Management Plan, as amended, and helps move the area toward the desired conditions as described in the forest plan.");Stahl Dec., Ex. I (Overlook EA Abstract) *(also available at* http://www.fs.fed.us/r10/tongass/projects/overlook/05_overlook-ea.shtml) ("The Forest Service is proposing to implement the 1997 Tongass Land and Resource Management Plan, as amended (Forest Plan) by making timber available for harvest in the Overlook Project Area.").  Whether viewed as individual road reconstruction projects or components of the proposed logging projects, the public was therefore entitled to be notified, submit comments, and administratively appeal the proposed reconstruction of these roads before the road work commenced.  16 U.S.C § 1612 (b), (c), (d). The Forest Service's failure to provide notice, accept public comment, and allow administrative appeals prior to the commencement and completion of the road work violates the ARA.  *Id.*[18]

## VI.    The Court Should Order the Forest Service to Close the Five Logging Roads and Implement Appropriate Mitigation Measures Pending the Agency's Full Compliance with NEPA and the Appeals Reform Act

The traditional basis for permanent injunctive relief is irreparable injury and the inadequacy of legal remedies.  *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 542, (1987).  The presence of strong NEPA claims "gives rise to more liberal standards for granting

---

[18] The Forest Service may argue that the road reconstruction projects were exempt from the ARA requirements because the project were "categorically excluded" from NEPA review. The Ninth Circuit has determined, however, that the ARA "does not provide for any exclusions or exemptions from its requirement that the Forest Service provide an administrative appeal for decisions implementing Forest Plans." *Earth Island Institute v. Ruthenbeck*, 2006 U.S. App. LEXIS 20497, *23 (9th Cir. 2006).  Regardless, as set forth above, the road reconstruction projects in this case do not fit within the Forest Service's categorical exclusion for minor road maintenance, and therefore the projects must be subject to the ARA requirements.

an injunction," as "irreparable injury flows from the failure to evaluate the environmental impact of a major federal action." *High Sierra Hikers Assn. v. Blackwell,* 390 F.3d at 642; *see also National Parks & Conservation Assoc. v. Babbitt,* 241 F.3d 722, 738 n. 18 (9th Cir. 2001) (stating that "because NEPA is a purely procedural statute, the requisite harm is the failure to follow the appropriate procedures."). Therefore, "absent unusual circumstances, an injunction is the appropriate remedy for a violation of NEPA's procedural requirements." *Thomas v. Peterson,* 753 F.2d at 764. In this context, the Forest Service bears the burden of demonstrating that any such "unusual circumstances" exist that militate against the relief requested. *Id.; see also Forest Conservation Council v. U.S. Forest Serv.,* 66 F.3d 1489, 1496 (9th Cir. 1995).

To remedy the Forest Service's violations of the NEPA and the ARA procedures in this case, FSEEE respectfully requests that the Court order the Forest Service to close the SW Neets, Rockfish, Francis Cove, Road 6231 and 6232 logging roads with locked gates to all motorized traffic until the agency complies with the law. Such relief would help mitigate the ongoing environmental harm resulting from the newly reconstructed roads. *See* Montgomery Dec., ¶¶ 5-6 (explaining the soil erosion caused by the increased use of reconstructed roads); Ith Dec., ¶ 9 (explaining the harm to wildlife caused by road reconstruction and re-opened roads); Second Ith Dec., ¶ 9 (explaining ineffectiveness of current attempts to close one of the five roads); *see also* Second Ith Dec., Exhibit A (photo showing ineffectiveness of current attempt to close road).

Similar relief was granted in *Save Greers Ferry Lake v. Department of Defense*, 255 F.3d 498 (8th Cir. 2001). There, plaintiffs alleged that the United States Corps of Engineers violated NEPA by not preparing an EIS on its 2000 Shoreline Management Plan for Greers Ferry Lake. *Save Greers Ferry Lake*, 255 F.3d at 499. The court agreed and held that any boat dock

construction permits issued under the 2000 Shoreline Management Plan would not be

recognized.  *Id.* at 501.  For the docks that had already been constructed, the court ordered:

> The boat docks that have already been constructed on the Lake under permits
> issued pursuant to the 2000 SMP may remain on the Lake, and they may be
> maintained to prevent movement or deterioration *but may not be used for any
> recreational purposes, unless and until the Corps implements a new shoreline
> management plan in full accordance with NEPA and lawfully issues new permits* .
> . .. [I]f the Corps does not take such action within one year after the date of this
> order, then the subject boat docks shall be removed . . ..

*Id.* at 501 (emphasis added).

In this case, FSEEE requests the Court to similarly order relief that insures the

reconstructed logging roads are not used by motorized traffic pending the Forest Service's full

compliance with NEPA and the ARA.   The Court may also consider additional mitigation

measures to help reduce the erosion and sedimentation that is currently resulting from the

reconstructed roads, "such as erosion blankets and the planting of alder."  Second Ith Dec., ¶ 10;

*see Neighbors of Cuddy Mt. v. Alexander*, 303 F.3d at 1066 (discussing appropriateness of

various measures to mitigate the damage caused by the logging of a challenged timber sale prior

to the resolution of the case); *Earth Island Institute v. U.S. Forest Service*, 442 F.3d 1147, 1158

(9th Cir. 2006) (noting a variety of measures that could provide plaintiffs some effective relief).

## CONCLUSION

For the foregoing reasons, FSEEE respectfully requests that the Court hold that the Forest

Service violated NEPA and the ARA.  To remedy the Forest Service's violations of NEPA and

the ARA, FSEEE requests that the Court order the Forest Service to close the five reconstructed

roads with locked gates pending full compliance with the law, and consider additional mitigation

measures to help reduce the ongoing erosion and sedimentation caused by these roads.

DATED this 6th day of October, 2006.

Respectfully submitted,

s/ Marc D. Fink
Marc D. Fink (MN License # 343407)
4515 Robinson Street
Duluth, Minnesota 55804
Tel: 218-525-3884
Fax: 218-525-3857
marc@marcdfink.com

Peter Van Tuyn (AK Bar # 8911086)
Bessenyey & Van Tuyn
310 K Street, Suite 200
Anchorage, AK 99501
Tel:  907-278-2000
Fax:  907-278-2004
pvantuyn@earthlink.net

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on October 6th, 2006, a copy of Plaintiffs' Memorandum in Support of Motion for Summary Judgment and Injunctive Relief was served electronically on:

Bruce M. Landon

s/ Marc D. Fink