BRUCE M. LANDON
U.S. Department of Justice
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska  99501-3657
Telephone: (907) 271-5452
Facsimile:  (907) 271-5827
Email: bruce.landon@usdoj.gov

Attorney for Federal Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS, and Glen.... | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:06-cv-068 (JWS) |
| v. | ) ) | |
| UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, | ) ) ) | |
| Defendant. | ) ) | |

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  DEFENDANTS CONCEDE THAT THE ROAD MAINTENANCE/RECONSTRUCTION CONTRACTS IN THIS CASE CONSTITUTE ACTIONS CONNECTED TO PENDING TIMBER SALES PROJECTS. THIS CONCESSION RESOLVES THE MERITS OF THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. DESPITE DEFENDANTS' CONCESSION ON THE MERITS, THE RELIEF SOUGHT BY PLAINTIFFS IS INAPPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A. A Prohibition on Further Road Work Modeled on the Modified Preliminary Injunction Represents Appropriate Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   B. The Mandatory Relief Sought by Plaintiffs Is Inappropriate
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      1. Mandatory relief is disfavored . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      2. Plaintiffs fail to provide an adequate justification for requiring the Forest Service to install locked gates to block the reconstructed roads . . . . . . . . . . . . . . . 6

      3. Plaintiffs' fail to justify the imposition of additional mitigation measures
         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TABLE OF AUTHORITIES

FEDERAL CASES

Earth Island Institute v. Ruthenbeck, 459 F.3d 954 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 3

National Wildlife Federation v. National Marine Fisheries Service, 422 F.3d 782 (9th Cir. 2005)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

North Carolina v. City of Virginia Beach, 951 F.2d 596 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . 4

Oregon Natural Resources Council v. Harrell, 52 F.3d 1499 (9th Cir. 1995) . . . . . . . . . . . . . . 6-8

Save Greers Ferry Lake v. Dept. of Defense, 255 F.3d 498 (8th Cir. 2001) . . . . . . . . . . . . . . 9, 10

South Carolina Dept. of Wildlife & Marine Resources v. Marsh, 899 F.2d 99 (4th Cir. 1989)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Stop H-3 Ass'n v. Dole, 870 F.2d 1419 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Thomson v. Peterson, 753 F.2d 754 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

West v. Secretary of Dept. of Transportation, 206 F.3d 920, 929 n.10 (9th Cir. 2000) . . . . . . . . 3


FEDERAL STATUTES

16 U.S.C. § 1612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 4321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1


FEDERAL REGULATIONS

36 CFR § 215.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

36 CFR § 215.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

40 CFR § 1508.24(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

INTRODUCTION

Plaintiffs challenge the action of the Forest Service in awarding contracts for the maintenance/reconstruction of Roads 6231 and 6232 in the vicinity of the planned Overlook timber sale project as well as the Rockfish, Francis Cove and S.W. Neets road maintenance/reconstruction contracts in the vicinity of the planned Traitors Cove timber sale project in the Tongass National Forest. To effectuate compliance with the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.,* for the awarding those contracts, the Forest Service relied on a categorical exclusion (CE) for road maintenance work. Plaintiffs claim that use of the CE was improper because: the contracts exceeded the scope of the CE; the CE was not documented; use of the CE was improper because the contracts and the timber sale projects constitute connected actions that should have been considered together in the NEPA documentation of those timber sale projects; use of the CE was improper because the contracts and the timber sale projects will have cumulative impacts that should have been considered together in the NEPA documentation of those timber sale projects; and that the agency violated the Appeals Reform Act (ARA), 16 U.S.C. § 1612 note, by failing to provide notice, opportunity for comment and an administrative appeal of the CE.

As set forth below, defendants concede on plaintiffs' claim that the contracts constituted actions connected to the planned timber sale projects. That concession resolves the merits of this action, though not the question of the appropriate injunctive relief. The relief sought by plaintiffs – the gating of the reconstructed roads, and the imposition of undefined mitigation measures – is inappropriate. Instead, appropriate injunctive relief should be modeled on the preliminary

injunction previously entered, which, with certain exceptions, prohibited further maintenance/reconstruction. Accompanying this Opposition is a proposed order setting forth defendants' view of appropriate relief.

I. DEFENDANTS CONCEDE THAT THE ROAD MAINTENANCE/RECONSTRUCTION CONTRACTS IN THIS CASE CONSTITUTE ACTIONS CONNECTED TO PENDING TIMBER SALES PROJECTS. THIS CONCESSION RESOLVES THE MERITS OF THIS ACTION

After review of plaintiffs' motion for summary judgment and supporting memorandum (Plnts' SJ brief), as well as the administrative record, defendants have concluded that under the facts of the particular contracts at issue in this action, plaintiffs are correct that the contracts and the planned timber sale projects constitute connected actions that should be considered in the NEPA documents for the timber sale projects under 40 CFR § 1508.24(a). Accordingly, although use of a CE is generally appropriate for road maintenance activities, the use was not proper in this case.

This concession resolves the merits of this action without the necessity to decide the other issues presented by plaintiffs. All of plaintiffs' other NEPA claims seek a determination that use of the CE was improper, a matter already conceded. Similarly, the conclusion that the contracts were connected actions that should be considered in the timber sale environmental assessment (EA) for the Overlook timber sale project and the environmental impact statement (EIS) for the Traitors Cove timber sale project obviates the need to decide plaintiffs' ARA claim. Forest Service regulations clearly provide for notice, opportunity to comment and administrative appeal in cases where an EIS or EA is prepared. 36 CFR §§ 215.3, 215.11.

FSEEE v. USFS, 3:06-cv-068 (JWS)
US. Opp. to SJ                                      2

In similar cases, the Ninth Circuit has routinely declined to decide unnecessary issues. *West v. Secretary of Dept. of Transportation,* 206 F.3d 920, 929 n.10 (9th Cir. 2000) (where use of CE was improper for one reason, court declined to decide whether it was improper for additional reasons); *Thomson v. Peterson,* 753 F.2d 754, 761 n. 4 (9th Cir. 1985) (where cumulative impacts of connected road and timber sale project were required to be considered in a single EIS, court declined to decide whether the same result was required for other reasons). See also, *Stop H-3 Ass'n v. Dole,* 870 F.2d 1419, 1428 (9th Cir. 1989).[1/] Accordingly, the Court should enter the accompanying proposed order incorporating defendants' concession and declining to reach the other claims.

## II. DESPITE DEFENDANTS' CONCESSION ON THE MERITS, THE RELIEF SOUGHT BY PLAINTIFFS IS INAPPROPRIATE

Although the concession resolves the merits phase of this litigation, it does not resolve the issue of the propriety of injunctive relief. Plaintiffs seek an order requiring the Forest Service to install locked gates blocking the reconstructed/maintained roads to all motorized traffic. Plaintiffs also suggest that the Court "consider additional mitigation measures." Such relief is

---

[1/]    To the extent the Court determines that it should decide those other issues, defendants oppose plaintiffs' claims on those other issues for the reasons set forth in their Opposition to Motion for Temporary Restraining Order and Preliminary Injunction (Docket # 27) (PI Opp.), which they incorporate by reference. With regard to the ARA claim, defendants offer one update from that brief. At pages 18-19 of the PI Opp., defendants demonstrated that plaintiffs' ARA claim had already been rejected by Judge Singleton when he issued his clarified injunction in *Earth Island Institute v. Pengilly,* Fed. Def. Exh 1 (attached to PI Opp.). That clarified injunction listed all of the categorically excluded activities that *are* subject to the notice, comment and appeal provisions of the ARA. Road maintenance is not on that list. We add that since the filing of the PI Opp., the Ninth Circuit has affirmed Judge Singleton's clarified injunction in that case. *Earth Island Institute v. Ruthenbeck,* 459 F.3d 954 (9th Cir. 2006).

inappropriate because it is not calculated to remedy the specific violation. Even in NEPA cases, an injunction must be "tailored to restrain no more than what is reasonably required to accomplish its ends." *North Carolina v. City of Virginia Beach,* 951 F.2d 596, 602 (4th Cir. 1991); *South Carolina Dept. of Wildlife & Marine Resources v. Marsh,* 899 F.2d 99, 100 (4th Cir. 1989); see also, *National Wildlife Federation v. National Marine Fisheries Service,* 422 F.3d 782, 800 (9th Cir. 2005). In this memorandum, defendants set forth what they believe is appropriate relief and explain why plaintiffs are not entitled to the relief they seek.

A. A Prohibition on Further Road Work Modeled on the Modified Preliminary Injunction Represents Appropriate Injunctive Relief

In its Order on Request for Preliminary Injunctive Relief filed May 26, 2006 (Docket # 37), this Court determined that it should preliminarily enjoin "work on the roads in the Rockfish and Francis Cove road systems" with certain exceptions. In issuing that preliminary injunction, the Court relied on *Thomas v. Peterson,* 753 F.2d 754, 764, 764 n.8 (9th Cir. 1985), a case in which the Ninth Circuit enjoined construction of a Forest Service road that the Circuit had determined was an action connected to a planned timber sale project. Order on Request for Preliminary Injunctive Relief at 8. The Court excluded from the preliminary injunction certain road work activities because the Court determined that enjoining those activities would cause environmental harm (placement of a layer of rock on the surface of Road 8000586, blading/contouring of rock surface already in place on any road), pose a threat to public safety (completion of unfinished stringer bridge), or because plaintiffs did not object to the work (completion of work on the road to the Margaret Creek Wildlife Observation Site). Order on

Request for Preliminary Injunctive Relief at 8-11.  Although the Court enjoined all other road work, the Court permitted defendants, after consultation with plaintiffs, to move for an order allowing defendants to proceed with additional road work activities in order to prevent environmental harm or a threat to public safety.

On June 27, 2006, defendants filed an Unopposed Motion for Modification or Clarification of Injunction (Docket # 44) to permit the spreading by Forest Service employees of seed and fertilizer on exposed soils in the Rockfish and Francis Cove areas.  The Court granted that motion by Order filed June 29, 2006 (Docket # 46).

The Court provided that the preliminary injunction would become effective at 12:01 am Alaska Daylight Time on Wednesday, May 31, 2006.  Preliminary Injunction (Docket # 38).  By the time the preliminary injunction became effective, all road work under the Francis Cove and Rockfish contracts had been completed.  All road work under the S.W. Neets contract and the contract for Roads 6231 and 6232 in the Overlook area had been completed prior to the filing of the complaint.  Although no further work will occur pursuant to the now-completed contracts listed in the complaint, an injunction would prevent additional road work from occurring under new contracts prior to the signing of the final decision on the planned Overlook and Traitors Cove timber sale projects.  For example, additional maintenance and reconstruction work is currently required for a portion of Road 6232 in the Overlook area.  Declaration of Patricia Grantham, Def. Exh. 11 ¶ 7 (attached hereto).  In view of the Court's decision on the preliminary injunction on the Rockfish and Francis Cove contracts, the Forest Service has refrained from awarding a contract for that additional maintenance/reconstruction.  *Id.* at ¶ 8.  The injunction

proposed by defendants would insure that the agency does not award that new contract pending an implementable decision on the timber sales.

An appropriate permanent injunction would extend the prohibitions of the preliminary injunction to Roads 6231 and 6232 and the roads reconstructed/maintained under the S.W. Neets contract. The permanent injunction should include an exception for road work on the road to the Margaret Creek Wildlife Observation Site and for spreading of seed on exposed soils. Finally, the injunction should create an exception for emergency road work where an occurrence such as a land slide or a failed culvert poses an imminent threat to the environment of to public safety. The Forest Service would be required to report promptly to the court on any instance in which it uses that exception for emergency road work.

### B. The Mandatory Relief Sought by Plaintiffs Is Inappropriate

#### 1. Mandatory relief is disfavored

The relief sought by plaintiffs – an order requiring the Forest Service to install locked gates and to take undefined and unwise mitigation measures – is mandatory in nature. Though labeled as a request for a permanent injunction, plaintiffs' request is in the nature of mandamus and is subject to the standards for issuance of mandamus. *Oregon Natural Resources Council v. Harrell,* 52 F.3d 1499, 1508-1509 (9th Cir. 1995) (request for removal of partially completed dam while agency remedied violation of environmental laws subject to standards for issuance of mandamus). Mandamus may be granted when (1) the plaintiff's claim is clear and certain; (2) the duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available. *Id.* at 1508. Plaintiffs' request for mandatory relief fails this test.

> 2. Plaintiffs fail to provide an adequate justification for requiring the Forest Service to install locked gates to block the reconstructed roads

Plaintiffs seek to have the Court "order the Forest Service to close the SW Neets, Rockfish, Francis Cove, Road 6231 and 6232 logging roads with locked gates to all motorized traffic until the agency complies with the law." Plnts SJ brief at 29. Plaintiffs assert that such relief would help mitigate the allegedly ongoing environmental harm resulting from the newly reconstructed roads. In support of this drastic remedy plaintiffs cite to the Declaration of Montgomery and Declarations of Ith. Those declarations do not support the relief sought.

In paragraphs 5 and 6 of his declaration, Montgomery states that erosion is associated with "newly-opened" roads. The roads at issue in this case, however, are not "newly opened." They are previously built roads, most of which experienced motorized vehicular use prior to the reconstruction contracts. For example, Road 6231 was used by motorcycles and off-road vehicles for its entire length for hunting prior to the reconstruction. Declaration of Patty Grantham., Def. Exh. 11 ¶ 5. The road was passable by truck, albeit with some difficulty, up to the old bridge site prior to reconstruction. *Id.* As part of the reconstruction contract, the Forest Service installed a rock and earth berm prior to the bridge. *Id.* The effect of the reconstruction has been to *lessen* the length of the road used by motorized vehicles.

In paragraph 6 of his declaration, Montgomery states that erosion from unused abandoned roads is a small fraction of erosion from reconstructed traveled roads. He relies on a study that "heavily-used roads produced 220 times more sediment per mile than did abandoned, unused roads." He also states that "loaded log trucks generate substantially more sediment ... than do

passenger vehicles." Of course, no timber can be sold until the decisions are made on the timber sale projects. Impacts from loaded log trucks accordingly are not a harm that can occur during the period while the agency considers the timber sales and their roads, including these reconstructed roads. Nor do we have the situation of "heavily used roads." Although the roads at issue in this action were used prior to reconstruction, that use cannot be considered "heavy." either before or after the reconstruction. The roads in the S.W. Neets, Francis Cove and Rockfish road systems are on northern Revilla Island, but are not connected to each other, the Ketchikan road system, or the road system of any other town. Declaration of Robert J. Emley Def. Exh. 12 ¶ 3 (attached hereto). Consequently, their public use by motorized vehicles is limited. Almost all public use has been to access the Margaret Creek Wildlife Observation Site, for recreation or for deer hunting. *Id.* at ¶ 5. Access to the observation site is by van barged out to the log transfer facility at Margaret (Francis Cove road system) by float plane tour operators and left there for the summer tourist season. *Id.* Deer hunters walk or use bicycles, motorcycles or ATVs for access. *Id.* Use of trucks by deer hunters is very uncommon because few hunters have the barge or special boats that would be necessary to bring trucks ashore. *Id.* During weekends in late October or early November (when most hunting occurs) approximately three to seven ATV or motorcycle users are on the Francis Cover system, three to five on the Rockfish system, and one to three on the S.W. Neets system. *Id.*

Plaintiff Ith declares generally that "road improvements increase the accessibility to high value old-growth marten habitat for trappers and greatly increases the vulnerability and mortality rates for these old-growth associated species." However, there is no realistic threat of increased

trapping along the roads at issue in this case. As shown in the Declaration of Robert Emley, Def. Exh. 12 ¶ 6, virtually all roads in the Traitor Cove area were already accessible by motorized travel prior to the reconstruction contracts. As explained above, the impact of the reconstruction of Road 6231 was to restrict rather than expand access on that road. There is no reason to posit that the use of Road 6232 will result in an increase in marten trapping. High value marten habitat is high volume old growth. Tongass Land Management Plan 4-118, Def. Exh. 13 (attached hereto) (defining high quality marten habitat as high volume old growth below 1500 ft. elevation). The land adjacent to Road 6262, however, consists almost completely of old clear cuts. Def. Exh. 14 (attached hereto). Moreover, the topography of the area is ill-suited to marten trapping. Def. Exh. 15 (attached hereto) (map showing steep slopes along the road). Consequently, denying plaintiffs' request for an order to gate the roads in this case does not present a realistic possibility of harm to marten.

The only case plaintiffs cite for the proposition that gating of the roads is appropriate is the Eighth Circuit's decision in *Save Greers Ferry Lake v. Dept. of Defense,* 255 F.3d 498 (8th Cir. 2001). In that case, the Eighth Circuit held that the Army Corps of Engineers had violated NEPA when it issued permits to third parties to build recreational docks along a lakeshore. The Circuit allowed the docks to remain, at least temporarily, but prohibited their use for recreational purposes while the Corps corrected the NEPA violation. That case is clearly distinguishable from the present case. In *Save Greer Ferry Lake,* the docks were built pursuant to the defective permits. In this case, the roads preexisted the reconstruction contracts, and were, with few exceptions, open to public and, in fact, used by the public for recreation and subsistence.

Moreover, ordering someone not to use docks for recreation is prohibitory relief, while an order requiring installation of a locked gate is mandatory in nature.

Finally, the Court must consider the practicality of ordering the installation of a gate. Installation would undoubtedly require the pouring of concrete fittings. The Court may take judicial notice of the fact that it is probably already too cold for pouring concrete this year. That will surely be the case by the time that gates could be ordered, manufactured and installed. If the Court concludes that any roads should be blocked, the placement of boulders sufficient to obstruct motorized access would be a more appropriate blocking mechanism.

In sum, plaintiffs' request for blocking the roads fails for lack of a showing that such blocking is necessary to avoid environmental harm or that there is a plain and ministerial duty to install such gates.

3. Plaintiffs fail to justify the imposition of additional mitigation measures

Plaintiffs on page 30 of their summary judgment brief, suggest that the Court "may also consider additional mitigation measures to help reduce the erosion and sedimentation that is currently resulting from the reconstructed road" specifically suggesting "erosion blankets and the planting of alder." Their brief has no description of what an erosion blanket is, where it should be placed or how or where alders should be "planted." As shown in the Declaration of Robert J. Emley, Def. Exh. 12 ¶ 7, a road engineer on the Tongass for a quarter of a century, roads are reconstructed in accordance with best management practices to improve them from a sedimentation and erosion standpoint. Mr. Emley knows of no measure called an "erosion blanket." *Id.* Alder grow naturally on roads in the Tongass and there is no need to plant them.

*Id.* at ¶8.  Attempting to plant alder in the resurfaced road bed would increase sedimentation and erosion by disturbing that surface.  *Id.*  Mr. Emley is unaware of any further measures necessary or helpful at this time to eliminate or minimize sediment or erosion of the S.W. Neets, Rockfish and Francis Cove road systems beyond those already undertaken pursuant to Forest Service best management practices.  *Id.* at ¶ 9.

The courts have sometimes speculated on the availability of potential mitigation measures when finding that a case had not become moot by virtue of the completion of a timber sale, but plaintiffs point to no case in which such measures have been actually imposed by a court.  Although plaintiffs ask the Court to "consider" such mitigation measures, they provide no information that would allow the Court to determine what sort of mitigation would be appropriate at which locations.  Nor do they show that the measures they suggest are preferable to the best management practices that Forest Service has already imposed.  One is left with the impression that the request for relief is more about shielding this case from a mootness motion[2/] than about actually benefitting the environment.  At the very least, it can be confidently said that there is no plain and ministerial duty on the part of the Forest Service to undertake "mitigation" measures that are undefined and which could actually harm the environment.

## CONCLUSION

For the foregoing reasons, the Court should enter the accompanying proposed order and

---

[2/]   Despite the completion of the contracts, defendants do not contend that this action is moot.  As explained above, the Forest Service has identified additional maintenance need for at least some of the roads.  Effective relief thus remains available to prevent the Forest Service from doing that additional road maintenance work pending the completion of the NEPA compliance on the two pending timber sale projects.

otherwise deny plaintiffs' Motion for Summary Judgment and Injunctive Relief.

RESPECTFULLY SUBMITTED this 27th day of October, 2006, at Anchorage, Alaska.

        s/ Bruce Landon
        BRUCE M. LANDON
        U.S. Department of Justice
        Environment & Natural Resources Division
        801 B Street, Suite 504
        Anchorage, Alaska 99501-3657
        Telephone: (907) 271-5452
        Facsimile:  (907) 271-5827
        Email: bruce.landon@usdoj.gov

        Attorney for Defendants

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of October, 2006, a copy of the foregoing DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF, Exhibits and (PROPOSED) ORDER AND PERMANENT INJUNCTION were served electronically to the following counsel of record:

Marc D. Fink
Peter Van Tuyn

  s/ Bruce M. Landon
Bruce M. Landon