Marc D. Fink (MN License # 343407)
4515 Robinson Street
Duluth, Minnesota 55804
Tel: 218-525-3884
Fax: 218-525-3857
marc@marcdfink.com

Peter Van Tuyn (AK Bar # 8911086)
Bessenyey & Van Tuyn
310 K Street, Suite 200
Anchorage, AK 99501
Tel:  907-278-2000
Fax:  907-278-2004
pvantuyn@earthlink.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS, and GLEN ITH<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture,<br><br>Defendant. | Case No: 3:06-CV-0068-JWS<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF** |

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   The Forest Service Violated NEPA by Failing to Allow Public Scoping
     and By Failing to Provide a Sufficient Explanation Prior to "Categorically
     Excluding" the Road Reconstruction Projects from NEPA . . . . . . . . . . . . . . . . . . 2

II.  The Forest Service Violated NEPA Because the Road Reconstruction
     Projects Do Not Properly Fit Within a Categorical Exclusion . . . . . . . . . . . . . . . . 4

III. The Forest Service Violated NEPA by Not Analyzing the Environmental
     Impacts of the SW Neets, Rockfish, and Francis Cove Road Reconstruction
     Projects and the Traitors Cove Logging Project Within a Single EIS . . . . . . . . . . 4

IV.  The Forest Service Violated NEPA by Proceeding with the Road Projects Prior
     to Completing the Environmental Analyses for the Associated Timber Sales. . . . 4

V.   The Forest Service Violated the Appeals Reform Act by Proceeding with
     the Road Reconstruction Projects Prior to Providing Public Notice,
     Accepting Public Comments, and Allowing Administrative Appeals . . . . . . . . . . 5

VI.  The Court Should Order the Forest Service to Close the Five Logging Roads
     Pending the Agency's Full Compliance with NEPA and the Appeals Reform
     Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

TABLE OF AUTHORITIES

CASES

*Alaska Center for the Environment v. U.S. Forest Service*,
189 F.3d 851 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

*California v. Norton*,
311 F.3d 1162 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Idaho Sporting Congress v. Rittenhouse*,
305 F.3d 957 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Neighbors of Cuddy Mountain v. Alexander*,
303 F.3d 1059 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Neighbors of Cuddy Mountain v. U.S. Forest Service*,
137 F.3d 1372 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Save Greers Ferry Lake v. Department of Defense*,
255 F.3d 498 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 10

*Save the Yaak Committee v. Block*,
840 F.2d 714 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 5

*Thomas v. Peterson*,
753 F.2d 754 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Wilderness Society v. Rey*,
180 F. Supp. 2d 1141 (D. Mont. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

STATUTES

16 U.S.C. § 1612 note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

16 U.S.C. § 1612(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

REGULATIONS

40 C.F.R. § 1500.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

40 C.F.R. § 1502.2(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

40 C.F.R. § 1502.14(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

40 C.F.R. § 1506.1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

40 C.F.R. § 1506.1(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

40 C.F.R. § 1508.25(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

40 C.F.R. § 1508.25(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

## INTRODUCTION

Plaintiffs Forest Service Employees for Environmental Ethics and Glen Ith (hereinafter "FSEEE") filed this case to challenge the Forest Service's reconstruction of five logging roads on the Tongass National Forest: the SW Neets, Rockfish, and Francis Cove roads, which are associated with the Traitors Cove timber sale; and Roads 6231 and 6232, which are associated with the Overlook timber sale.  The Forest Service provided no public notice for these projects, as required by the National Environmental Policy Act ("NEPA") and Appeals Reform Act ("ARA"), and prepared no environmental analysis as required by NEPA.  FSEEE did not even find out about these projects until they were substantially completed, and by the time the preliminary injunction issued by this Court took effect, the road projects were completed.

In its opposition brief, the Forest Service now admits that it violated NEPA.  The Forest Service, however, requests the Court to not address the majority of FSEEE's claims, and to order no injunctive relief other than the obvious prohibition on additional road work for these five roads pending completion of the NEPA analysis for the connected timber sales.

FSEEE, by contrast, requests a declaratory judgment on all of its claims to clarify that FSEEE and the public are entitled to advance notice, an opportunity to review an environmental analysis and submit comments, and an opportunity to file an administrative appeal prior to a major road reconstruction project moving forward on the Tongass National Forest.  As recognized by the Ninth Circuit, the Forest Service's failure to prepare the required NEPA analysis prior to awarding road reconstruction contracts "seriously imped[es] the degree to which their planning and decisions could reflect environmental values." *Save the Yaak Committee v. Block*, 840 F.2d 714, 718-19 (9th Cir. 1988).

PLTFS' REPLY BRIEF IN SUPPORT OF MTN. FOR SUMMARY JUDGMENT AND INJ. RELIEF    Page 1

Due to the Forest Service's violation of numerous NEPA and Appeals Reform Act requirements for the five road reconstruction projects, FSEEE also requests the reasonable relief of ordering that these illegally reconstructed roads should be closed to motorized traffic pending completion of the required NEPA process. The closure of these roads would help alleviate the ongoing harm to FSEEE and the environment, would pose no significant hardship to the Forest Service, and would not reward the Forest Service for its illegal activities but instead provide some disincentive so that the agency will not again reconstruct roads without public notice or environmental review.

## ARGUMENT

**I.     The Forest Service Violated NEPA by Failing to Allow Public Scoping and By Failing to Provide a Sufficient Explanation Prior to "Categorically Excluding" the Road Reconstruction Projects from NEPA**

After FSEEE learned that the Forest Service was reconstructing old logging roads, the agency claimed that it was relying on a categorical exclusion for the repair and maintenance of roads. *See* AR 2022, p. 3; AR 2016, p. 4. The Forest Service, however, failed to provide public scoping and failed to provide an explanation at the time of its decision, and therefore its reliance on the categorical exclusion is in violation of NEPA and arbitrary and capricious. *See* AR 1006, p. 7 (FSH 1909.15, Chapter 30.3(3) ("Scoping is required on all proposed actions, including those that would appear to be categorically excluded."); *id.*, p. 8 (FSH 1909.15, Chapter 31.12); *Alaska Center for the Environment v. U.S. Forest Service*, 189 F.3d 851, 858 (9th Cir. 1999); *California v. Norton*, 311 F.3d 1162, 1175 (9th Cir. 2002) (the agency cannot "point to any documentation in the record that would suggest that it made a categorical exclusion determination at the time the [projects] were approved."); Prelim. Inj. Order, pp. 6-7.

This Court found FSEEE's argument that the Forest Service failed to follow the required procedures prior to relying on a categorical exclusion for the five road projects to be "particularly persuasive." Prelim. Inj. Order, p. 6. As stated by the Court, "[b]ecause the Forest Service has not produced explanatory documentation contemporaneous with its approval of the road projects or adequately justified the absence of documentation, FSEEE probably will succeed on its argument that the projects run afoul of NEPA." *Id.*, p. 8. In response, the Forest Service's only argument is that the Court does not need to resolve this claim because the agency now concedes it violated NEPA by not considering the connected road projects along with the proposed timber sales within the same NEPA documents. FS Opp. at 2.

FSEEE requests the Court to issue a decision on this NEPA claim to help insure it is not repeated.[1] As it stands, and despite this Court's preliminary injunction decision, the Forest Service's position remains that it may proceed with major road construction projects in the remote corners of the Tongass National Forest with no public notice or involvement, and without NEPA review. *See e.g.*, FS Opp. at 2 (stating that "although use of a CE is generally appropriate," it was not proper in this case). For future projects where the Forest Service does not believe the road work is connected to any future logging proposal, FSEEE will once again be left with no public notice and forced to discover the road projects on its own, potentially after the projects are already completed. The Forest Service's position on this issue directly conflicts with the agency's own handbook and the precedent from this Court and the Ninth Circuit, and the Court should issue a written decision on this claim to prevent similar occurrences in the future.

---

[1] Contrary to the Forest Service's position, courts frequently issue decisions on multiple, related claims. *See e.g., Neighbors of Cuddy Mountain v. U.S. Forest Service*, 137 F.3d 1372 (9th Cir. 1998); *Idaho Sporting Congress v. Rittenhouse*, 305 F.3d 957 (9th Cir. 2002).

**II.       The Forest Service Violated NEPA Because the Road Reconstruction Projects Do Not Properly Fit Within a Categorical Exclusion**

The Forest Service makes no response to this argument, and FSEEE maintains that in addition to the procedural failures set forth above, the Forest Service also improperly relied on a categorical exclusion for the five road *reconstruction* projects because these projects do not fit within the agency's limited category for minor road *maintenance* (such as grading, cleaning culverts, and clearing brush).  *See* FSEEE's Opening Br. at 16-18.

**III.      The Forest Service Violated NEPA by Not Analyzing the Environmental Impacts of the SW Neets, Rockfish, and Francis Cove Road Projects and the Traitors Cove Timber Sale Within a Single EIS**

The Forest Service now admits that the road reconstruction projects at issue in this case and the planned timber harvest "constitute connected actions that should be considered in the NEPA documents for the timber sale projects under 40 C.F.R. § 1508.24(a)." FS Opp. at 2.[2]  The Court should therefore hold that the Forest Service violated NEPA by failing to assess the environmental impacts of the road reconstruction projects along with the proposed timber harvest in the same NEPA document.  40 C.F.R. § 1508.25(a)(1).[3]

**IV.      The Forest Service Violated NEPA by Proceeding with the Road Projects Prior to Completing the Environmental Analyses for the Associated Timber Sales**

The Forest Service's response ignores that the agency also violated a number of NEPA regulations and requirements by entering into contracts and allowing the road projects to proceed prior to preparing the required NEPA analyses for the combined road projects and timber sales.

---

[2] The Forest Service's cite to section 1508.24(a) should instead be to section 1508.25(a).

[3] As explained in FSEEE's opening brief, the road projects and proposed timber harvest are also "cumulative actions" pursuant to 40 C.F.R. § 1508.25(a)(2), and therefore again required to be assessed within the same NEPA document.   FSEEE's Opening Br. at 22-24.

PLTFS' REPLY BRIEF IN SUPPORT OF MTN. FOR SUMMARY JUDGMENT AND INJ. RELIEF     Page 4

*See* FSEEE's Opening Br. at 24-27; 40 C.F.R. §§ 1500.1(b), 1506.1(a)(1), 1506.1(a)(2), 1502.2(f), 1502.14(d); *Save the Yaak Committee v. Block*, 840 F.2d at 718-19 ("In this case, the reconstruction contracts were awarded prior to preparation of the EAs, . . .. These events demonstrate that the agency did not comply with NEPA's requirements concerning the timing of their environmental analysis, thereby seriously impeding the degree to which their planning and decisions could reflect environmental values."). The Court's decision should confirm these additional violations, and the Court should consider these multiple violations in its determination of the appropriate injunctive relief.

V. **The Forest Service Violated the Appeals Reform Act by Proceeding with the Road Projects Prior to Providing Public Notice, Accepting Public Comments, and Allowing Administrative Appeals**

As set forth in FSEEE's opening brief, the ARA grants individuals the right to be notified, submit comments, and file administrative appeals of Forest Service decisions, 16 U.S.C. § 1612 note, and the ARA's requirements apply to all Forest Service projects and activities that implement forest plans. FSEEE Opening Br. at 27, *citing* 16 U.S.C. § 1612(a); *Wilderness Society v. Rey*, 180 F. Supp. 2d 1141, 1148 (D. Mont. 2002). If the Forest Service had complied with the ARA's mandatory requirements for the challenged road reconstruction projects, FSEEE would have had the opportunity to notify the agency that these projects were directly connected to proposed timber sales in the same project areas, and that the connected and cumulative actions were therefore required to be assessed within the same NEPA analysis. The required administrative process may have thereby allowed this litigation to be averted.

The Forest Service's only defense for why it did not comply with the ARA's notice, comment and administrative appeal requirements for the challenged road projects is because the projects were categorically excluded as road maintenance activities. *See* FS Opp. at 3 n. 1. As FSEEE has explained, however, these major road reconstruction projects do not fit within the

agency's categorical exclusion for minor road maintenance. Morever, even the Forest Service now admits that a categorical exclusion was not appropriate for these five projects because they are connected to proposed timber sales. FS Opp. at 2. The Court should therefore find that it was arbitrary and capricious and in violation of the ARA for the Forest Service to exclude these projects from the ARA's notice, comment and administrative appeal requirements.

VI.   **The Court Should Order the Forest Service to Close the Five Logging Roads Pending the Agency's Full Compliance with NEPA and the Appeals Reform Act**

As set forth in FSEEE's opening brief, "absent unusual circumstances, an injunction is the appropriate remedy for a violation of NEPA's procedural requirements," and the Forest Service bears the burden of establishing unusual circumstances. FSEEE's Opening Br. at 29; citing *Thomas v. Peterson,* 753 F.2d 754, 764 (9th Cir. 1985); *Forest Conservation Council v. U.S. Forest Serv.,* 66 F.3d 1489, 1496 (9th Cir. 1995). The Forest Service violated numerous NEPA regulations and the ARA in proceeding with the challenged projects without any public notice or environmental review. To remedy these violations, FSEEE requests that the illegally reconstructed roads be closed and that the Court impose appropriate mitigation measures.

In response, the Forest Service threatens to award a new contract to continue road work on one of the roads that was illegally reconstructed, and invites the Court to enjoin it from doing so. FS Opp. at 5-6. Here, FSEEE agrees with the Forest Service that of course, at the very least, the agency should be enjoined from conducting any additional road work on these five roads pending completion of the NEPA process for the proposed timber sales.

The Forest Service claims, however, that FSEEE's request to close the illegally reconstructed roads is "drastic" and should be denied. FS Opp. at 7. There is nothing drastic about simply closing the roads that were illegally reconstructed pending completion of the NEPA process. While the Forest Service contends that such closure should be accomplished by "the placement of boulders sufficient to obstruct motorized access," *id*., at 10, FSEEE has no

objection to this approach so long as the boulders are of sufficient size to be effective.

The Forest Service's argument that the closure of these illegally reconstructed roads pending completion of the NEPA process would not benefit the environment defies common sense. As shown in Exhibits A and B to the Declaration of Glen Ith, the major reconstruction work has changed at least some of these roads from virtual hiking trails with considerable encroaching alder to two lane roads that are now easily accessible by all types of motorized vehicles. May 4, 2006, Ith Declaration, ¶¶ 5-6, Exhibits A, B.[4] And the Forest Service indeed acknowledges that it blocks roads with rock barriers "in order to discourage use," and that such an earlier road closure of Road 6232 prohibited motorcycles and off-road vehicles from using the road. *See* Oct. 27, 2006, Grantham Dec., ¶ 6 ("Prior to the installation of the barrier, motorcycles and off-road vehicles had used the entire length of that road.").

The increased use of these reconstructed and reopened roads will increase sedimentation to project area streams and increase the risks to wildlife species. While the Forest Service criticizes Dr. Montgomery for focusing on the sedimentation created by logging trucks (even though these roads were in fact reconstructed to access timber harvest units), the basic principle remains that "[v]ehicle travel along reconstructed roads pumps fine sediment from the road bed to the road surface where it can be carried off by rain into streams." May 3, 2006, Montgomery Dec., ¶ 6. While loaded log trucks generate more sediment than passenger vehicles, *id*., this of course does not imply that passenger vehicles and increased off-road vehicle use will not still increase the amount of sediment that is carried off into streams.

The Forest Service also asserts that the road improvements will not result in a "realistic threat" of increased trapping along these roads, and that there is no old growth or high value

---

[4] The Forest Service does not dispute that some of these roads were previously closed to motorized use prior to the reconstruction work. *See* FS Opp. at 7 (stating that "*most*" of the roads "experienced motorized vehicular use prior to the reconstruction contracts.") (emphasis added).

marten habitat within the Overlook area where Roads 6231 and 6232 are located. FS Opp. at 8-9. These Forest Service statements are directly contradicted by its own 2005 Environmental Assessment prepared for the proposed Overlook timber sale. *See* Stahl Dec., Ex. I; http://www.fs.fed.us/r10/tongass/projects/overlook/05_overlook-ea.shtml. The Forest Service acknowledges in the Overlook EA that this area is part of the Central Mitkof Roadless Area, which is over 6,000 acres and "supports populations of Sitka black-tailed deer, wolves, marten, river otter, northern flying squirrel, and black bear." Overlook EA, p. 100-101. Moreover, the Overlook project area "contains approximately 4,596 acres of productive old-growth." *Id*., p. 63. In fact, the Forest Service admits that this area "*contains approximately 2,033 acres of high value marten winter habitat*," and that new roads in the area would result in "*[s]ome increase in access for trapping*." *Id*., p. 67, 70 (emphasis added); *see also* Nov. 3, 2006, Third Declaration of Glen Ith, ¶ 2-4 (explaining that there are only four areas remaining on Mitkof Island where the impacts from past management activities are not readily apparent, including the Central Mitkof Roadless Area, that human access into the area "is now much easier and has clearly increased due the road reconstruction," and that the increased human access "will likely lead to high marten mortality by trapping and indirectly lead to the reduction of high value marten habitat."). The Forest Service's conflicting statements in its brief further demonstrate why these illegally constructed roads should be closed pending public involvement, an objective NEPA analysis, and a final decision.

Significantly, besides its attempt to refute FSEEE's arguments as to why the closure of these roads to motorized use would alleviate the ongoing harm, the Forest Service presents no argument as to why the simple placement of boulders to close access to these roads would be either detrimental to the environment or unduly burdensome to the agency. Whether viewed as a mandatory injunction or mandamus, the ordering of such relief would be narrowly tailored to directly address at least some of the harm caused by the reconstruction and reopening of these

roads, and would be "clear and certain." *See* FS Opp. at 4, 6. And as plainly evident in the Forest Service's opposition, no other remedies are available to even begin to sufficiently redress the agency's illegal reconstruction of these roads. *Id*. at 6.

While the Forest Service also claims that *Save Greers Ferry Lake v. Department of Defense*, 255 F.3d 498 (8th Cir. 2001) is "clearly distinguishable," FS Opp. at 9, the cases are in fact analogous. The agency in *Save Greers Ferry Lake* improperly issued permits to allow the construction of docks on a lakeshore, while here the Forest Service improperly entered into contracts to allow the reconstruction of logging roads. As in this case, the *Greers Ferry* court faced the issue of what to do with the projects that were already illegally constructed pending NEPA compliance. As with FSEEE's request in this case, the court did not order that the docks be immediately removed, but rather held that they could not be used for any recreational purpose "unless and until the Corps implements a new shoreline management plan in full accordance with NEPA and lawfully issues new permits." *Save Greers Ferry Lake*, 255 F.3d at 501. Similarly, FSEEE requests that the Forest Service not be allowed to use the illegally reconstructed roads unless and until the agency complies with NEPA.

Last, FSEEE has requested that the Court consider additional mitigation measures to help reduce the erosion and sedimentation that is currently resulting from the reconstructed roads. FSEEE's Opening Br. at 30, *citing* Second Ith Dec., ¶ 10; *Neighbors of Cuddy Mt. v. Alexander*, 303 F.3d 1059, 1066 (9th Cir. 2002) (discussing appropriateness of various measures to mitigate the damage caused by the logging of a challenged timber sale prior to the resolution of the case). The reason for these additional mitigation measures would be to insure the status quo and maintain the possibility of the Forest Service choosing the mandatory "no action" alternative for its proposed timber sale projects. *See* Third Ith Dec., ¶¶ 5-6. At this time, as in *Save Greers Ferry Lake*, FSEEE requests the Court to impose a time limit on NEPA compliance, and to

require significant mitigation measures if the Forest Service chooses the "no action" alternative for its timber harvest proposals, or fails to timely complete the required NEPA process. *Save Greers Ferry Lake*, 255 F.3d at 501 (stating that "if the Corps does not take such action within one year after the date of this order, then the subject boat docks shall be removed by whoever owns them as of that one-year anniversary date, subject to any order(s) permitting further maintenance or use issued by the district court or this court prior to that anniversary date.").

## CONCLUSION

The Forest Service in this case was caught with its hand in the cookie jar, but not until it already ate a number of cookies. FSEEE's request for relief simply asks the Court to remove the agency's hand from the jar and close the lid pending completion of the mandatory NEPA and ARA processes. The Forest Service, on the other hand, claims that closing the jar would be "drastic" and instead threatens to grab and eat more cookies unless enjoined from doing so.

For the reasons set forth above and in FSEEE's opening brief, FSEEE requests that the Court issue a decision holding that the Forest Service violated numerous provisions of NEPA and the ARA by entering into contracts and authorizing the five challenged road projects. To remedy the multiple violations of the law, FSEEE respectfully requests that the Court order the Forest Service to promptly close the five reconstructed roads, with large boulders if the agency prefers, pending completion of the NEPA and ARA process for the connected logging proposals.

DATED this 10th day of November, 2006.

Respectfully submitted,

s/ Marc D. Fink
Marc D. Fink (MN License # 343407)
4515 Robinson Street
Duluth, Minnesota 55804
Tel: 218-525-3884
Fax: 218-525-3857
marc@marcdfink.com

Peter Van Tuyn (AK Bar # 8911086)
Bessenyey & Van Tuyn
310 K Street, Suite 200
Anchorage, AK 99501
Tel: 907-278-2000
Fax: 907-278-2004
pvantuyn@earthlink.net

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2006, a copy of Plaintiffs' Reply Brief in Support of Motion for Summary Judgment and Injunctive Relief was served electronically on:

Bruce M. Landon

s/ Marc D. Fink
Marc D. Fink (MN License # 343407)
4515 Robinson Street
Duluth, Minnesota 55804
Tel: 218-525-3884
Fax: 218-525-3857
marc@marcdfink.com