UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS; and GLEN ITH, | |
| Plaintiffs, | 3:06-cv-00068 JWS |
| | ORDER AND OPINION |
| vs. | [Re: Motion at docket 64) |
| UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, | |
| Defendant. | |

## I.  MOTION PRESENTED

At docket 64 plaintiffs Forest Service Employees for Environmental Ethics ("FSEEE") and Glenn Ith ("Ith") have moved for summary judgment declaring that the defendant, United States Forest Service ("Forest Service"), violated the National Environmental Policy Act ("NEPA") and Appeals Reform Act ("ARA") in authorizing and implementing the Road 6231, Road 6232, SW Neets, Rockfish, and Francis Cove road reconstruction projects in the Tongass National Forest.  FSEEE and Ith also seek injunctive relief ordering the Forest Service to close these five reconstructed logging roads with locked gates, and to implement appropriate mitigation measures as necessary to minimize the ongoing erosion and sedimentation caused by these roads pending the agency's full compliance with the law.  In its response at docket 68, defendant, the Forest Service, concedes that it has violated NEPA, specifically that the use of a categorical exclusion for the road contracts at issue was improper because the road reconstruction and the planned timber sale projects constitute connected actions that should be considered in the NEPA documents for the timber sale projects.

However, the Forest Service opposes the request for injunctive relief to the extent it seeks mandatory relief.  At docket 15, FSEEE has replied to the Forest Service's opposition.  Neither party has requested oral argument, and the court has determined that oral argument would not assist in deciding the motion at bar.

## II.  BACKGROUND

This case arises out of the Forest Service's work on roads in Tongass National Forest in Southeast Alaska.  FSEEE and Ith challenge road projects concerning Roads 6231 and 6232 on Mitkof Island, and the SW Neets, Rockfish, and Francis Cove road projects near Traitors Cove on Revilla Island.

At docket 37, in ruling on Plaintiff's motion for a preliminary injunction, the court found that the work on Roads 6231 and 6232 and the SW Neets road project was completed rendering the request for interim injunctive relief as to those roads moot. However, the court further found that with respect to Roads 6231 and 6232 and the SW Neets road project, the completion of the work did not render moot the request for non-injunctive relief.  The work on the Rockfish and Francis Cove projects was not yet complete, and the court granted a preliminary injunction prohibiting, with certain exceptions, further reconstruction/maintenance work on those projects.  At docket 46 the court granted the unopposed motion of the Forest Service to amend the preliminary injunction to permit the Forest Service to seed and fertilize areas of disturbed soil in the Rockfish and Francis Cove areas.

The Forest Service contends, and plaintiffs do not contest, that all work on the Rockfish and Francis Cove projects was completed before the preliminary injunction took effect.

## III.  ISSUES PRESENTED

The motion at bar presents two issues that the court must address:

1.     The extent to which the concession by the Government that it violated NEPA renders the declaratory relief action moot; and

2.      The nature and extent of the injunctive relief that the court must enter as result of the admitted violation of NEPA.

In the event the court finds that the declaratory relief action is not moot, the court must decide plaintiffs' additional claims that they and the public are entitled to advance notice, an opportunity to review an environmental analysis and submit comments, and an opportunity to file an administrative appeal prior to a major road reconstruction project moving forward in the Tongass National Forest.

## IV.  APPLICABLE STANDARDS

The Declaratory Judgment Act provides in part:

> (a) In a case of actual controversy within its jurisdiction, [with exceptions not pertinent here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.[1]

The act goes on to provide that, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."[2]

The basis for injunctive relief in federal courts has always been irreparable injury and inadequacy of legal remedies.[3]  Even in the context of environmental litigation courts apply the traditional balance of harms analysis.[4]

---

[1] 28 U.S.C. § 2201.

[2] 28 U.S.C. § 2202.

[3] *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57 (1975); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–507 (1959).

[4] *National Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 737 (9th Cir.2001); *see also Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 541, 542 (1987) (holding that unless Congress directed otherwise, "a court must balance the competing claims of injury" in determining whether injunctive relief is appropriate).

## V.  DISCUSSION

### A.  Declaratory Relief

The Forest Service concedes that the use of a categorical exclusion for the road projects at issue in this case was improper and constituted a violation of NEPA.  The Forest Service also concedes that the fact that although work has been essentially competed the issuance of a permanent injunction in this case is appropriate.  The concession on the merits notwithstanding, FSEEE and Ith argue the court should nonetheless declare that they and the public are entitled to advance notice, an opportunity to review an environmental analysis and submit comments, and an opportunity to file an administrative appeal prior to a major road reconstruction project moving forward on the Tongass National Forest.  For the following reasons the court disagrees.

The relief that FSEEE and Ith seek is that the Forest Service be enjoined from proceeding further with the road projects on Mitkof Island concerning Roads 6231 and 6232, and the SW Neets, Rockfish, and Francis Cove road projects near Traitors Cove on Revillagigedo Island.  The basis for the relief sought was that the Forest Service had violated NEPA and the ARA by improperly using a categorical exclusion.  The Forest Service has conceded that the use of a categorical exclusion in this case was improper. It has also conceded that the road projects in question should be considered in the NEPA documents for the timber sales to which they are connected.  As a consequence there is no further controversy between plaintiffs and the Forest Service: Plaintiffs win.

The Declaratory Relief Act makes clear that there must be a controversy.  It is not enough that a controversy exist at the time the complaint was filed, a controversy must exist at all stages of the litigation.[5]  Where this condition is not met, the case has

---

[5] *See Steffel v. Thompson,* 415 U.S. 452, 459 n.10 (1974) ("an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed").

become moot and the court lacks authority to decide it.[6]  As the Ninth Circuit has stated:[7]

> The test for mootness in the context of a case, like this one, in which a plaintiff seeks declaratory relief ⋯ is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Stated another way, the central question before us is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.

There are four major exceptions to the mootness doctrine: (1) when there are collateral legal consequences that survive after plaintiff's primary injury has been resolved; (2) when there are wrongs capable of repetition yet evading review; (3) when there has been a voluntary cessation of activity complained of; and (4) in class actions when the named party ceases to represent the class.[8]  None apply in this case.

In the context of this case, the fundamental problem the court faces is that by ruling on the additional points asserted it could not grant any further meaningful relief to Plaintiffs than that based on the Forest Service's concession.  Thus, to rule on them would likely run afoul of the Supreme Court's admonition that federal courts not render advisory opinions.[9]  Moreover, those matters on which FSEEE and Ith wish a further declaration are either already requirements of the law or, if not, are not "rights" that this court could declare.  The Forest Service is required to follow the law even absent a declaration of this court that it do so, and there is no basis for the court to assume that the Forest Service will in the future fail to follow the law.

---

[6] *See Foster v. Carson,* 347 F.3d 742, 747 (9th Cir.2003) ("We do not have the constitutional authority to decide moot cases.").

[7] *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir.2005) (en banc).

[8] *Pub. Util. Comm'n of California v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1459-61 Cir.1996).

[9] *Hall v. Beals*, 396 U.S. 45, 48 (1969); *see also Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1138 (9th Cir.2000) (en banc) ("Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.").

The closest FSEEE and Ith come to an exception to the mootness doctrine is that these are wrongs capable of repetition yet evading review.  The gist of their argument in this respect is that the Forest Service could again use the categorical exclusion on road projects in the Tongass National Forest without giving any public notice thereby making it possible such projects would escape public scrutiny prior to the work being completed. In order to grant this relief, the court would necessarily have to determine that categorical exclusions are never appropriate for road projects in the Tongass National Forest. Based upon the record before this court in this case the court cannot make such a sweeping all-inclusive determination.

There is no reason for or basis upon which this court can declare the rights of the parties beyond the concession made by the Forest Service: the Roads 6231 and 6232, and the SW Neets, Rockfish, and Francis Cove road projects are connected to the Overlook and Traitors Cove timber sale projects, not entitled to a categorical exclusion, and must be considered in the environmental review of those proposed timber sales. Put another way, the use of a categorical exclusion having been determined to be inappropriate in the case at bar there is no need to decide the matter on broader or additional grounds.[10]

## B.  Injunctive Relief

FSEEE and Ith contend, and the Forest Service concedes, that the appropriate remedy in this case is injunctive relief.  The parties disagree on the scope of relief. FSEEE and Ith request that this court not only enjoin further construction on the roads pending an appropriate environmental review, but also order the reconstructed roads be closed using locked gates and impose unspecified mitigation measures to reduce ongoing erosion and sedimentation.  The Forest Service agrees that enjoining further construction as provided in the preliminary injunction, with some modification, on the five reconstructed roads until such time as the NEPA environmental review is completed is appropriate, but disagrees with the suggestion that it be compelled to close the roads

---

[10] *See, e.g., West v. Secretary of Dept. of Transp.*, 206 F.3d 920, 929 n.10 (9th Cir.2000); *Thomas v. Peterson*, 753 F.2d 754, 761 n.4 (9th Cir.1985).

using locked gates.  With some modification the court will adopt the remedy suggested by the Forest Service.

The principal harm claimed by FSEEE and Ith is the specter that the reconstructed roads invite heavier traffic ,and heavier traffic will increase erosion and sedimentation.  That significantly heavier traffic would increase erosion and sedimentation is not disputed by the Forest Service.  However, as the Forest Service argues, the uncontradicted evidence shows that public use by motorized vehicles has been limited historically and significantly increased use in the foreseeable future is unlikely.

Prior to reconstruction, Road 6231 was passable to passenger cars to the "old bridge site" at approximately milepost 0.76 of the road.[11]  There was no physical barrier to prevent this use.[12]  The old bridge had deteriorated to the degree that passenger vehicles could no longer use it; however, the entire length of the road (end at milepost 1.27) was extensively used by motorcycles and off-road vehicles.[13]  The end of the road was known as a particularly good view spot during hunting season to scout for moose in the muskeg below.[14]  As part of the reconstruction contract, the old bridge and culverts on that portion of Road 6231 beyond the bridge were removed.[15]  A rock and earth berm was placed before the bridge site so that the public would no longer attempt to cross the stream from which the bridge had been removed. [16]

Road 6232 was maintained for use by passenger vehicles up to the LeConte Glacier Overlook Picnic Area at approximately milepost 0.58.[17]  From milepost 0.58 to the end of the road (milepost 2.65), the road was classified as a maintenance level 1 (the

---

[11] Defendant's Response to Plaintiffs' Motion for Summary Judgment and Injunctive Relief, Exh. 11, Declaration of Patricia A. Grantham, ¶ 5 (doc. 68-3 at 2–3).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] Grantham Declaration, ¶ 6 (doc. 68-3 at 3).

lowest) road.[18/]  The Forest Service blocked that portion of the road beyond milepost 0.7 with a rock barrier approximately eight years ago to discourage use of the further reaches of the road, which the Forest Service deemed unsafe due to failing log stringer bridges.[19/]  Prior to the installation of the barrier, motorcycles and off-road vehicles had used the entire length of that road.[20/]

The roads in the S.W. Neets, Francis Cove, and Rockfish road systems are on northern Revilla Island, but are not connected to each other, the Ketchikan road system, or the road system of any other town.[21/]  Almost all public use has been to access the Margaret Creek Wildlife Observation Site, for recreation or for deer hunting.[22/]  Access to the observation site is by van barged out to the log transfer facility at Margaret (Francis Cove road system) by float plane tour operators and left there for the summer tourist season.[23/]  Deer hunters walk or use bicycles, motorcycles or ATVs for access.[24/]  Use of trucks by deer hunters is very uncommon because few hunters have the barge or special boats that would be necessary to bring trucks ashore.[25/]  During weekends in late October or early November (when most hunting occurs) approximately three to seven ATV or motorcycle users are on the Francis Cove system, three to five on the Rockfish system, and one to three on the S.W. Neets system.[26/]

Based on these uncontradicted facts, the court finds that the likelihood that there will be a significant increase in either the degree or nature of motorized traffic is, at most, minimal.

---

[18/] *Id.*

[19/] *Id.*

[20/] *Id.*

[21/] Defendant's Response to Plaintiffs' Motion for Summary Judgment and Injunctive Relief, Exh. 12, Declaration of Robert J. Emley, ¶ 3 (doc. 68-4 at 2).

[22/] Emley Declaration, ¶ 5 (doc. 68-4 at 3).

[23/] *Id.*

[24/] *Id.*

[25/] *Id.*

[26/] *Id.*

Injunctive relief is generally limited to that necessary to prevent further irreparable harm.[27/]  While, as FSEEE and Ith contend, the reconstructed roads are somewhat susceptible to greater use, they have not presented sufficiently compelling reasons, given the historic use of the roads and the likely usage in the foreseeable future, for the court to order the Forest Service to close the roads.[28/]  Ordering the Forest Service to include the road projects at issue in the appropriate NEPA mandated environmental review for the associated timber sales and enjoining it from performing any further work on the road projects pending a final decision is appropriate relief in this case.[29/]  The mitigation measure proposed by the Forest Service, seeding and fertilizing exposed areas of soil, is more likely than not sufficient to prevent increased erosion and sedimentation in this case.  However, if the court is to err, it will err on the side of preserving the environment.  Accordingly, the Forest Service will be ordered to take appropriate measures to restrict use to that consistent with historic use.  Should that prove inadequate, the court reserves jurisdiction to modify this order accordingly.[30/]

## VI.  CONCLUSION

Based upon the foregoing, Plaintiffs' Motion for Summary Judgment and Injunctive Relief is **GRANTED, in part, and DENIED, in part**.

---

[27/] *See Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 193 (2000) ("federal courts should aim to ensure 'the framing of relief no broader than required by the precise facts'").

[28/] The court also recognizes that erecting barriers is not always effective in preventing access; people have historically resorted to numerous ingenious methods for circumventing nearly any barrier to access.

[29/] The proposed order submitted by the Forest Service indicates that an Environmental Assessment is appropriate for the Overlook timber sale while an Environmental Impact Statement is required for the Traitors Cove timber sale.  Given the record before it in this action, the court must refrain from specifying or even implying which procedure is appropriate.

[30/] While the court could direct specific measures to be taken, *e.g.*, locked gates as suggested by FSEEE and Ith or rock barriers as previously used on Road 6232, the measures to be used should, at least in the first instance, be left to discretion of the Forest Service.

## VII.  DECLARATION AND INJUNCTION

**IT IS DECLARED AND ORDERED THAT**:

1.      The road maintenance/reconstruction contract for Roads 6231 and 6232 constitutes an action connected to the proposed Overlook timber sale project and road maintenance/reconstruction must be considered together with the proposed timber sale in the appropriate environmental review under NEPA for the proposed Overlook timber sale project.

2.      The S.W. Neets, Rockfish, and Francis Cove road maintenance/reconstruction contracts constitute actions connected to the proposed Traitors Cove timber sale project and road maintenance/reconstruction must be considered together with the proposed timber sale in the appropriate environmental review under NEPA for the Traitors Cove timber sale project.

3.      Unless otherwise ordered by the court upon such notice and hearing as may be appropriate in the circumstances, until the Forest Service completes the appropriate environmental review under NEPA for the Overlook timber sale project and the decision rendered thereon is final and may be implemented, the Forest Service is enjoined from performing road maintenance on or reconstruction of Roads 6231 and 6232.

4.      Unless otherwise ordered by the court upon such notice and hearing as may be appropriate in the circumstances, until the Forest Service completes the appropriate environmental review under NEPA for the Traitors Cove timber sale project and the decision rendered thereon is final and may be implemented, the Forest Service is enjoined from performing road maintenance on or reconstruction of the roads in the S.W. Neets, Francis Cove and Rockfish area.

5.      The Forest Service must restrict access to Roads 6231 and 6232 and the roads in S.W. Neets, Francis Cove, and Rockfish in a manner designed to prevent any significant increase in the nature and extent of motorized traffic from the historical usage of the roads, *i.e.*, prior to the time the Forest Service awarded the road maintenance/reconstruction contracts referred to in paragraphs 1 and 2.

6.      The prohibitions in paragraphs 3, 4, and 5 are subject to the following exceptions:

a. Forest Service employees may spread grass seed and fertilizer on areas of exposed soil;

b. the Forest Service may continue to maintain the road to the Margaret Creek Wildlife Observation Site; and

c. the Forest Service may undertake emergency maintenance/reconstruction in response to occurrences such as slides or culvert failures if the Forest Service reasonably determines that failure to do maintenance/reconstruction poses a significant risk of substantial harm to the environment or threat to the public safety.  To the extent practicable, the Forest Service should notify counsel for the Plaintiffs prior to undertaking emergency maintenance/reconstruction and, in any event, provide such notification to Plaintiffs' counsel and the court within two (2) business days after commencing such emergency maintenance/reconstruction.

**AND IT IS FURTHER ORDERED THAT**:

This court retains jurisdiction to enforce or modify the terms of this order upon such notice and hearing as may be necessary or appropriate under the circumstances.

**FINALLY, IT IS ORDERED THAT**:

The parties shall confer and submit a proposed form of judgment consistent with this order no later than **January 18, 2007.**

DATED at Anchorage, Alaska this, 15th day of December 2006.


_____/s/_____
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE